HANSON BRIDGETT LLP
LAWRENCE M. CIRELLI, SBN 114710
lcirelli@hansonbridgett.com
MATTHEW J. PECK, SBN 287934
mpeck@hansonbridgett.com
G. THOMAS RIVERA III, SBN 333556
trivera@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone:   (415) 777-3200
Facsimile:    (415) 541-9366

Attorneys for Defendant
NORTECH WASTE LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| ECOHUB, LLC,<br><br>                    Plaintiff,<br><br>          v.<br><br>RECOLOGY INC., NORTECH WASTE LLC, and DOES 1 through 10,<br><br>                    Defendants. | Case No. 3:22-cv-9181-TSH<br><br>**DEFENDANT NORTECH WASTE LLC'S NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST AMENDED COMPLAINT (FED. R. CIV. PROC. 8, 9(b), 12(b)(6)); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>*[Filed concurrently with Nortech Waste LLC's Request for Judicial Notice]*<br><br>Judge:     Hon. Thomas S. Hixson<br>Date:      April 27, 2023<br>Time:      10:00 a.m.<br>Crtrm.:    G – 15th Floor |

NORTECH'S NOTICE OF MOTION AND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on April 27, 2023 at 10:00 a.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Thomas S. Hixson, located in the United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Nortech Waste, LLC ("Nortech") will and hereby does move for an order dismissing with prejudice each and every purported claim in the First Amended Complaint ("FAC") of EcoHub, LLC ("Plaintiff" or "EcoHub") under Rules 8, 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure.

This motion is made on the ground that the FAC fails to state facts sufficient to state a claim upon which relief can be granted. As shown below, EcoHub's claim for Breach of Fiduciary Duty fails to plausibly allege a fiduciary relationship or the breach of any fiduciary duty by Nortech. EcoHub's Intentional and Negligent Interference with Prospective Economic Advantage claims are barred by the applicable statute of limitations and also fail to state cognizable claims, insofar as EcoHub fails to allege any wrongful act by Nortech or any non-speculative economic relationship with which Nortech could have interfered.

Nortech bases its motion on this notice of motion and motion, the memorandum of points and authorities in support of the motion and the request for judicial notice, which are filed concurrently herewith, the pleadings, records, and papers filed in this action, oral argument, and any other matters properly before the Court. Nortech respectfully requests that the Court dismiss all causes of action in the FAC as to Nortech, and for any other relief that the Court deems just and proper.

DATED: March 2, 2023                    HANSON BRIDGETT LLP


By: _____/s/Lawrence M. Cirelli_____
LAWRENCE M. CIRELLI
MATTHEW J. PECK
G. THOMAS RIVERA III
Attorneys for Defendant
NORTECH WASTE LLC

19356648.13

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................8

II. BACKGROUND .................................................................................................9

    A. The Parties .................................................................................................9

    B. The First Amended Complaint's Background Allegations .......................9

    C. The First Amended Complaint's Causes of Action ...............................10

        1. Breach of Fiduciary Duty ..........................................................10

        2. Intentional and Negligent Interference with Prospective Economic Advantage ..................................................................11

III. LEGAL STANDARD ........................................................................................12

IV. STATEMENT OF ISSUES ...............................................................................13

V. LEGAL ARGUMENT .......................................................................................13

    A. EcoHub Fails to State a Claim for Breach of Fiduciary Duty Against Nortech. ...................................................................................................13

        1. EcoHub Fails to Plead Any Fiduciary Relationship Between EcoHub and Nortech. ...............................................................13

            a. EcoHub Fails to Plead a Sharing of Profits and Losses of the Alleged Partnership or Joint Venture. ...............................15

            b. EcoHub Fails to Plead Joint Control of the Alleged Partnership or Joint Venture. ..............................................16

        2. EcoHub Fails to Plead Facts Sufficient to Demonstrate any Breach of Fiduciary Duty by Nortech. .................................................18

    B. EcoHub's Intentional and Negligent Interference with Prospective Business Advantage Claims Both Fail. ...................................................19

        1. The Interference Claims are Barred by the Applicable Two-Year Statute of Limitations. ..............................................................19

        2. EcoHub Fails to State Claims for Either Intentional or Negligent Interference With Prospective Business Advantage. ...................22

            a. EcoHub Fails to Allege a Wrongful Act. ........................22

            b. EcoHub Fails to Allege that Nortech is a Third Party to the Purported Relationships Between EcoHub and WPWMA. .............24

            c. EcoHub Fails to Allege an Existing, Ongoing Relationship with WPWMA That was Likely to Produce Economic

19356648.13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Benefit. ........................................................................................25

VI.     CONCLUSION ................................................................................27

NORTECH'S NOTICE OF MOTION AND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adam v. Silicon Valley Bancshares*,
   No. C 93-20399 RMW (EAI), 1994 WL 619300 (N.D. Cal. Feb. 8, 1994) ........................... 19

*Agape Family Worship Center, Inc. v. Gridiron*,
   No. 5:15-cv-1465-ODW-SPx, 2016 WL 3003207 (C.D. Cal. May 24, 2016) ...................... 20

*April Enterprises, Inc. v. KTTV*,
   147 Cal. App. 3d 805 (1983) ................................................................................................ 17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................................. 12

*Bank of Cal. v. Connolly*,
   36 Cal. App. 3d 350 (1973) ............................................................................................ 16, 18

*Beautiful Slides, Inc. v. Allen*,
   No. 17-cv-01091-MMC, 2017 WL 3782304 (N.D. Cal. Aug. 31, 2017) ............................. 17

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................. 12

*Blank v. Kirwan*,
   39 Cal. 3d 311 (1985) .......................................................................................................... 26

*Brown v. USA Taekwondo*,
   40 Cal. App. 5th 1077 (2019) .............................................................................................. 16

*City Sols., Inc. v. Clear Channel Commc'ns Inc.*,
   201 F. Supp. 2d 1048 (N.D. Cal. 2002) .............................................................................. 13

*Coleman-Anacleto v. Samsung Elecs. Am., Inc.*,
   No. 16-CV-02941-LHK, 2016 WL 4729302 (N.D. Cal. Sept. 12, 2016) ............................. 23

*Connor v. Great W. Sav. Loan Ass'n*,
   69 Cal. 2d 850 (1968) ..................................................................................................... 14, 15

*DC Comics v. Pac. Pictures Corp.*,
   938 F. Supp. 2d 941 (C.D. Cal. 2013) ................................................................................. 19

*Dos Santos v. Telemundo Commc'ns Grp., LLC*,
   No. SACV 12-1373 JVS (MLGx), 2012 WL 9503003, at *5 (C.D. Cal. Dec. 19,
   2012) .................................................................................................................................... 16

-4-

*Fare v. Genworth Financial Inc.*,
   No. 10cv824 L(BGS), 2011 WL 13177358, at *3 (S.D. Cal. Jan. 18, 2011) .......................... 20

*Fox Prod., Inc. v. Caterpillar*,
   Inc., No. CV 06-2874-JFW (FFMx), 2007 WL 5102325, at *5 (C.D. Cal. May
   29, 2007) ........................................................................................................................ 23

*Fox v. Ethicon Endo-Surgery, Inc.*,
   35 Cal. 4th 797 (2005) ............................................................................................... 20, 21

*Gauvin v. Trombatore*,
   682 F. Supp. 1067 (N.D. Cal. 1988) ............................................................................ 18, 24

*Gerawan Farming, Inc. v. Rehrig Pac. Co.*,
   No. 1:11-cv-01273 LJO BAM, 2012 WL 691758 (E.D. Cal. Mar. 2, 2012),
   aff'd, 587 F. App'x 654 (Fed. Cir. 2014) ...................................................................... 16, 17

*Hernandez v. TLC of the Bay Area, Inc.*,
   263 F. Supp. 3d 849 (N.D. Cal. 2017) ............................................................................... 19

*Kahn Creative Partners, Inc. v. Nth Degree, Inc.*,
   No. CV 10–932–JST, 2011 WL 1195680 (C.D. Cal. Mar. 29, 2011) ................................... 14

*Kamal v. Cnty. of L.A.*,
   No. CV 17-1986-RGK (DFM), 2019 WL 7195903 (C.D. Cal. Nov. 26, 2019) ..................... 26

*Knoell v. Petrovich*,
   76 Cal. App. 4th 164 (1999) ............................................................................................. 20

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003) ................................................................................................... 22

*Kruse v. Bank of Am.*,
   202 Cal. App. 3d 38 (1988) .............................................................................................. 24

*L.A. Land Co. v. Brunswick Corp.*,
   6 F.3d 1422 (9th Cir. 1993) .............................................................................................. 25

*In re Lona*,
   393 B.R. 1 (Bankr. N.D. Cal. 2008) .................................................................................. 14

*Maritz Inc. v. Carlson Marktg. Grp., Inc.*,
   No. C 07-05585 JSW, 2009 WL 3561521 (N.D. Cal. Oct. 30, 2009) .................................. 24

*Moreno v. SFX Entm't, Inc.*,
   No. CV-14-0880-RSWL-CWx, 2015 WL 4573226 (C.D. Cal. July 29, 2015) ..................... 14

*Motha v. Time Warner Cable Inc.*,
   No. 16-cv-03585-HSG, 2017 WL 3617105 (N.D. Cal. Aug. 23, 2017) ............................... 19

19356648.13

*Name.Space, Inc. v. Internet Corp. for Assigned Names & Nos.*,
   795 F.3d 1124 (9th Cir. 2015) ............................................................................ 23

*O'M & Assocs., LLC v. Ozanne*,
   No. 10cv2130 AJB (RBB), 2011 WL 4433645 (S.D. Cal. Sept. 21, 2011) ............................ 25

*Oakland Raiders v. Ntl. Football League*,
   131 Cal. App. 4th 621 (2005) ............................................................................ 16

*Overstock.com, Inc. v. Gradient Analytics, Inc.*
   151 Cal. App. 4th 688 (2007) ............................................................................ 25

*Pellegrini v. Weiss*,
   165 Cal. App. 4th 515 (2008) ............................................................................ 14

*Placer Ranch, Inc. v. Western Placer Waste Management Auth.*,
   No. C040523, 2004 WL 2335229 (Cal. Ct. App. Oct. 18, 2004) ................................. 26

*PM Grp., Inc. v. Stewart*,
   154 Cal. App. 4th 55 (2007) ............................................................................ 24

*Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*,
   360 F. Supp. 3d 994 (N.D. Cal. 2018), aff'd, 815 F. App'x 117 (9th Cir. 2020) .............. 15

*Prostar Wireless Grp., LLC, v. Domino's Pizza, Inc.*, No. 3:16-cv-05399-WHO,
   2017 WL 67075, at *4 (N.D. Cal. Jan. 6, 2017) .................................................. 15

*Roy Allan Slurry Seal, Inc. v. Am. Asphalt South, Inc.*,
   2 Cal. 5th 505 (2017) .................................................................................. 26

*Sacramento E.D.M., Inc. v. Hynes Aviation Indus., Inc.*,
   965 F. Supp. 2d 1141 (E.D. Cal. 2013) ............................................................. 15

*Simmons v. Ware*,
   213 Cal. App .4th 1035, 1055 (2013) ............................................................... 15

*Stanley v. Richmond*,
   35 Cal. App. 4th 1070 (1995) ......................................................................... 13

*T'Bear v. Forman*,
   359 F. Supp. 3d 882 (N.D. Cal. 2019) .............................................................. 19

*TPS Utilicom Servs., Inc. v. AT&T Corp.*,
   223 F. Supp. 2d 1089 (C.D. Cal. 2002) ......................................................... 25, 26

*UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*,
   117 F. Supp. 3d 1092 (C.D. Cal. 2015) ............................................................. 23

*Venhaus v. Shultz*,
   155 Cal. App. 4th 1072 (2007) ....................................................................... 22

1
2

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ...................................................... 13, 23

3

*Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*,
    42 Cal. App. 4th 507 (1996) ................................................................ 22

4

5

*World Surveillance Grp. Inc. v. La Jolla Cove Investors, Inc.*,
    66 F. Supp. 3d 1233 (N.D. Cal. 2014) ............................................ 13, 14

6

*Youst v. Longo*,
    43 Cal. 3d 64 (1987) ........................................................................... 27

7

8

**Statutes**

9

Cal. Code Civ. Proc. § 339(1) ..................................................................... 19

10

Cal. Corp. Code § 16404(c) ......................................................................... 19

11

**Other Authorities**

12

46 Am. Jur. 2d Joint Ventures § 67 .............................................................. 16

13

48A C.J.S. Joint Ventures § 14 ..................................................................... 15

14

Fed. R. Civ. P.
    Rule 8 ..................................................................................................... 1

15

    Rule 8(a)(2) .......................................................................................... 18

16

    Rule 9(b) ............................................................................... 1, 12, 13, 23
    Rule 12(b)(6) ................................................................................. 1, 12

17
18
19
20
21
22
23
24
25
26
27
28

19356648.13

NORTECH'S NOTICE OF MOTION AND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.    INTRODUCTION**

3       Plaintiff EcoHub, LLC ("Plaintiff" or "EcoHub") has failed in its years-long quest to

4   persuade the waste management industry that its purportedly "revolutionary" waste collection and

5   processing systems are, in fact, revolutionary. EcoHub's efforts to be included as part of defendant

6   Nortech Waste, LLC's ("Nortech") efforts, starting in April 2020, to secure an amendment and

7   extension of *Nortech's existing contract with* Western Placer Waste Management Authority

8   ("WPWMA")—a public agency—to manage and operate WPWMA's waste facility in Placer

9   County failed. WPWMA then issued a public request for proposals ("RFP") in September 2020.

10  While EcoHub sought to be a part of Nortech's RFP response, Nortech advised EcoHub on

11  November 17, 2020 that it no longer desired to work with it on the RFP, which EcoHub claims left

12  it "with no adequate partner for responding to the RFP." Nortech and EcoHub both—separately—

13  submitted responses to the RFP. Both failed.

14      More than two years later, EcoHub's lawsuit, filed December 30, 2022, asserts an array of

15  common law claims against Nortech and one of its three member-owners, defendant Recology, Inc.

16  ("Recology" and together with Nortech, "Defendants"). EcoHub alleges that Defendants either

17  "fraudulently and maliciously" or "deliberately or carelessly" or due to their "complete carelessness,

18  incompetence or indifference"—or some combination thereof—disregarded EcoHub's advice and

19  input, and actively sought to undermine EcoHub in connection with *Nortech's efforts* to secure a

20  successor contract with WPWMA. EcoHub claims Defendants did so to ensure that "no contract or

21  portion of a contract with WPWMA would be awarded to EcoHub, whether to EcoHub on its own

22  or as a partner of Nortech."

23      EcoHub attempts to cast itself as a partner or joint-venturer that was undermined by Nortech

24  and Recology. Yet EcoHub summons only vague and factually implausible references to an

25  undefined and non-existent "partnership (or, alternatively, a joint venture)," which are insufficient

26  to support the existence of any such relationship and, by extension, any fiduciary obligation on the

27  part of Nortech. Indeed, EcoHub's first amended complaint ("FAC") fails to plead any agreement

28  between Nortech and EcoHub to share profits and losses or to exercise joint control over the venture.

In fact, the FAC alleges Nortech had total control and that EcoHub would only profit by virtue of Nortech successfully contracting with WPWMA. EcoHub's claim for breach of fiduciary duty fails because no fiduciary relationship exists. And, even if such a relationship existed, EcoHub fails to allege facts sufficient to demonstrate a breach of any fiduciary duty by Nortech.

As to EcoHub's claims for intentional or negligent interference with prospective business advantage, they are barred by the applicable two-year statute of limitations. As the FAC confirms, the interference claims accrued by November 17, 2020, at the latest, when Nortech severed the parties' relationship. Further, EcoHub fails to plead the requisite wrongful act, the existence of a reasonably probable future economic relationship with WPWMA (a public agency with discretion to accept or reject RFP bids for any number of reasons), and because Nortech was not a third party to the speculative prospective relationship that EcoHub allegedly desired to create with WPWMA.

For the reasons discussed below, the FAC should be dismissed in its entirety as to Nortech.

## II.   BACKGROUND

### A.   The Parties

EcoHub is a Texas limited liability company whose members are citizens of Texas, Louisiana, and Saudi Arabia. (¶ 10.)[1] It considers itself to be the "new guard" of waste management services and has purportedly developed a "1 bin/1 route" approach for all types of municipal waste that gets processed at an EcoHub facility. (¶ 3.)

Nortech is a California limited liability company whose members are citizens of California and Illinois. (¶ 12.) While EcoHub alleges Nortech's principal place of business is in Nevada City (*id.*), it was actually in Roseville. Nortech was under contract with WPWMA to operate its waste facility in Roseville until 2021. (¶¶ 6, 18, 21-22, 27, 29.)

Recology is a California corporation with its principal place of business in San Francisco. (¶ 11.) Recology owns one-third of Nortech and has a seat on Nortech's Board. (¶¶ 4, 20-21.)

### B.   The First Amended Complaint's Background Allegations

On April 28, 2020, EcoHub contacted Nortech's President and General Manager with a

---

[1]Unless stated otherwise, all paragraph references are to the FAC. (*See* ECF No. 21.)

1  proposal to "jointly present[]" to WPWMA to extend Nortech's existing contract. (¶ 18(a).) From

2  June to September 2020, EcoHub alleges it worked with Nortech to develop a "joint pitch[]" to

3  WPWMA with the hope of "EcoHub serving as a key partner in fulfilling the extended contract."

4  (¶¶ 18(a)-(e).) Ultimately, WPWMA voted to solicit responses to a public RFP rather than to "amend

5  and extend" Nortech's existing contract. (¶¶ 18(f), 23.)

6         EcoHub alleges it continued to work with Nortech to "prepare a response to the RFP" until

7  about November 2020. (¶ 18(g).) In November 2020, after six months of EcoHub allegedly

8  developing technical reports and financial projections, Nortech asked EcoHub to provide a

9  "financing commitment letter" demonstrating EcoHub's ability to secure $350 million in funding

10  for its proposed facility in Roseville. (¶ 18(c)-(g), 26.) EcoHub alleges the request "came out of the

11  woodwork," was "antithetical" to the parties' unspecified prior understandings, and that the

12  WPWMA RFP did not require it. (¶ 26.) After EcoHub failed to provide the requested commitment

13  letter, Nortech communicated in writing that it was "terminat[ing] all discussions" with EcoHub

14  regarding the WPWMA RFP on November 17, 2020. (*Id.*)

15         Ultimately, in January 2021, Nortech and EcoHub submitted separate, "competing" bids in

16  response to WPWMA's RFP. (*See* ¶ 27 [describing Nortech's RFP response as a "competing

17  response" to the RFP].) Neither party won the RFP. (*See* ¶ 29.) EcoHub claims that it lost the RFP

18  because, in spite of presenting its revolutionary business model to WPWMA and months of

19  preparing technical presentations and economic models, it had "insufficient time to find a suitable

20  replacement partner" to win the RFP. (¶¶ 18(c), 28-29.)

21         **C.     The First Amended Complaint's Causes of Action**

22                **1.     Breach of Fiduciary Duty**

23         EcoHub alleges that on April 28, 2020, Nortech and Recology "decided to partner with

24  EcoHub" in order to secure an extension of a pre-existing contract between Nortech and WPWMA

25  to operate a facility in Roseville, California. (¶¶ 4, 18(a).) According to EcoHub, between June and

26  September 2020, the Nortech Board voted twice to "jointly pitch[]" WPWMA to extend Nortech's

27  existing contract. (¶ 18(a)-(b), (e).) After WPWMA decided to issue an RFP, the Nortech Board

28  allegedly voted on October 20, 2020 to work with EcoHub to "present a joint response" to it.

(¶ 18(g).) During both time periods and continuing until Nortech terminated the parties' relationship on November 17, 2020, EcoHub claims the parties "jointly prepared" various proposal documents and presentations for WPWMA. (¶ 18(b)-(g).) EcoHub claims that between "April 2019 and continuing through January 2021," the relationship between EcoHub and Nortech "constituted a partnership (or, alternatively, a joint venture)," the consequence of which was that Nortech owed fiduciary duties of care to EcoHub. (¶¶ 18-19.) EcoHub claims that Recology also owed these same fiduciary duties to EcoHub since Recology is a 33% owner of Nortech. (¶ 20.)

EcoHub claims Nortech and Recology breached their fiduciary duties in several ways. (*See* ¶ 22.) For example, EcoHub points to various instances in which Nortech allegedly "refused" to present certain concepts EcoHub wanted to present, or "edited out" portions of the proposal EcoHub wanted to include. (*See* ¶ 22 (b)-(c), (g)-(l).) EcoHub alleges these actions resulted in a "wholly incomplete and ineffective presentation" to WPWMA. (¶¶ 18(f), 22(l).) Nortech allegedly also acted in "bad faith" in November 2020 by requesting that EcoHub provide assurance that it could finance the facility it proposed, and by terminating the "efforts to jointly respond to the WPWMA RFP[]." (¶¶ 7, 26.) EcoHub also claims that Nortech failed to wield its "experience, reputation, and contacts" to sufficiently engage in a "consistent campaign of outreach" to WPWMA, and refused to use their "extensive contacts, influence, and lobbyists" to benefit EcoHub. (¶ 22(d)-(e).) Recology likewise, allegedly, failed to leverage its "power and influence to push the deal over the top." (¶ 22(f).)

EcoHub alleges Defendants' "actions and inactions"—including unspecified and unexplained "disparaging comments" in Nortech's RFP submission—"torpedoed EcoHub's ability to successfully secure a contract for the Roseville facility, [] outside the RFP process." (¶¶ 7, 28.) EcoHub asserts that "but for Defendants' wrongful conduct," EcoHub and Nortech would have won the WPWMA contract (not non-party FCC), and that EcoHub sustained "substantial" damages resulting from "being cut out of any portion of the WPWMA contract." (¶¶ 29-30.)

### 2. Intentional and Negligent Interference with Prospective Economic Advantage

EcoHub alleges it had an economic relationship with WPWMA based on its and Nortech's "business discussions with the WPWMA" to extend Nortech's contract and develop Nortech's

response to WPWMA's RFP. (¶¶ 45, 60.) EcoHub asserts that the relationship "would have most certainly resulted in an economic benefit to EcoHub" based on its claim that it would have won the contract with WPWMA "but for" Defendants' conduct. (*Id.; but see* ¶¶ 7, 43, 49, 58, 65 [alleging Nortech's termination left EcoHub unable to find an "adequate partner for responding to the RFP"].) EcoHub claims that the same conduct that gives rise to Nortech's fiduciary breach was intended to disrupt EcoHub's relationship with WPWMA, or at least negligently did so. (¶¶ 48, 62.)

While EcoHub alleges Defendants' breaches of their fiduciary duties occurred from about June 2020 through November 2020, it claims that "significant portions of their interference were not discovered" until January and April 2021. (¶¶ 49, 65.) EcoHub does not explain what other "interference" occurred. (*See id.*) It only alleges it learned of "significant" additional instances of interference through (1) telephone discussions with unspecified but allegedly "informed Nortech individuals and affiliates" and "sources" occurring on January 4, 8, and 11, 2021, (2) the January 11, 2021 RFP submission by Nortech which EcoHub allegedly learned of on January 14, 2021, and (3) through publication of the WPWMA Board meeting agenda on April 8, 2021. (¶¶ 43, 49.)

## III.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), EcoHub's vague and conclusory allegations that it entered into a "a partnership (or, alternatively, a joint venture)" (¶ 18; *see also* ¶¶ 19, 22, 39, 52) with Nortech, or that Nortech engaged in conduct that was "fraudulent, malicious, and/or in conscious disregard for EcoHub's rights and interests" (¶¶ 30, 37, 44, 50, 59, 66) fail to state a claim. Mere conclusions couched in factual allegations are insufficient to state a cause of action. Rather, factual allegations must be sufficiently definite to "raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). That is, the factual allegations must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). This requires the pleaded facts to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid*.

Claims that are grounded in fraud also are subject to a heightened pleading standard under Federal Rule of Civil Procedure 9(b), which requires a party "to state with particularity the

circumstances constituting fraud or mistake," which include "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citations omitted). The purpose of Rule 9(b) is to give defendants sufficient notice of the alleged fraudulent conduct so that defendants can adequately defend against the allegations. *Ibid.*

## IV.   STATEMENT OF ISSUES

1.   Whether the FAC states a claim for breach of fiduciary duty against Nortech.

2.   Whether the intentional and negligent interference with prospective business advantage claims are barred by the applicable two-year statute of limitations.

3.   Whether the FAC states claims for either intentional or negligent interference with prospective business advantage.

## V.   LEGAL ARGUMENT

### A.   EcoHub Fails to State a Claim for Breach of Fiduciary Duty Against Nortech.

"The elements of a cause of action for breach of fiduciary duty are: (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach." *Stanley v. Richmond*, 35 Cal. App. 4th 1070, 1086 (1995). As explained below, EcoHub fails to plead facts sufficient to demonstrate any fiduciary relationship existed between it and Nortech and, even if it had, EcoHub fails to plead facts sufficient to establish any fiduciary breach by Nortech.

#### 1.   EcoHub Fails to Plead Any Fiduciary Relationship Between EcoHub and Nortech.

Given the "high duty" fiduciary relationships impose, they generally do not "arise out of ordinary arms-length business dealings," nor does "one party . . . commit to act in the other party's best interest rather than in its own" in a typical business relationship. *World Surveillance Grp., Inc. v. La Jolla Cove Investors, Inc.*, 66 F. Supp. 3d 1233, 1235 (N.D. Cal. 2014). Indeed, merely placing "trust and confidence in each other" during a business relationship does not "impose any corresponding fiduciary duty" among the parties absent "an act creating or establishing a fiduciary relationship known to law." *City Sols., Inc. v. Clear Channel Commc'ns Inc.*, 201 F. Supp. 2d 1048, 1049-50 (N.D. Cal. 2002). "This is why a fiduciary relationship will be found only when an individual or entity has knowingly undertaken that high duty or when the law imposes the duty in

1   special relationships such as agency, partnership or joint venture." *World Surveillance Grp., Inc.,*

2   66 F. Supp. 3d at 1235 (citations omitted).

3         EcoHub bases the existence of a fiduciary duty on an alleged "partnership (or joint venture)"

4   between EcoHub and Nortech. (¶ 19.) As a result, "[t]he existence of a fiduciary duty here depends

5   on whether the parties were in a joint venture with each other, since partners or joint venturers have

6   a fiduciary duty to act with the highest good faith towards each other regarding affairs of the

7   partnership or joint venture." *Pellegrini v. Weiss*, 165 Cal. App. 4th 515, 524-25 (2008). EcoHub

8   asserts the parties entered into a "partnership (or, alternatively, a joint venture)" beginning in "April

9   2019 and continuing through January 2021"[2] to "jointly pursue a long-term contract with the

10  WPWMA to operate their facility located in Roseville, California, first through their joint efforts to

11  obtain a long-term extension of Nortech's existing contract and then, when it became necessary, to

12  do so through a joint response to the [RFP] that the WPWMA put out for the facility's management

13  and operation." (¶ 18.) But, EcoHub fails to plausibly allege the necessary components of a joint

14  venture or partnership, which "is an undertaking by two or more persons to carry out a single

15  business enterprise jointly for profit." *Pellegrini,* 165 Cal.App.4th at 524-525.

16        Under California law, a joint venture exists if there is an agreement between the parties under

17  which they have a "[1] joint interest, in a common business undertaking, [2] an understanding as to

18  the sharing of profits and losses, and [3] a right of joint control." *Connor v. Great W. Sav. Loan*

19  *Ass'n*, 69 Cal. 2d 850, 863 (1968).[3] Although a joint venture agreement may be oral, *Pellegrini*, 165

20  Cal. App. 4th at 525, and may "be implied by reasonable deduction based on the parties' acts and

21  declarations," *Moreno v. SFX Entm't, Inc.,* No. CV-14-0880-RSWL-CWx, 2015 WL 4573226, at

22

---

23  [2]EcoHub alleges no facts to support the existence of any relationship prior to April 28, 2020 and its
24  claim the alleged relationship continued after November 17, 2020 is contradicted by EcoHub's
    admission that Nortech terminated the parties' relationship on that date. (¶¶ 26, 28.)

25  [3]Like a joint venture, "the existence of an actual partnership is evidenced by the right of the
26  respective parties to participate in the profits and losses of the business, the contribution by the
    partners ... and some degree of participation by the partners in the management and control of the
27  business." *In re Lona*, 393 B.R. 1, 14 (Bankr. N.D. Cal. 2008) (citing, *Billups v. Tiernan*, 11 Cal.
    App. 3d 372, 379 (1970)); *see also Kahn Creative Partners, Inc. v. Nth Degree, Inc.*, No. CV 10–
28  932–JST (FFMx), 2011 WL 1195680, at *6-7 (C.D. Cal. Mar. 29, 2011) (applying joint venture test
    to determine whether plausibly alleged partnership or joint venture relationship).

*3 (C.D. Cal. July 29, 2015) (cleaned up), EcoHub must nevertheless allege facts sufficient to establish the necessary elements of a joint venture agreement. *See Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*, 360 F. Supp. 3d 994, 1008 (N.D. Cal. 2018), aff'd, 815 F. App'x 117 (9th Cir. 2020), citations omitted ("[a] legally binding agreement ... is not formed where essential elements are reserved for future agreement"). It has not done so here.

### a.   EcoHub Fails to Plead a Sharing of Profits and Losses of the Alleged Partnership or Joint Venture.

EcoHub fails to plead facts showing that it and Nortech had any agreement or understanding regarding the sharing of profits and losses even though it is axiomatic that joint venturers or partners must agree to share in the actual profits and losses of their venture. *Connor,* 69 Cal. 2d at 863. In *Connor,* the California Supreme Court held that a joint venture did not exist because, although the parties cooperated, shared control, and anticipated profits, "neither was to share in the profits or the losses that the other might realize or suffer." *Id*. To plead this element, EcoHub must plausibly allege facts to show the parties "agreed to *share* in the profits or losses of a single business venture as opposed to merely showing that each of their success was entwined with the success of the other." *Simmons v. Ware,* 213 Cal. App. 4th 1035, 1055 (2013). It is not enough for two parties to "anticipate[] receiving substantial profits" from a particular business opportunity—the parties must in fact have a *joint* financial interest in the undertaking.[4] *Id.*; *see also* 48A C.J.S. Joint Ventures § 14 ("The profit accruing to a joint venture must be joint and not several.").

The FAC does not contain a single reference to profits or losses, much less any agreement or understanding between Nortech and EcoHub to *share* profits or losses. (*See generally*, FAC). Instead, EcoHub claims the collaboration with Nortech would have "most certainly resulted in an economic benefit *to EcoHub*." (*See* ¶¶ 39, 45, 52, 60, emphasis added.) EcoHub therefore fails to state a joint venture. *Connor,* 69 Cal. 2d at 868; *see also Prostar Wireless Grp., LLC, v. Domino's*

---

[4] EcoHub's claim Nortech "demanded" EcoHub demonstrate that it was able to secure financing for the "EcoHub facility in Roseville" highlights that financing the facility was its own responsibility, not a shared one. (*See* ¶¶ 7, 26.) This allegations confirms the absence of any intent to share profits or losses, or to jointly capitalize the venture. *Cf. Sacramento E.D.M., Inc. v. Hynes Aviation Indus., Inc.*, 965 F. Supp. 2d 1141, 1150 (E.D. Cal. 2013) (crediting allegation that both parties would provide operating capital as sufficient to allege existence of partnership at pleading stage).

*Pizza, Inc.,* No. 3:16-cv-05399-WHO, 2017 WL 67075, at *4 (N.D. Cal. Jan. 6, 2017) (granting motion to dismiss breach of fiduciary duty claim based on joint venture where party alleged that joint venture partner "planned to profit from the venture" as this "is not synonymous with an agreement to share *joint* profits"); *Brown v. USA Taekwondo*, 40 Cal. App. 5th 1077, 1105 (2019) (affirming order sustaining demurrer to a negligence claim based on a joint venture relationship where the plaintiff "failed to set forth specific facts" showing the "essential element" of defendants' agreement to share profits); *Oakland Raiders v. Ntl. Football League*, 131 Cal. App. 4th 621, 637-38 (2005) (affirming dismissal of claims where there was no evidence regarding the "sharing of profits and losses" between the parties, so there was no "joint venture" as a matter of law).

### b.    EcoHub Fails to Plead Joint Control of the Alleged Partnership or Joint Venture.

EcoHub similarly fails to plead facts showing that it and Nortech each had "a right of joint control" of the alleged venture or partnership. *See, e.g.*, *Dos Santos v. Telemundo Commc'ns Grp., LLC,* No. SACV 12-1373 JVS (MLGx), 2012 WL 9503003, at *5 (C.D. Cal. Dec. 19, 2012) (dismissing joint venture claim where plaintiff "ma[de] no allegations about the sharing of profits or losses or joint control and a joint interest in the undertaking"); *Gerawan Farming, Inc. v. Rehrig Pac. Co.*, No. 1:11-cv-01273 LJO BAM, 2012 WL 691758, at *10 (E.D. Cal. Mar. 2, 2012) (dismissing joint venture claim because Plaintiff failed to allege facts regarding joint control of a common business undertaking), aff'd, 587 F. App'x 654 (Fed. Cir. 2014). A joint venture requires far more than a mere collaboration between two parties. It requires that each party has the right to exercise joint control over the management of a single, shared business enterprise. *Bank of Cal. v. Connolly*, 36 Cal. App. 3d 350, 363 (1973); 46 Am. Jur. 2d Joint Ventures § 67.

What is critically missing here are any allegations that EcoHub exercised or had the ability to control Nortech's actions, or vice versa. In *Gerawan Farming*, for example, the parties entered into a contract to "patent, manufacture, and sell" a particular container for use during crop harvesting. *Id.* at *1. The plaintiff designed the "Harvest Tote," the parties shared the cost of patenting the tote, and agreed the patent would be jointly owned. *Id.* Defendant had the exclusive right to sell the tote, and would pay royalties to Plaintiff. *Id.* at *10. Even with a contract and shared

1    ownership of a patent, the court still dismissed plaintiff's suit because there were "no facts regarding

2    joint control of the endeavor" to sell the totes. *Id.* By contrast, in *April Enterprises, Inc. v. KTTV*,

3    147 Cal. App. 3d 805 (1983) , the court found a joint venture existed based on a television production

4    and syndication contract. *Id.* at 813. The contract provided the parties would "each receive 50

5    percent of the profit" from the shows syndication, and that each party had "equal rights to initiate

6    syndication" of the show. *Id.* at 819.

7         Here, EcoHub fails to plead any joint control of the alleged pitches, proposals, or ultimate

8    submissions by Nortech to secure a contract to operate the WPWMA facility. Rather, its allegations

9    that Nortech made presentations to, or submitted proposals and provided other information to,

10   WPWMA (that included or omitted content which EcoHub disagreed with) confirms that Nortech

11   had independent and unilateral control. (¶¶ 22(a)-(i), 24, 26-37.) Similar to *Gerawan Farms*,

12   EcoHub does not allege that it would share any control over the operation of the Roseville facility.

13   Indeed, EcoHub provides even fewer bases for a joint venture than the plaintiff in *Gerawan Farms*.

14   Unlike that case, EcoHub mentions no contract memorializing its "common business undertaking"

15   with Nortech, and there is no claim that the parties would co-own any patent or technology. *See*

16   *Gerawan Farms*, 2012 WL 691758, at *10. To the contrary, EcoHub pleads that it alone owned its

17   proprietary waste-disposal and processing systems and processes (*see* ¶¶ 3, 18(c), 18(e)), that was

18   to be "included" in the "joint plan to operate" the Roseville facility as part of Nortech's extended

19   contract with WPWMA (*see* ¶ 18(c)). And unlike the joint venture of a TV show in *April*

20   *Enterprises*, EcoHub fails to mention any arrangement with Nortech regarding any shared control

21   over the Roseville facility or over any proposals or presentations made to WPWMA.

22        Further, where, as here, the alleged business that is the ultimate object of the joint venture

23   or partnership does not yet exist, courts are particularly reluctant to find a joint venture or partnership

24   exists in the absence of plausible allegations that the alleged partners or joint venturers had an equal

25   vote in the management and control of the future business. *Beautiful Slides, Inc. v. Allen*, No. 17-

26   cv-01091-MMC, 2017 WL 3782304, at *4-5 n.4 (N.D. Cal. Aug. 31, 2017), citations omitted

27   (granting motion to dismiss claim based on partnership or joint venture agreement where plaintiff

28   alleged the parties "consulted on various business decisions, such as 'who to hire as a potential

CTO' and whether to accept a third party's offer" but failed to "allege she had an equal vote in any final management decision"); *see also Connolly*, 36 Cal. App. 3d at 364-65 (finding "essential element of *right* to joint control was absent" where "court could have reasonably inferred [plaintiffs] were invited to participate in [marketing] decisions, not because they had a voice in management decisions ..., but because they were expected to provide their skills and services [to the enterprise].") EcoHub here does not allege any agreement as to joint control of the alleged partnership or joint venture. (*See generally*, FAC). Indeed, it alleges a complete absence of joint control because all of the ultimate decision-making authority rested with Nortech. EcoHub's allegations that a partnership or joint venture existed are also internally contradictory and implausible. For one, its claim that Nortech "demanded" EcoHub demonstrate that it was able to secure financing for the "EcoHub facility in Roseville" highlights the parties' respective independence. (¶ 26.) While EcoHub decries Nortech's request as "bad faith," it alleges that financing the facility was its own responsibility, not a shared one. (*See* ¶¶ 7, 26.)

Thus, EcoHub's claim for breach of fiduciary duty based on the existence of a joint venture or partnership relationship should be dismissed.

### 2. EcoHub Fails to Plead Facts Sufficient to Demonstrate any Breach of Fiduciary Duty by Nortech.

Even assuming *arguendo* a fiduciary relationship existed, EcoHub fails to plead facts sufficient to demonstrate any breach. For starters, EcoHub repeatedly attributes acts or omissions alleged to be fiduciary breaches to the collective "Defendants" or to "Nortech and Recology" without clearly identifying who is alleged to have done what. (*See* ¶¶ 4-7, 22-23, 27-28, 30.) This falls far short of EcoHub's burden under Federal Rule of Civil Procedure 8(a)(2), which requires the plaintiff to allege the basis of its claim against each defendant. *See Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) ("Plaintiff must allege the basis of his claim against each defendant to satisfy Federal Rule of Civil Procedure 8(a)(2), which requires a short and plain statement of the claim to put defendants on sufficient notice of the allegations against them"). Moreover, it is unclear how any alleged acts and omissions by Recology—one of Nortech's three members—can demonstrate any fiduciary breach by Nortech.

Further, a partner's duty of care to other partners "is limited to refraining from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law." Cal. Corp. Code § 16404(c). Rather than pleading gross negligence or reckless or intentional misconduct, EcoHub alleges Nortech breached its duty because it did not take EcoHub's advice in pitching WPWMA, edited portions of EcoHub's proposed submissions to WPWMA, and otherwise did not engage with WPWMA in the manner that EcoHub desired. (*See, e.g.*, ¶ 22.) At most, EcoHub alleges a lack of diligence and ineffective business strategy on Nortech's part, which is not actionable as a fiduciary breach. *See T'Bear v. Forman*, 359 F. Supp. 3d 882, 901 (N.D. Cal. 2019).

More to the point, EcoHub's allegations of fiduciary breach, when considered as a whole, ask the Court to accept that Nortech decided in April 2020 to spend the subsequent eight months actively and intentionally subverting its own economic interest in extending Nortech's existing contract with WPWMA and, later through an unsuccessful RFP response, just to "prevent[] the implementation of EcoHub's far superior" business model that apparently—by EcoHub's own admission—was not "superior" enough to win the RFP or any contract on its own. (¶¶ 8, 27.) This requires the Court to infer that Nortech acted in an economically irrational manner that was directly contrary to its own economic interests, which is an inference courts will not indulge "without some explanation." *Adam v. Silicon Valley Bancshares*, No. C 93-20399 RMW (EAI), 1994 WL 619300, at *4 (N.D. Cal. Feb. 8, 1994). EcoHub offers no explanation. Likely because none exists. *See Hernandez v. TLC of the Bay Area, Inc.*, 263 F. Supp. 3d 849, 853 (N.D. Cal. 2017) (granting motion to dismiss and finding allegations implausible because of plaintiff's failure to plead any facts tending to exclude an obvious alternative explanation).

**B.      EcoHub's Intentional and Negligent Interference with Prospective Business Advantage Claims Both Fail.**

**1.      The Interference Claims are Barred by the Applicable Two-Year Statute of Limitations.**

The statute of limitations for intentional or negligent interference with prospective economic advantage is two years under California Code of Civil Procedure section 339(1). *Motha v. Time Warner Cable Inc.*, No. 16-cv-03585-HSG, 2017 WL 3617105, at *2 (N.D. Cal. Aug. 23, 2017). The claim accrues "at the date of the wrongful act." *DC Comics v. Pac. Pictures Corp.*, 938 F. Supp.

2d 941, 948 (C.D. Cal. 2013); *see also Knoell v. Petrovich*, 76 Cal. App. 4th 164, 168 (1999) (noting an interference claim based on defamatory statements accrued when the statements were published). The accrual date may be delayed only until the plaintiff "has, or should have, inquiry notice" of the claims, and the plaintiff must plead specific facts to "show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807-08 (2005); *Agape Family Worship Center, Inc. v. Gridiron*, No. 5:15-cv-1465-ODW-SPx, 2016 WL 3003207 at *3-4 (C.D. Cal. May 24, 2016) (rejecting application of delayed discovery rule where plaintiff failed to allege reasonable diligence in uncovering theft from its financial accountant that had been ongoing for a period of seven years notwithstanding the fiduciary relationship between the parties).

In this case, EcoHub's claims accrued on November 17, 2020, and are barred by the statute of limitations. This is because EcoHub's interference claims are predicated on the alleged fiduciary relationship that existed between Nortech and EcoHub prior to the termination of the parties' relationship by Nortech on November 17, 2020. Therefore, any acts or omissions that occurred after that date—including, for example, that Nortech (like EcoHub) submitted its own separate response to the WPWMA RFP (¶¶ 49, 65)—cannot support its interference claims. *See Fare v. Genworth Financial Inc.*, No. 10cv824 L(BGS), 2011 WL 13177358, at *3 (S.D. Cal. Jan. 18, 2011) (claims based on a fiduciary relationship cannot accrue after the fiduciary relationship is frustrated).[5]

Even if EcoHub could seek to ground its claims on prior alleged interference that it discovered after the fiduciary relationship had ended on November 17, 2020 (and it cannot), the FAC confirms that EcoHub was well aware of other alleged similar interference by Nortech *in real time* prior to that date. Thus, that EcoHub allegedly discovered "significant portions of the [alleged] interference" after December 30, 2020 through phone calls with unspecified but somehow informed "Nortech sources and individuals" in January 2021 (*see* ¶¶ 49, 65) is of no moment because EcoHub does not plead "the inability to have made earlier discovery despite reasonable diligence." *See Fox*, 35 Cal. 4th at 807-08. For example, EcoHub alleges that it had an economic relationship with

---

[5]It is unclear how WPWMA's alleged publication of an agenda April 2021 could constitute an actionable act of interference *by Nortech*. (*See* ¶¶ 49, 65.)

WPWMA while it worked to obtain both the Nortech contract extension and the WPWMA RFP. (¶ 45.) However, EcoHub describes a litany of Nortech's "wrongful and careless behavior" during that same period from May to September 2020. (¶¶ 22, 45.) Indeed, EcoHub was aware on June 5, 2020, that Nortech and Recology "edited out substantial and important" portions of EcoHub's draft proposal to WPWMA. (¶ 22(c).) EcoHub was also aware that Nortech allegedly "omitted any substantive discussion of EcoHub's technology and key [selling points]" when it made a "wholly incomplete and ineffective presentation" to WPWMA in September 2020. (¶ 22(k)-(l); *see also* ¶¶ 22(b), (c), (f), (i), (j), 24-27 [alleged fiduciary breaches by Defendants that EcoHub was aware of prior to September 17, 2020].) Nortech then "abruptly" terminated any joint efforts with EcoHub on November 17, 2020. (¶¶ 26-27.) Thus, EcoHub's interference claims accrued by November 17, 2020 when Nortech had, according to the FAC, breached its fiduciary obligations to EcoHub, thereby allegedly tortuously interfering with EcoHub's ability to obtain any prospective economic relationship with WPWMA. (¶¶ 44, 50, 65-66; *see also* ¶¶ 49, 65 [alleging that Nortech's termination of it left EcoHub unable to find "an adequate partner for responding to the RFP"].)

EcoHub also cannot claim the benefits of the delayed discovery rule to save its untimely interference claims. It vaguely alleges that it did not discover "significant portions" of the [allegedly] "interfering actions" until January 2021. (*See* ¶¶ 43, 49, 58, 65.) But, EcoHub did not and cannot explain how, despite months of Nortech's alleged wrongful or careless actions—all of which it had a front and center seat to—it could not have discovered the alleged additional acts of interference sooner. (*See id.*) Indeed, EcoHub was at least on inquiry notice in November 2020 when Nortech's attorney "came out of the woodwork" and ended "all discussions" with EcoHub. (¶ 26.) As EcoHub's own allegations confirm, it was on inquiry notice of multiple instances of allegedly interfering conduct prior to the termination of the parties' relationship on November 17, 2020, at the latest, and its claims are therefore barred. There is no reason EcoHub could not have discovered the alleged interference prior to December 30, 2020, given it was aware of much of it in real time.

/ / /

/ / /

/ / /

19356648.13

1

2

**2.      EcoHub Fails to State Claims for Either Intentional or Negligent Interference With Prospective Business Advantage.**

3

4

5

6

7

8

9

10

11

12

In order to state a claim for intentional interference, EcoHub must allege "(1) an economic relationship between [EcoHub] and some third party, with the probability of future economic benefit to [EcoHub]; (2) [Nortech's] knowledge of the relationship; (3) intentional acts on the part of [Nortech] designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to [EcoHub] proximately caused by the acts of [Nortech]." *Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 521-22 (1996). EcoHub also must allege an independent wrongful act aside from the interference itself. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1158-59 (2003). The elements are the same for negligent interference although EcoHub need only plead Nortech acted negligently. *Venhaus v. Shultz*, 155 Cal. App. 4th 1072, 1078–80 (2007).

13

14

15

16

17

For both interference claims, EcoHub claims Nortech interfered with prospective economic benefits that EcoHub hoped to reap either by (1) virtue of the services it might provide in connection with Nortech's potential future contract with WPWMA or (2) by virtue of a separate potential future contract between WPWMA and EcoHub.[6] (¶¶ 45, 60.) EcoHub fails to sufficiently allege facts to establish multiple required elements of both claims.

18

**a.      EcoHub Fails to Allege a Wrongful Act.**

19

20

21

22

23

24

25

EcoHub fails to allege the requisite "wrongful" act of interference. Interference alone does not suffice. To be "wrongful," the act "[must be] proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply Co.*, 29 Cal. 4th at 1159. As the "wrongful" acts for both the negligent and intentional interference claims, EcoHub asserts that Nortech and EcoHub engaged in the "wrongful conduct" and fiduciary breaches set forth in paragraphs 22(a)-(l), 24, 26-28. (¶¶ 47-48, 65.) EcoHub alleges this conduct was "oppressive, fraudulent, malicious and/or in conscious disregard for EcoHub's rights and interest." (¶¶ 50, 66.)

26

27

28

---

[6]EcoHub's claim it could have secured a separate contract with WPWMA is contradicted by the allegation that Nortech's termination of the parties' relationship left EcoHub "insufficient time to find a suitable replacement partner in responding to the WPWMA's RFP." (¶ 28.)

19356648.13

1    But, again, interference is not enough; the act constituting the interference must itself violate

2    some other legal standard. *Name.Space, Inc. v. Internet Corp. for Assigned Names & Nos.*, 795 F.3d

3    1124, 1133 (9th Cir. 2015). Because EcoHub's breach of fiduciary duty claim fails, for each of the

4    reasons discussed above, it fails to plead an independent wrongful act predicated on any alleged

5    fiduciary breach. *See Fox Prod., Inc. v. Caterpillar, Inc.*, No. CV 06-2874-JFW (FFMx), 2007 WL

6    5102325, at *5 (C.D. Cal. May 29, 2007).

7    To the extent EcoHub claims the wrongful act is predicated on fraud, that "qualifies as an

8    independently wrongful act, but only if it [is] adequately pled." *UMG Recordings, Inc. v. Glob.*

9    *Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1117 (C.D. Cal. 2015). "Claims sounding in fraud or mistake

10   are subject to the heightened pleading requirements of [Rule] 9(b), which require[s] that a plaintiff

11   alleging fraud 'state with particularity the circumstances constituting fraud.'" *Coleman-Anacleto v.*

12   *Samsung Elecs. Am., Inc.*, No. 16-CV-02941-LHK, 2016 WL 4729302, at *4 (N.D. Cal. Sept. 12,

13   2016) (quoting Fed. R. Civ. P. 9(b)). EcoHub has inexorably failed to do so here as it fails to point

14   to any specific fraudulent statements, let alone identifying the requisite "who, what, when, where,

15   and how" of those alleged statements. *Vess,* 317 F.3d at 1106 (internal quotations omitted).

16   Instead, EcoHub takes aim at a series of business choices without explaining how those

17   choices impeded its prospective business advantage or amounted to fraud. For example, EcoHub

18   generally lumps Nortech and Recology together and alleges that over the course of about six months,

19   Defendants presented information to WPWMA in a way that EcoHub did not like or found

20   "incomplete." (¶¶ 43, 58.) But EchoHub repeatedly fails to distinguish what either Defendant did,

21   and it makes no effort to show how the allegedly omitted information was fraudulent in nature.

22   These shotgun allegations fall far short of the heightened pleading requirements under Rule 9(b).

23   *See Vess,* 317 F.3d at 1106. EcoHub also generally alleges that "Defendants" refused to connect

24   EcoHub with their own business contacts and failed to lobby hard enough to "push the proposed

25   deal" with WPWMA "over the top" to benefit EcoHub. (¶ 22.) But, again, what it does not allege is

26   how any of those allegedly deficient efforts amount to fraud. And, nowhere does EcoHub plead any

27   specific facts showing that it was any way defrauded, or relied on any allegedly fraudulent statement

28

1   by Defendants amounting to a wrongful act.[7]

2   **b.  EcoHub Fails to Allege that Nortech is a Third Party to the
       Purported Relationships Between EcoHub and WPWMA.**

3

4       "The tort of intentional interference with economic advantage affords a remedy for wrongful

5   interference with an economic relationship by a *third party*." *Kruse v. Bank of Am.,* 202 Cal. App.

6   3d 38, 66 (1988). According to the FAC, Nortech was not a third party to the prospective business

7   opportunity that EcoHub sought with WPWMA—at least to the extent the interference claims are

8   predicated on an amendment/extension of Nortech's existing contract with WPWMA or Nortech's

9   response to the WPWMA RFP. (¶¶ 45, 60.) To the contrary, Nortech allegedly was the principal

10  source of those prospective business opportunities, as EcoHub's prospects with WPWMA in both

11  instances hinged on Nortech obtaining an extension of *Nortech's* existing contract with WPWMA

12  and then later *Nortech's* successful RFP response. (*See* ¶¶ 18(a)-(b), 23-25, 45.) According to

13  EcoHub's own allegations, its interactions with WPWMA were all in connection with those efforts.

14  (*See* ¶¶ 18(a), (c)-(d), 22.)

15      But, a contracting party "is incapable of interfering with the performance of his or her own

16  contract." *PM Grp., Inc. v. Stewart*, 154 Cal. App. 4th 55, 65 (2007). Consistently, where a

17  contracting party's failure to perform its contract purportedly disrupts derivative relationships

18  premised on that performance, no liability for tortious interference applies. *Id.*; *see also Maritz Inc.*

19  *v. Carlson Marktg. Grp., Inc.*, No. C 07-05585 JSW, 2009 WL 3561521, at *4 (N.D. Cal. Oct. 30,

20  2009) (defendant was "interested party" rather than "stranger" to contract to which defendant was

21  not signatory because defendant's performance was contractually required). "Neither a party to a

22  contract, nor its agent, may be liable for interference with their own contract or related subcontracts

23  that would require the performance of the party to the primary contract." *O'M & Assocs., LLC v.*

24  *Ozanne*, No. 10cv2130 AJB (RBB), 2011 WL 4433645, at *4 (S.D. Cal. Sept. 21, 2011).

25  _____

26  [7]Moreover, and similar to its fiduciary breach allegations, EcoHub repeatedly attributes the
    allegedly interfering acts and conduct to the collective "Defendants" or to "Nortech and Recology"
27  without identifying who is alleged to have done what. (*See, e.g.,* ¶¶ 4-7, 22-23, 27-28, 30, 62, 65.)
    This falls far short of EcoHub's burden to allege the basis of its' claim against each Defendant. *See*
28  *Gauvin*, 682 F. Supp. at 1071.

Here, EcoHub's allegations confirm Nortech was a "necessary party to the prospective relationship" between EcoHub and the WPWMA which forecloses any interference claim. *See L.A. Land Co. v. Brunswick Corp.*, 6 F.3d 1422, 1430 (9th Cir. 1993). For example, in *Brunswick*, the plaintiff needed the defendant to prepare a loan package to secure a business loan from a target financier. *Id.* at 1424. The plaintiff claimed the defendant had delayed processing the loan so that it could get a head start on developing its own competitor business. *Id.* The Ninth Circuit reversed a multimillion dollar judgment for plaintiff because the defendant was a "necessary party" to the prospective relationship between the plaintiff and the financier. *Id.* at 1430.

This case is similar to *Brunswick*. Here, the prospective relationship EcoHub desired with WPWMA depended upon Nortech securing an extension of its existing contract with WPWMA, or by successfully obtaining a new contract through Nortech's later RFP bid. EcoHub approached Nortech with a proposal to jointly pitch WPWMA to extend Nortech's existing contract. (¶18(a).) But EcoHub did not have its own relationships or "influence" with WPWMA, and instead allegedly pushed Defendants to use their "extensive contacts, influence, and lobbyists" to arrange meetings with WPWMA for EcoHub. (*Id.*, ¶ 22(e).) Thus, the only "economic relationship" EcoHub had with WPWMA was dependent on Nortech's longstanding relationship and economic prospects with WPWMA. Nortech was a necessary party to that prospective relationship and thus cannot be liable for tortious interference.

        **c.**     **EcoHub Fails to Allege an Existing, Ongoing Relationship with WPWMA That was Likely to Produce Economic Benefit.**

EcoHub's interference claims also fails because the FAC does not plead an existing economic relationship between EcoHub and WPWMA that was reasonably likely to produce economic advantage. *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 713 (2007). "An allegation of interference with a *potential* customer is too speculative to state a claim for interference with prospective economic advantage." *TPS Utilicom Servs., Inc. v. AT&T Corp.*, 223 F. Supp. 2d 1089, 1106 (C.D. Cal. 2002). "Rather, an expectation of economic advantage based on an ongoing economic relationship is required." *Id.*

Critically, it must be reasonably probable the relationship would have yielded economic benefits had it not been derailed by the alleged interference, and California law is clear that, as here, the potential to win a public agency contract is too speculative to support an interference claim. *See Roy Allan Slurry Seal, Inc. v. Am. Asphalt South, Inc.*, 2 Cal. 5th 505, 509-11 (2017) (prospective economic relationship too speculative because public agency had discretion to deny all bids); *Blank v. Kirwan*, 39 Cal. 3d 311, 330-31 (1985) (affirming order sustaining demurrer because relationship with public agency could not be basis for commercial expectancy because city council had discretion to deny license and plaintiff thus had "at most a hope for an economic relationship and a desire for future benefit."); *see also Kamal v. Cnty. of L.A.,* No. CV 17-1986-RGK (DFM), 2019 WL 7195903, at *3-4 (C.D. Cal. Nov. 26, 2019) (citing *Roy Allan* and *Blank* in rejecting the plaintiff's interference claim in a RICO suit as a "hope" of compensation from the county).

Here, EcoHub sued Nortech because WPWMA did not extend Nortech's then-existing contract, and because EcoHub did not win the RFP bid. (*See* ¶¶ 23, 29.) Similar to the plaintiff in *Roy Allen*, EcoHub asserts that "but for" Defendant's conduct, it (or it and Nortech) would have secured a public contract with WPWMA instead of non-party FCC. (*Id.* ¶ 29.) EcoHub assumes its inclusion in the WPWMA contract was "superior" to FCC, but does not explain why or how. (*See id.*) Regardless, EcoHub assumes too much—WPWMA, like any public entity, had the discretion to reject all bids. (*See* Request for Judicial Notice, filed herewith, citing *inter alia Placer Ranch, Inc. v. Western Placer Waste Management Auth.*, No. C040523, 2004 WL 2335229, at *1 (Cal. Ct. App. Oct. 18, 2004) (noting that "[WPWMA] is a public agency created under the Joint Exercise of Powers Act.") Indeed, it rejected both EcoHub and Nortech's bids. (*See id.*) Despite EcoHub's own assessment of the effectiveness of its technology, WPWMA disagreed when it opted not to extend Nortech's then-existing contract and when it rejected Nortech and EcoHub's subsequent RFP bids. (*See id.* ¶¶ 18(c), 22-23.) Thus, EcoHub had "at most a hope for an economic relationship and a desire for future benefit" with WPWMA that never came to fruition. *Roy Allen*, 2 Cal. 5th at 517.[8]

---

[8]EcoHub's inability to plead a reasonable probability of securing the WPWMA contract also means it cannot establish the causation element for its claim. *See Youst v. Longo*, 43 Cal. 3d 64, 71-72 (1987) (describing reasonable probability as the "threshold causation requirement").

19356648.13

1    Accordingly, EcoHub cannot sustain its interference claims for the "missed opportunity" of

2    the WPWMA contract as a matter of law, and the Court should dismiss these claims with prejudice.

3    **VI.    CONCLUSION**

4    For all the foregoing reasons, Nortech requests this Court grant Nortech's motion to dismiss

5    and dismiss the FAC in its entirety as to Nortech.

6    DATED: March 2, 2023                    HANSON BRIDGETT LLP

7

8                                                  By:     */s/Lawrence M. Cirelli*

9                                                        LAWRENCE M. CIRELLI
                                                         MATTHEW J. PECK
10                                                       G. THOMAS RIVERA III
                                                         Attorneys for Defendant
11                                                       NORTECH WASTE LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28