UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ECOHUB, LLC,

            Plaintiff,

   v.

RECOLOGY INC., et al.,

            Defendants.

Case No. 22-cv-09181-TSH

**ORDER RE: MOTIONS TO DISMISS**

Re: Dkt. Nos. 42, 43

## I.    INTRODUCTION

Pending before the Court are Defendant Recology Inc.'s ("Recology's") Motion to Dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) (ECF No. 43) and Defendant Nortech Waste LLC's ("Nortech's") Motion to Dismiss pursuant to Rule 12(b)(6) (ECF No. 42). EcoHub, LLC ("EcoHub") filed separate Oppositions. ECF Nos. 44, 45. Recology and Nortech filed separate Replies. ECF Nos. 46, 47. For the reasons stated below, the Court **GRANTS IN PART AND DENIES IN PART** Nortech's Motion to Dismiss and **DENIES** Recology's Motion to Dismiss.[1]

## II.    BACKGROUND

### A.    Factual Background

Plaintiff EcoHub is a limited liability company based in Texas. ECF No. 41 ¶ 10. Recology is a corporation, and Nortech is a limited liability company, both based in California. *Id.* ¶¶ 11-12. Recology is a part-owner of Nortech and held one of three Nortech Board of Directors' ("Board") seats. *Id.* ¶ 47. Recology developed the waste collection and processing

---

[1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 12, 14, 15.

United States District Court
Northern District of California

system, including 3 bins and 3 routes, which is present in nearly all California counties. *Id.* ¶ 2. EcoHub developed a model for waste collection that includes only 1 bin and 1 route. *Id.* ¶ 3.

Nortech had a contract with Western Placer Waste Management Authority ("WPWMA") to manage and operate WPWMA's facility in Roseville, California. *Id.* ¶ 4.

Throughout 2019 and 2020 George Gitschel, EcoHub's Chairman and CEO, and Paul Szura, Nortech's Vice President and General Manager, agreed in numerous oral discussions and writings to jointly pursue a long-term contract with WPWMA to operate their Roseville facility. *Id.* ¶ 18. Initially, EcoHub and Nortech discussed and planned to establish a new legal entity co-owned and jointly controlled by the parties. *Id.* Gitschel and Szura decided on February 7, 2020 not to create a separate entity because doing so could result in bureaucratic resistance from WPWMA in seeking a contract extension. *Id.*

On March 31, 2020, Szura sent Gitschel confidential information from Nortech to formulate a proposal for the WPWMA contract extension. *Id.* ¶ 18(a). On April 28, 2020, EcoHub sent Nortech a proposal to be jointly presented to WPWMA regarding extension of Nortech's WPWMA contract. *Id.* ¶ 18(b). Nortech and EcoHub made edits to the proposal, and on May 5, 2020 Nortech's Board voted to proceed with EcoHub to jointly pitch WPWMA to grant Nortech a 20-year contract extension. *Id.*

In the event WPWMA extended Nortech's contract, Nortech would have received $10 per ton of municipal solid waste or recycled paper and cardboard processed at the Roseville facility, plus cost-of-living increases. *Id.* ¶ 19. EcoHub would have received all remaining profits from the operation of the facility. *Id.*

On June 5, 2020, Nortech's Board voted to approve a modified proposal jointly prepared by Nortech and EcoHub, and Nortech provided the proposal to WPWMA. *Id.* ¶ 18(c). Nortech and Recology edited out important portions of the June 5, 2020 submission to WPWMA. *Id.* ¶ 26(c). EcoHub delivered a presentation to WPWMA on August 12, 2020, detailing EcoHub's technology and its proposed inclusion in the plans for Nortech and EcoHub to partner in operating the Roseville facility. *Id.* ¶ 18(d). On August 25, 2020, Nortech sent WPWMA a package of materials drafted and edited by EcoHub and Nortech. *Id.* ¶ 18(e). Nortech's Board approved

1    another modification to the proposal on September 1, 2020, and Nortech sent an updated joint

2    proposal to WPWMA.  *Id.* ¶ 18(f).

3          Throughout working together on the proposal, Nortech failed to provide EcoHub with

4    information relevant to joint efforts to contract with WPWMA.  *Id.* ¶ 26(a).  Nortech and

5    Recology repeatedly refused EcoHub's requests to present EcoHub materials to WPWMA.  *See id.*

6    ¶ 26(b), (h), (j), (k).  Further, Nortech and Recology refused numerous requests to arrange follow-

7    up meetings with WPWMA members.  *Id.* ¶ 26(e).

8          On September 17, 2020, WPWMA's Board of Directors met and Nortech delivered an

9    additional presentation regarding the contract extension, identifying the proposal as including a

10   "partnership with EcoHub."  *Id.* ¶ 18(g).  WPWMA voted to proceed with a Request for Proposal

11   ("RFP") process, rather than continuing discussions with Nortech about a contract extension.  *Id.* ¶

12   18(h).

13         Recology and Nortech shared confidential information with R3 Consulting, which drafted

14   the RFP issued by WPWMA.  *Id.* ¶ 26(f).

15         On October 20, 2020, the Nortech Board voted to continue working with EcoHub.  *Id.*

16   18(i).  The parties agreed they would work together until at least they submitted a joint response to

17   the RFP.  *Id.*  Recology voted against continuing to work together.  *Id.* ¶ 28.  Recology explained

18   that it wanted to make its own bid to the RFP, but the other Board members opposed this idea

19   because Recology would be competing with Nortech in violation of the Nortech operating

20   agreement.  *Id.*  Nortech and EcoHub continued working together to prepare a response to the

21   RFP, including phone conversations, exchanging written materials, and internal checklists

22   regarding the respective responsibilities of the two parties.  *Id.* ¶ 18(i).

23         On November 10, 2020, an attorney for Nortech sent EcoHub a demand that, within three

24   days, EcoHub produce a financing commitment letter showing it was able to secure at least $350

25   million to fund the contemplated EcoHub facility in Roseville.  *Id.* ¶ 30.  This demand ran counter

26   to prior discussions between Nortech and EcoHub, where it was understood that EcoHub would be

27   permitted up to 12 months to secure financing.  *Id.* ¶ 31.  Further, the RFP issued by WPWMA did

28   not require anything approaching the financing commitment letter Nortech was demanding.  *Id.*

United States District Court
Northern District of California

Nortech's attorney emailed EcoHub on November 17, 2020, purporting to terminate discussions between Nortech and EcoHub concerning efforts to jointly respond to the RFP, citing the failure to provide the financing commitment letter.  *Id.*

EcoHub and Nortech continued to have discussions about resuming their joint work into January 2021.  *Id.*  On January 6, 2021, Szura told Gitschel he would not submit an RFP response to the WPWMA without EcoHub.  *Id.*

On January 11, 2021, Nortech submitted its own competing response to WPWMA.  *Id.* ¶ 33.  WPWMA eventually awarded the relevant contract to another party, not EcoHub or Nortech. *Id.* ¶ 35.

**B.      Procedural Background**

On December 30, 2022, Plaintiff filed the instant action against Recology, Nortech, and Does 1-10.  ECF No. 1.  On February 16, 2023, Plaintiff filed a First Amended Complaint ("FAC").  ECF No. 21.  Nortech and Recology separately filed motions to dismiss the FAC on March 2, 2023.  ECF Nos. 24, 27.  This Court ordered on March 21, 2023 for the motions to dismiss to be terminated as moot in light of the parties' stipulation that Plaintiff could file a Second Amended Complaint.  ECF No. 29.

On March 23, 2023, Plaintiff filed a Second Amended Complaint ("SAC").  ECF No. 30. On April 24, 2023, Nortech and Recology filed motions to dismiss the SAC pursuant to Rule 12(b)(6).  ECF Nos. 31, 32.  In a June 6, 2023 order ("Prior Order"), the Court granted Defendants motions to dismiss with leave to amend.  ECF No. 40.

On July 6, 2023, EcoHub filed a Third Amended Complaint ("TAC") alleging the following causes of action: 1) Breach of Fiduciary Duties (against Nortech); 2) Aiding and Abetting Breach of Fiduciary Duties (against Recology and Doe Defendants); 3) Intentional Interference with Prospective Economic Advantage (against all Defendants); and 4) Negligent Interference with Prospective Economic Advantage (against all Defendants).  ECF No. 41.

On July 20, 2023, Nortech filed a Motion to Dismiss the TAC pursuant to Rule 12(b)(6). ECF No. 42.  On August 3, 2023, EcoHub filed an Opposition.  ECF No. 44.  On August 10, 2023, Nortech filed a Reply.  ECF No. 46.

1    On July 20, 2023, Recology filed a Motion to Dismiss the TAC pursuant to Rule 12(b)(6).

2  ECF No. 43.  On August 3, 2023, EcoHub filed an Opposition.  ECF No. 45.  On August 10, 2023,

3  Recology filed a Reply.  ECF No. 47.

### III.    LEGAL STANDARD

5    A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal

6  sufficiency of a claim.  A claim may be dismissed only if it appears beyond doubt that the plaintiff

7  can prove no set of facts in support of his claim which would entitle him to relief."  *Cook v.*

8  *Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (citation and quotation marks omitted).  Rule 8

9  provides that a complaint must contain a "short and plain statement of the claim showing that the

10  pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Thus, a complaint must plead "enough facts

11  to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

12  570 (2007).  Plausibility does not mean probability, but it requires "more than a sheer possibility

13  that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009).  A complaint

14  must therefore provide a defendant with "fair notice" of the claims against it and the grounds for

15  relief.  *Twombly*, 550 U.S. at 555 (quotations and citation omitted).

16    In considering a motion to dismiss, the court accepts factual allegations in the complaint as

17  true and construes the pleadings in the light most favorable to the nonmoving party.  *Manzarek v.*

18  *St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Erickson v. Pardus*, 551

19  U.S. 89, 93–94 (2007).  However, "the tenet that a court must accept a complaint's allegations as

20  true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere

21  conclusory statements."  *Iqbal*, 556 U.S. at 678.

22    If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no

23  request to amend the pleading was made, unless it determines that the pleading could not possibly

24  be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en

25  banc) (citations and quotations omitted).  A court "may exercise its discretion to deny leave to

26  amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to

27  cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . .,

28  [and] futility of amendment.'"  *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th

United States District Court
Northern District of California

5

1    Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

2                                    **IV.   DISCUSSION**

3    **A.    Nortech's Request for Judicial Notice or Incorporation by Reference**

4               Nortech requests that the Court take judicial notice of or incorporate by reference the

5    following: 1) the fact that WPWMA is a public entity; 2) WPWMA's February 10, 2021 letter and

6    the undisputed facts contained therein; 3) the "EcoHub-Nortech BOD Proposal PPT"; 4)

7    EcoHub's April 28, 2020 Proposal Letter; and 5) the Draft Waste Supply and Operating

8    Agreement.  ECF No. 42-2 at 3-6.

9               Normally, when adjudicating a motion to dismiss brought pursuant to Rule 12(b)(6), the

10   Court's consideration of extra-pleading materials is limited and matters outside of the pleading

11   cannot be considered without converting the motion into a motion for summary judgment.  *See*

12   Fed. R. Civ. P. 12(b)(6); 12(d).  There are two exceptions: the incorporation-by-reference doctrine

13   and judicial notice under Federal Rule of Evidence ("Rule of Evidence") 201.  *Khoja v. Orexigen*

14   *Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).  Under Rule of Evidence 201, the Court

15   may take judicial notice of matters that are (1) generally known within the trial court's territorial

16   jurisdiction or (2) capable of accurate and ready determination by resort to sources whose

17   accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b).  Under the doctrine of

18   incorporation-by-reference, the Court may consider a document not attached to the complaint

19   provided the complaint "necessarily relies" on the document or contents thereof, the document's

20   authenticity is uncontested, and the document's relevance is uncontested.  *Coto Settlement v.*

21   *Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *United States v. Ritchie*, 342 F.3d 903, 908 (9th

22   Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by

23   reference into a complaint if the plaintiff refers extensively to the document or the document

24   forms the basis of the plaintiff's claim.").  "The defendant may offer such a document, and the

25   district court may treat such a document as part of the complaint, and thus may assume that its

26   contents are true for purposes of a motion to dismiss under Rule 12(b)(6)."  *Ritchie*, 342 F.3d at

27   908.

28               As it did in its Prior Order, the Court takes judicial notice that WPWMA is a public agency

United States District Court
Northern District of California

1   under Rule of Evidence 201, as EcoHub does not contest this fact and it is readily determinable.

2   Accordingly, the Court **GRANTS** Nortech's Request for Judicial Notice of the fact that WPWMA

3   is a public agency.

4   The Court also, again, takes judicial notice of portions of the February 10, 2021 WPWMA

5   letter as the letter was produced by a government agency and EcoHub does not dispute its

6   authenticity.  *See e.g., Cork v. CC-Palo Alto, Inc.*, 534 F. Supp. 3d 1156, 1171 (N.D. Cal. 2021)

7   (taking judicial notice of a letter sent by a California state agency).  As detailed in the Prior Order,

8   the Court does not take judicial notice of the entirety of the letter, but takes judicial notice that

9   EcoHub submitted an RFP response on January 11, 2021, and that WPWMA rejected the response

10  on February 10, 2021.  *See* ECF No. 42-2 at 9.  Accordingly, the Court **GRANTS** Nortech's

11  Request for Judicial Notice of the February 10, 2021 WPWMA letter, but only of the specified

12  facts.

13  The Court determines not to take judicial notice or incorporate by reference the EcoHub-

14  Nortech BOD Proposal PPT related to an October 2020 presentation given by EcoHub CEO

15  George Gitschel to Nortech's Board.  ECF No. 42-2 at 4-5; Szura Decl. Ex B.  That Gitschel gave

16  a presentation on October 13, 2020 is stated in the TAC, but the Court does not find that the TAC

17  relies upon the contents of that presentation to make out its claims.  *See* ECF No. 41 ¶ 18(h)

18  (referring to Gitschel making a proposal to the Nortech's Board on October 13, 2020 and that the

19  proposal contains largely the same information as presented during contract discussions); ¶ 40

20  (stating that Recology was present at the October 13, 2020 meeting).  While Nortech may be

21  correct that the presentation is relevant to determining the parameters of the parties' relationship,

22  that does not render it appropriate for incorporation or judicial notice.  Such a standard would

23  permit judicial notice of any document relevant to a party's defense.  Accordingly, the Court

24  **DENIES** Nortech's Request for Judicial Notice of the EcoHub-Nortech BOD Proposal PPT.

25  The Court draws a similar conclusion regarding Nortech's request to incorporate by

26  reference EcoHub's April 28, 2020 Proposal Letter.  The TAC refers to an April 28, 2020

27  proposal, but does not refer to its contents other than to say that the proposal was edited by both

28  EcoHub and Nortech.  ECF No. 41 ¶ 18(b). While this letter may be properly weighed as evidence

United States District Court
Northern District of California

of the parties' relationship, the fact that it has relevance for the scope of that relationship does not render it appropriately part of the TAC. *See Khoja*, 899 F.3d at 1002 ("[I]f the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint. Otherwise, defendants could use the doctrine to insert their own version of events into the complaint to defeat otherwise cognizable claims."). The TAC refers to dozens of documents discussing the parties' relationship. To cherry-pick certain documents referred to sparingly in the TAC runs the risk of allowing Nortech to insert its own version of events. Accordingly, the Court **DENIES** Nortech's Request for Judicial Notice of the April 28, 2020 Proposal Letter.

Nortech also requests that the Court incorporate by reference a Draft Waste Supply and Operating Agreement allegedly sent by EcoHub to Nortech. *See* ECF No. 42-2 at 5-6; Decl. of Paul Szura Ex. D. In its Prior Order the Court found that the references to the agreement in the SAC were not "extensive" enough to incorporate the document. *See* ECF No. 40 at 8. Nortech now identifies references to the agreement in exhibits attached to the TAC. *See* ECF No. 42-2 at 5-6. However, as the Court previously noted, it is not enough simply to "refer" to the document. *See Khoja*, 899 F.3d at 1003. Nortech's argument – that the exhibits are referred to in the TAC as examples of joint control and the exhibits in turn refer to the agreement such that the agreement is incorporated – is not compelling. The parties are welcome to litigate the meaning and pertinence of the proposed agreement, but the Court declines to do so at this stage based on minimal references to the agreement in more than a hundred pages of TAC exhibits. Accordingly, the Court **DENIES** Nortech's Request for Judicial Notice of the Draft Waste Supply and Operating Agreement.

**B.    Breach of Fiduciary Duty Against Nortech**

"The elements of a cause of action for breach of fiduciary duty are: (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach." *Stanley v. Richmond*, 35 Cal. App. 4th 1070, 1086 (1995). EcoHub's breach of fiduciary duty claim hinges on its allegations that it formed a partnership or joint venture with Nortech, and thus the parties owed each other fiduciary duties stemming from that partnership. ECF No. 41 ¶

18;  *see Cleveland v. Johnson*, 209 Cal. App. 4th 1315, 1339 (2012) ("[E]xamples of relationships that impose a fiduciary obligation to act on behalf of and for the benefit of another are a joint venture, a partnership, or an agency.") (quotation omitted).

Nortech argues that EcoHub has failed to plead the existence of a joint venture or partnership establishing Nortech owed EcoHub a fiduciary duty, and, even if Nortech owed a fiduciary duty, EcoHub has not plausibly alleged a breach.  ECF No. 42 at 9-18.  The Court addresses each argument in turn.

### 1.    Existence of a Joint Venture or Partnership

Under California law, "the association of two or more persons to carry on as coowners a business for profit forms a partnership, whether or not the persons intend to form a partnership." Cal. Corp. Code § 16202(a).  An agreement to form a partnership can be "written, oral, or implied."  Cal. Corp. Code § 16101(10).  "A joint venture differs little from a partnership." *Interserve, Inc. v. Fusion Garage PTE. LTD*., No. C 09-5812 RS PVT, 2010 WL 3339520, at *4 (N.D. Cal. Aug. 24, 2010).  "[T]he courts freely apply partnership law to joint ventures when appropriate," and "[f]rom a legal standpoint, both relationships are virtually the same." *Weiner v. Fleischman*, 54 Cal. 3d 476, 482 (1991).  "To establish a joint venture under California law, Plaintiffs must show 'an agreement between the parties under which they have a community of interest, that is, a joint interest, in a common business undertaking, an understanding as to the sharing of profits and losses, and a right of joint control.'"  *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1173 (9th Cir. 2022) (quoting *Connor v. Great W. Sav. & Loan Ass'n*, 69 Cal. 2d 850 (1968), *cert. denied sub nom. Ratha v. Phatthana Seafood Co.*, 143 S. Ct. 491 (2022)).  "The presence or absence of any of the various elements set forth [in the prior statute governing partnerships], . . . is not necessarily dispositive . . . .  [T]he crucial factor [is] the intent of the parties revealed in the terms of their agreement, *conduct, and the surrounding circumstances* when determining whether a partnership exists."  *Interserve, Inc.*, 2010 WL 3339520, at *5 n.3 (quoting *Holmes v. Lerner*, 74 Cal. App. 4th 442, 454 (1999), *as modified* (Sept. 7, 1999)) (emphasis in original).

Previously, the Court found that EcoHub's allegations did not indicate joint profits, and

United States District Court
Northern District of California

that the allegations of an agreement to joint control were vague and borderline conclusory.  ECF

No. 40 at 9-13.  The Court now finds the additional TAC allegations render plausible the existence

of a partnership or joint venture.  For one, EcoHub adds allegations suggestive of the parties'

intent.  *See Unruh-Haxton v. Regents of Univ. of California*, 162 Cal. App. 4th 343, 370 (2008), *as*

*modified* (May 15, 2008) ("Whether a joint venture actually exists depends on the intention of the

parties.") (quoting *April Enterprises, Inc. v. KTTV*, 147 Cal.App.3d 805, 819–820 (Cal. Ct. App.

1983)).  EcoHub alleges that George Gitschel, on behalf of EcoHub, and Paul Szura, on behalf of

Nortech, discussed orally in 2019 and 2020 the structure of the parties' relationship.  ECF No. 41

¶ 18.  The parties initially intended to create a legal entity that would be co-owned and jointly

controlled by the parties, but decided not to do so only because of concerns with WPWMA

bureaucracy.  *Id.*  Taken as true, these conversations plausibly suggest intent to operate jointly in

the project with WPWMA. [2]  *See Fredianelli v. Jenkins*, 931 F. Supp. 2d 1001, 1020 (N.D. Cal.

2013) ("Whether a partnership exists depends primarily on the intention of the parties, determined

from the terms of the parties' agreement *or from the surrounding circumstances.*") (emphasis

added).  Nortech argues these discussion occurred prior to a May 5, 2020 Nortech Board vote to

approve proceeding with EcoHub as a partner.  *See* ECF No. 46 at 4.  But the Board vote in May

2020 can be seen as confirmatory of the arrangements worked out over the course of the preceding

year.  And in any event, it is not necessary for EcoHub's claim to determine the exact day on

which the partnership or joint venture was formed, because even if the Board vote formally

commenced the arrangement, EcoHub alleges breaches after that time.  ECF No. 41 ¶ 26.

Beyond indications of intention, the TAC also includes subsequent conduct suggesting

joint control in the proposal process.  *See Billups v. Tiernan*, 11 Cal. App. 3d 372, 379 (Cal. Ct.

App. 1970) ("[S]ome degree of participation by partners in management and control of the

business is one of the primary elements of partnership.").  The Court previously found that it

---

[2] Nortech also argues that Paul Szura did not have authority to enter into a partnership or make statements about a partnership on behalf of Nortech.  ECF No. 42 at 4 n.2.  The Court finds that such a factual argument is outside the scope of its determination whether EcoHub has adequately pled the existence of a partnership.  Further, even if Szura did not have ultimate authority to form a partnership, his statements as Nortech's Vice President and General Manager may be suggestive of Nortech's intentions.

needed more specifics regarding the parties' relationship to infer joint control because SAC allegations claiming joint control were sparse and conclusory, and many of EcoHub's allegations of breach indicated a lack of control by EcoHub.  ECF No. 40 at 12-13.  EcoHub now alleges various parts of the proposal process for which it bore responsibility, as well as more detailed incidents of collaboration between the parties in preparing and submitting the proposal.  *See* ECF No. 41 ¶ 20(a) (Nortech emailed EcoHub with dozens of questions from WPWMA that Nortech identified as best addressed by EcoHub); ¶ 20(b) (EcoHub was the primary presenter at the August 12, 2020 presentation to WPWMA); ¶ 20(d) (on November 6, 2020 Nortech sent EcoHub an email showing how the parties would split up responsibilities for the bid).  These new allegations provide additional support to infer that the parties formed a legal partnership.  *See Second Measure, Inc. v. Kim*, 143 F. Supp. 3d 961, 972 (N.D. Cal. 2015) (finding partnership adequately alleged based on oral agreement as well as subsequent collaboration, including working long hours together); *Pepper, N.A. v. Expandi, Inc.*, No. 15-CV-04066 NC, 2016 WL 1611039, at *3 (N.D. Cal. Apr. 22, 2016) (finding evidence suggested partnership where presentation to secure contract was developed by both parties as part of a collaborative process and portions of the presentation related exclusively to plaintiff's capabilities and other portions related to the project as a whole); *Interserve, Inc.*, 2010 WL 3339520, at *6 ("[Parties'] cooperative efforts in developing the product were sufficient to give rise to an obligation on both parties' part not to usurp the fruits of those efforts.").  While Nortech argues that the TAC exhibits show Nortech was directing EcoHub and thus was in control, the Court does not consider the documents to be so clearly characterized and draws all inferences in EcoHub's favor.

For purposes of joint profits and losses, the Court also finds persuasive EcoHub's argument that the parties shared in the losses of the bidding process in trying to secure the RFP. ECF Nos. 44 at 6-7; 41 ¶ 19 ("During the period the parties attempted to secure the contract extension and, subsequently, sought to submit the winning bid to the RFP, both parties risked the time and money they spent working on and presenting proposals to the WPWMA."); *compare Pepper, N.A.*, 2016 WL 1611039, at *3 ("Defendants did not offer to pay Pepper for its consulting services if defendants lost the bid for the HP contract.  Rather, by attending the pitch together, the

1    parties understood that they would share in the profits of the contract if they were awarded it, or in

2    the loss of the contract, if they were not awarded it.").

3            In sum, the Court finds the TAC plausibly alleges a partnership or joint venture.

4        **2.      Breach of Duty**

5            **a.      Rule 8(a)(2) and Rule 9(b)**

6            Nortech also argues that EcoHub has failed to plead a cognizable breach of fiduciary duty.

7    ECF No. 42 at 15.  Nortech argues first that EcoHub fails to distinguish between Nortech's

8    conduct and Recology's conduct, and thus fails under Rule 8(a)(2) to put Nortech on notice of the

9    allegations against it.  ECF No. 42 at 15-16.

10            "Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain a 'short and plain

11    statement of the claim' sufficient to put a defendant on notice of the claims against it." *Steinley v.*

12    *Health Net, Inc.*, No. CV 18-5458 PSG (SKX), 2018 WL 6985318, at *5 (C.D. Cal. Dec. 4, 2018).

13    "Conclusory allegations that an indistinguishable group of defendants essentially engaged in

14    identical misconduct . . . are insufficient to show that plaintiff is entitled to relief from any

15    *individual* defendant." *Williams v. Cnty. of L.A. Dep't of Soc. Servs.*, No. CV 14-7625 JVS (JCx),

16    2016 WL 8730914, at *5 (C.D. Cal. May 2, 2016).  "Yet, so-called 'group pleading' is not fatal as

17    long as the complaint gives defendants fair notice of the claims against them." *DeSoto Cab Co.,*

18    *Inc. v. Uber Techs., Inc.*, No. 16-CV-06385-JSW, 2018 WL 10247483, at *15 (N.D. Cal. Sept. 24,

19    2018), *report and recommendation adopted,* No. CV 14-7625 JVS(JC), 2016 WL 8737230 (C.D.

20    Cal. May 20, 2016).  The Court finds that the TAC allegations are sufficient to put Nortech on fair

21    notice under Rule 8(a)(2), and distinguishable from cases finding otherwise.  While some

22    allegations are overlapping, this is appropriate given the claims, which allege that Nortech

23    breached its fiduciary duty and Recology helped it to do so.  *See Tivoli LLC v. Sankey*, No.

24    SACV141285DOCJCGX, 2015 WL 12683801, at *4 (C.D. Cal. Feb. 3, 2015) ("Collective

25    references to defendants often causes confusion when broad allegations are directed at a large and

26    diverse group of defendants, obscuring which defendant is alleged to have committed which act.

27    Here, the group is much narrower, closely related, and in the same general line of business . . . .").

28    The cases finding impermissible group pleading involve greater numbers of defendants and

include almost no differentiating allegations.  *See Corazon v. Aurora Loan Servs., LLC*, No. 11-00542 SC, 2011 WL 1740099, at *4 (N.D. Cal. May 5, 2011) (finding failure to provide notice where plaintiff listed over fifty defendants, referred only to "defendants" in almost all allegations and failed to specify to whom she was referring when referring to individual defendants); *In re Sagent Tech., Inc., Derivative Litig.*, 278 F. Supp. 2d 1079, 1094–95 (N.D. Cal. 2003) ("A complaint that lumps together thirteen individual defendants, where only three of the individuals was alleged to have been present for the entire period of the events alleged in the complaint, fails to give fair notice of the claim to those defendants.") (quotations omitted); *La Tech & Consulting, LLC v. Am. Express Co.*, No. SACV2201213DOCKES, 2022 WL 3699968, at *3 (C.D. Cal. Aug. 9, 2022) ("In this pleading, Plaintiff alleges that both AMEX and DOES acted together to commit the wrongful transactions and that each committed essentially the same actions.").  The TAC, in contrast, might allege the Defendants worked together, but provides enough differentiating allegations to understand when they are accused of working together and when they are accused of operating separately.

Nortech also argues that EcoHub's breach of fiduciary duty claim is subject to Rule 9(b) because the claim is based in fraud.  ECF No. 42 at 15.  A claim sounds in fraud if Plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003).  Nortech cites four TAC allegations in its contention that EcoHub's claim is based in fraud.  ECF No. 42 at 15.  The Court recognizes that the TAC does allege Nortech's conduct was "oppressive, fraudulent, malicious . . . ."  *See, e.g.* ECF No. 41 ¶ 36.  These allegations are in support of punitive damages, however, which EcoHub is not required to plead with specificity.  *See Rees v. PNC Bank, N.A.*, 308 F.R.D. 266, 273 (N.D. Cal. 2015) ("[I]n federal court, a plaintiff may include a 'short and plain' prayer for punitive damages that relies entirely on unsupported and conclusory averments of malice or fraudulent intent.") (internal citation and quotation marks omitted).  Nortech does not explain how the other three allegations assert fraud.  *See* ECF No. 42 at 15 (citing ECF No. 41 ¶¶ 8, 26(a), 26(f)).  Nor does the Court find such allegations put forth a claim of fraud.  *See Vess*, 317 F.3d at 1105 ("Under California law, the 'indispensable elements of

United States District Court
Northern District of California

1   a fraud claim include a false representation, knowledge of its falsity, intent to defraud, justifiable

2   reliance, and damages.'") (quoting *Moore v. Brewster*, 96 F.3d 1240, 1245 (9th Cir. 1996)).  As

3   pled, the Court does not find EcoHub's breach of fiduciary claim subject to Rule 9(b).

### b.      Conduct Constituting Breach

5   Nortech also argues that EcoHub's breach of fiduciary duty claim fails because the conduct

6   alleged does not amount to grossly negligent or reckless conduct, intentional misconduct, or a

7   knowing violation of the law.  ECF No. 42 at 15-16 (quoting Cal. Corp. Code § 16404(c)).  Nortech

8   also argues that EcoHub has not adequately alleged a breach based on terminating the RFP

9   response efforts and that Nortech cannot be said to have breached a fiduciary duty for conduct

10  after the termination.  *Id.* at 16-17.

11  Under California law, "a partner owes to the partnership and the other partners . . . the duty

12  of loyalty and the duty of care."  Cal. Corp. Code § 16404(a).  "A partner's duty of care 'is limited

13  to refraining from engaging in grossly negligent or reckless conduct, intentional misconduct, or a

14  knowing violation of the law.'"  *t'Bear v. Forman*, 359 F. Supp. 3d 882, 900 (N.D. Cal. 2019)

15  (quoting Cal. Corp. Code § 16404(c)).  California law defines "gross negligence" as "either a

16  'want of even scant care' or 'an extreme departure from the ordinary standard of conduct.'"  *City*

17  *of Santa Barbara v. Superior Ct.*, 41 Cal. 4th 747, 754 (2007).  Gross negligence "connotes such a

18  lack of care as may be presumed to indicate a passive and indifferent attitude toward results . . . ."

19  *Eriksson v. Nunnink*, 191 Cal. App. 4th 826, 857 (2011) (quoting *Calvillo–Silva v. Home Grocery*

20  19 Cal. 4th 714, 729 (1998), *disapproved of on other grounds by Aguilar v. Atl. Richfield Co.*, 25

21  Cal. 4th 826 (2001)).  "[M]ost courts have considered that 'gross negligence' falls short of a

22  reckless disregard of consequences, and differs from ordinary negligence only in degree, and not

23  in kind."  *Decker v. City of Imperial Beach*, 209 Cal. App. 3d 349, 358 (Cal. Ct. App. 1989).

24  The TAC alleges Nortech violated the duty of care in its pursuit of the contract extension,

25  ranging from Nortech's failure to share pertinent information with EcoHub, to Nortech repeatedly

26  refusing to present portions of EcoHub's proposals to WPWMA, or declining to actively engage

27  WPWMA in actual negotiations concerning the contract extensions.  *See, e.g.,* ECF No. 41 ¶

28  26(a), (b), (d).  The Court finds these allegations, coupled with the fact that "nearly all" waste

United States District Court
Northern District of California

United States District Court
Northern District of California

1   management companies, including Recology, extended their contracts without any resort to an

2   RFP, plausibly allege Nortech's conduct during contract negotiations was an extreme deviation

3   from the standard of care.  *See id.* ¶ 6; *see also Willhide-Michiulis v. Mammoth Mountain Ski*

4   *Area, LLC*, 25 Cal. App. 5th 344, 365 (2018) ("Evidence of conduct that evinces an extreme

5   departure from safety directions or an industry standard could demonstrate gross negligence.");

6   *compare Champion v. Feld Ent., Inc.*, No. 20-CV-2400-DMS-KSC, 2021 WL 1812764, at *2

7   (S.D. Cal. May 6, 2021) (finding pleadings for gross negligence insufficient where there were no

8   facts related to the existing standards of care for use of lime in the construction industry to suggest

9   defendant's use was an extreme deviation).  Whether Nortech's conduct was a gross deviation

10   from the standard of care, as indicated by the fact that "nearly all other waste management

11   companies" were able to negotiate contract extensions, is more properly a question of fact.  *See*

12   *Royal Ins. Co. of Am. v. Sw. Marine*, 194 F.3d 1009, 1015 (9th Cir. 1999) ("Case law from this

13   circuit indicates gross negligence is simply a point on a continuum of probability, and its presence

14   depends on the particular circumstance of each case."); *Chavez v. 24 Hour Fitness USA, Inc.*, 238

15   Cal. App. 4th 632, 640 (2015) ("Generally it is a triable issue of fact whether there has been such a

16   lack of care as to constitute gross negligence but not always.") (citation omitted).

17        Nortech argues that EcoHub is asking the Court to assume it behaved in an economically

18   irrational manner in "deliberately" sabotaging its WPWMA contract extensions.  ECF No. 42 at

19   17-18.  EcoHub does not necessarily have to establish that Nortech was acting deliberately,

20   however.  *Cf. Adam v. Silicon Valley Bancshares*, No. C 93-20399 RMW (EAI), 1994 WL

21   619300, at *4 (N.D. Cal. Feb. 8, 1994) (requiring an explanation why defendant behaved in an

22   economically irrational manner when plaintiff was required to plead either deliberate fraud or

23   heightened standard of recklessness).  EcoHub can succeed upon proving that Nortech acted with

24   gross negligence.  The Court does not require EcoHub to provide an explanation for why Nortech

25   acted as it did to render EcoHub's claims plausible.

26        Additionally, the Court finds that EcoHub has plausibly alleged a breach of fiduciary duty

27   regarding Nortech's withdrawal from the partnership and independent pursuit of the contract with

28   WPWMA.  The allegations that Nortech withdrew from the partnership in bad faith to seek the

prospective business opportunity of the partnership and misused confidential information obtained through the partnership is conduct which could constitute a fiduciary breach.  *See* ECF No. 41 ¶ 31 (Nortech abruptly advised EcoHub needed to produce a financial commitment letter and then almost immediately terminated their relationship on this basis); ¶ 26(f) (Nortech and Recology shared confidential information with a consulting firm that used that information to draft the RFP in a manner designed to disadvantage EcoHub's efforts); ¶ 33 (Nortech submitted its own RFP bid on January 11, 2021).  "'A partner may not dissolve a partnership to gain the benefits of the business for himself, unless he fully compensates his copartner for his share of the prospective business opportunity.'"  *Leff v. Gunter*, 33 Cal. 3d 508, 514 (1983) (determining that a partner's duty not to compete extends to business opportunities pursued by the partnership while the partner was still a part, where partnership was formed around bidding on project and defendant withdrew from partnership under false pretenses and then secretly bid using information acquired during partnership) (quoting *Page v. Page*, 55 Cal. 2d 192, 197 (1961)); *see also Second Measure, Inc.*, 143 F. Supp. 3d at 977 (quoting *Leff* and finding its rationale applicable even where partnership dissolved, based on "'obvious and essential unfairness in one partner's attempted exploitation of a partnership opportunity for his own personal benefit and to the resulting detriment of his copartners,' which exists whether or not the partnership persists.").

There is perhaps some tension between Cal. Corp. Code § 16404(b)(3), which states that a partner's duty of loyalty to refrain from competing with the partnership ends at the dissolution of the partnership, and cases such as *Leff*, which indicate some degree of continuing obligation to the partnership after separation.  The Court need not resolve here whether withdrawing from a partnership in order to pursue a partnership business opportunity on its own would be a breach of fiduciary duty, as the TAC alleges that Nortech withdrew from the partnership in bad faith and misused information exchanged as part of the joint venture.  *See Am. Med. Response, Inc. v. City of Stockton*, No. CIV-S-05-1316DFLPAN, 2006 WL 768816, at *7 (E.D. Cal. Mar. 27, 2006) (stating that fiduciary duty would be breached where former partner bid on an RFP if the former partner misused information acquired from the joint venture). These allegations plausibly support a breach of fiduciary duty related to the November 17, 2020 withdrawal.

United States District Court
Northern District of California

1    EcoHub also alleges that Nortech's withdrawal from partnership was wrongful because

2    Nortech agreed to partner at least until a joint response to the RFP.  ECF No. 41 ¶ 31.

3    Partnerships are generally considered at will, although they can be carried on for a definite term or

4    particular undertaking.  *See* Cal. Corp. Code § 16801 (discussing when a partnership for a definite

5    term may dissolve).  Nortech argues that EcoHub does not adequately plead there was an

6    agreement that the partnership would exist until at least submission of the RFP.  ECF No. 42 at 17.

7    The Court finds that Plaintiff plausibly alleges that the parties understood the partnership would

8    exist at least until they submitted a joint response to the RFP.  ECF No. 41 ¶ 18(i).  Nortech's cited

9    caselaw involves pleadings where a plaintiff alleged a defendant "understood and agreed" without

10   any surrounding facts or details.  *See Smartco Int'l (Asia) Ltd. v. Gross et al.*, No.

11   820CV00626RGKAFM, 2020 WL 5356916, at *4 (C.D. Cal. June 29, 2020) (finding allegation

12   that party "understood and agreed" that entity would be a subsidiary of plaintiff and beneficially

13   owned by plaintiff was a legal conclusion of an enforceable agreement); *Yagman v. Wunderlich*,

14   No. 2:21-CV-06093-SB-MRW, 2021 WL 5707166, at *4 (C.D. Cal. Nov. 22, 2021) (finding

15   conspiracy insufficiently pled based on conclusory allegations that all defendants understood and

16   agreed that they would act in combination and overt acts were undertaken), *aff'd,* No. 21-56277,

17   2022 WL 2800816 (9th Cir. July 18, 2022).  EcoHub's allegations include much more in terms of

18   the discussions between the parties, including a vote by the Nortech Board on October 20, 2020 to

19   continue the partnership with the understanding that it would last until they submitted the RFP.

20   This is sufficiently detailed so as not to be conclusory.  *See Rodriguez-Vives v. Puerto Rico*

21   *Firefighters Corps of Puerto Rico*, 743 F.3d 278, 286 (1st Cir. 2014) ("A conclusory allegation,

22   however, is one which simply asserts a legal conclusion, such as 'I was retaliated against,' not a

23   specific factual allegation, such as 'my supervisor threw a book at me,' that merely lacks some

24   surrounding context. . . .  [Plaintiff]'s complaint described actions of which she had personal

25   knowledge in sufficient detail to make them plausible.").  EcoHub provides the surrounding

26   context, that Nortech's Board voted to move forward with applying for the RFP along with

27   EcoHub and that the parties thereafter worked together to do so.  ECF No. 41 ¶ 41(i).  From this

28   context, it is plausible that the parties understood and agreed to partner at least until they

17

1   submitted their bid.[3]

2         The Court also finds EcoHub's claim that Nortech made "disparaging and incorrect

3   statement and comments" to WPWMA regarding EcoHub's inability to perform or obtain

4   financing provides sufficient factual allegations regarding Nortech's conduct and the subject

5   matter of the comments.  ECF No. 41 ¶ 41(r).  This is particularly true where the comments

6   Nortech made to WPWMA would be uniquely within Nortech's knowledge.  *See Lopez v. Apple,*

7   *Inc.*, 558 F. Supp. 3d 821, 826 (N.D. Cal. 2021) (finding allegations lied exclusively within

8   defendant's possession and thus "sparse" allegations were sufficient at the pleading stage).

9         Accordingly, the Court **DENIES** Nortech's Motion to Dismiss EcoHub's breach of

10  fiduciary duty claim.

11  **C.      Aiding and Abetting Breach of Fiduciary Duty against Recology**

12        Recology seeks dismissal of EcoHub's aiding and abetting claim, arguing first that

13  EcoHub fails to allege an underlying breach of fiduciary duty by Nortech.  ECF No. 43 at 10-11.

14  The Court addressed these arguments above, and thus is not persuaded by Recology's arguments

15  on this point.  Recology also argues that EcoHub's cause of action for aiding and abetting breach

16  of fiduciary duty fails because the TAC inadequately separates Defendants, and fails to identify

17  the breach of fiduciary duty Recology aided and abetted as well as Recology's conduct

18  constituting substantial assistance or encouragement.  ECF No. 43 at 10-15.

19        "Under California law, '[t]he elements of a claim for aiding and abetting a breach of

20  fiduciary duty are: (1) a third party's breach of fiduciary duties owed to plaintiff; (2) defendant's

21  actual knowledge of that breach of fiduciary duties; (3) substantial assistance or encouragement by

22  defendant to the third party's breach; and (4) defendant's conduct was a substantial factor in

23  causing harm to plaintiff.'"  *Chang v. Wells Fargo Bank, N.A.*, No. 19-CV-01973-HSG, 2020 WL

24  1694360, at *7 (N.D. Cal. Apr. 7, 2020) (quoting *Nasrawi v. Buck Consultants LLC*, 231 Cal.

25  _____

26  [3]  The parties also debate whether the partnership was "winding up" after Nortech's termination
    email on November 17, 2020 such that Nortech had ongoing obligations to EcoHub.  *See* ECF
27  Nos. 42 at 16-17; 44 at 23-24.  Because the Court finds EcoHub plausibly alleges that the parties
    agreed to a definite term or undertaking, and because the parties appear not to dispute that if
28  Nortech was wrongful in terminating the partnership then it would have ongoing duties to
    EcoHub, the Court declines to address the parties' arguments regarding "winding up."

United States District Court
Northern District of California

App. 4th 328, 343 (2014)).

Recology argues, as did Nortech, that EcoHub's allegations fail under Rule 8 because they group together the Defendants. As discussed above, the Court does not find such an argument persuasive here. The cases cited by Recology are distinguishable. In *In re Sagent Tech., Inc.*, the court found the pleadings impermissible because there were thirteen defendants and not all defendants had been part of the company during the relevant time period in the complaint. *See In re Sagent Tech., Inc.*, 278 F. Supp. 2d at 1093 ("Because a number of defendants either left or joined the company during the time period spanned by the complaint, the complaint cannot state a claim for breach of fiduciary duty in the absence of more specific allegations regarding which defendants are alleged to have performed which acts."). In *Corazon*, there were 50 defendants and plaintiff failed to differentiate them almost entirely, which the court found "particularly troubling" because many of the allegations pertained to conduct in which the moving party could not have partaken. *Corazon*, 2011 WL 1740099, at *4 ("[T]he Plaintiff simply refers to 'Defendants' in nearly all of her allegations. In the few allegations where she alleges misconduct by a singular defendant, she fails to specify which one."). While the TAC does at times allege Recology and Nortech engaged in the same conduct, the TAC does not simply plead that both parties engaged in all conduct, and provides additional pleading regarding how Recology participated, as discussed below. Nor does the Court find EcoHub's allegations "contradictory," as argued by Nortech. The TAC allegations cited by Recology as contradictory allege that EcoHub did not necessarily deal with Recology, but that Recology nonetheless participated in the activity. ECF No. 41 ¶ 25. Further, while EcoHub at times states that Nortech edited documents and made statements, and at other times states that Recology and Nortech both engaged in this conduct, this is not necessarily contradictory.

The Court does agree with Recology, however, that much of EcoHub's allegations regarding Recology's conduct constituting substantial assistance or encouragement are impermissibly conclusory. *See* ECF No. 41 ¶ 41(a) (omissions by Nortech were "encouraged and orchestrated by Recology"); ¶¶ 41(b), 41(c), 41(e), 41(i) (Recology "orchestrated" conduct by Nortech); ¶ 41(d) (Recology decided that Nortech would refrain from engaging WPWMA in

United States District Court
Northern District of California

contract negotiations); ¶¶ 41(g), 41(h), 41(j), 41(k),  (Recology "was the driving force" behind decisions regarding the WPWMA proposal and presentation); ¶ 41(l) (Recology "encouraged" Nortech's inadequate presentation to WPWMA).  As pled, these allegations are simply legal conclusions asserting Recology substantially assisted Nortech in its allegedly grossly negligent conduct.  *See Iqbal*, 556 U.S. at 680-81 (allegations that supervisor was "instrumental" in adopting a policy and the "principal architect" of the policy amounted to nothing more than a recitation of the elements).  EcoHub argues that surrounding context of the allegations provide sufficient factual detail, but there is virtually no context to understand that Recology was participating in such a granular level in the decisions regarding the WPWMA proposal, let alone to support an inference that Recology was the driving force, decision-maker, or orchestrator in these decisions. *Cf. id.* at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").  Some of the conduct alleged also amounts to inaction, not assistance or encouragement.  *See Joint Equity Comm. of Invs. of Real Est. Partners Inc. v. Coldwell Banker Real Est. Corp.*, No. SACV100401AGMLGX, 2010 WL 11464784, at *6 (C.D. Cal. Dec. 6, 2010) ("Plaintiffs allege specific inactions by Defendants but fail to allege any specific instances of 'substantial assistance or encouragement.'") (quoting *River Colony Ests. Gen. P'ship v. Bayview Fin. Trading Grp., Inc.*, 287 F. Supp. 2d 1213, 1225 (S.D. Cal. 2003)); ECF No. 41 ¶ 41(f) (Recology refused to advocate for the WPWMA contract extension); ¶ 41(d) (Recology failed to use its experience to engage WPWMA in actual negotiations); ¶ 41(e) (Recology refused numerous requests from EcoHub to arrange follow up meetings with WPWMA).  These allegations are insufficient to make out a claim of aiding and abetting.

The Court does find that some of the allegations against Recology constitute conduct plausibly inferring aiding and abetting Nortech's breach of the duty of care in negotiating the contract extensions.  The TAC alleges Recology and Nortech shared confidential information with R3 Consulting.  *See* ECF No. 41 ¶ 41(f) ("Recology and Nortech shared confidential, technical, financial and business information and plans of EcoHub with R3 Consulting).  This allegation moves beyond conclusory as EcoHub adds additional context that Recology had a long-standing

1   relationship with R3 Consulting and used that relationship to influence R3 Consulting's

2   recommendations.  ECF No. 41 ¶ 41(f).  RC3 Consulting drafted the RFP issued by WPWMA,

3   and EcoHub alleges that Recology's conduct aided Nortech's gross negligence in disclosing

4   confidential information to the detriment of EcoHub resulting in RC3 Consulting drafting an RFP

5   which disadvantaged Nortech and EcoHub from obtaining the contract extension.  *Id.*  Recology

6   argues this allegation fails because it is not connected to any alleged breach by Nortech.  ECF No.

7   47 at 8.  However, the allegations are that Nortech was grossly negligent in disclosing this

8   information.  If Recology worked with Nortech to do so, such conduct could constitute aiding and

9   abetting Nortech's breach of fiduciary duty.  Recology would also plausibly have knowledge of

10   the breach if it was working with Nortech to share the information with R3 Consulting.  Recology

11   also argues that such conduct by Recology and Nortech would be economically irrational, which

12   the Court interprets as an argument that EcoHub's allegations are implausible.  ECF No. 43 at 14.

13   EcoHub plausibly alleges that Recology was torn in its support of Nortech and EcoHub's bid for

14   the WPWMA contract, that EcoHub and Recology were essentially competitors in the waste

15   management business and that Recology was considering its own bid on the project, which could

16   have led it to undermine the EcoHub and Nortech project.  *See* ECF No. 41 ¶¶ 2, 3, 28.  EcoHub is

17   not required to allege facts showing this is the most likely explanation, only that EcoHub's

18   explanation is plausible.  *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("If there are two

19   alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of

20   which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6).").

21   The Court finds EcoHub has met its pleading burden here.

22        The Court also finds EcoHub has plausibly alleged Recology was aiding and abetting

23   Nortech's breach in withdrawing from the partnership and submitting a competing bid by strongly

24   encouraging Nortech to terminate its partnership with EcoHub to submit a bid.  Nortech's Vice

25   President Szura advised EcoHub that Sal Coniglio, Recology's Executive Vice President, was

26   pressuring Nortech to withdraw.  ECF No. 41 ¶¶ 41(m), 42.  Recology argues that EcoHub does

27   not detail what kind of "pressure" was exerted.  ECF No. 47 at 7.  The Court finds EcoHub's

28   allegations that Nortech Vice President Szura told EcoHub CEO Gitschel that Sal Coniglio was

United States District Court
Northern District of California

1    pressuring Nortech to withdraw, coupled with the fact that Recology as Nortech's Board member

2    voted against the collaboration on October 20, 2020, explaining that Recology wanted to submit

3    its own bid and was advised it could not compete with Nortech, sufficient at this stage to render

4    plausible that Recology was encouraging Nortech to withdraw from the partnership and usurp the

5    business opportunity and intended for Nortech to do so.  *See* ECF Nos. 41 ¶¶ 28, 41(m); 42; *see*

6    *also George v. eBay, Inc.*, 71 Cal. App. 5th 620, 642 (2021) ("[A]n alleged aider and abettor must

7    have 'acted with the intent of facilitating the commission of that tort.'") (quoting *Gerard v. Ross*,

8    204 Cal. App. 3d 968, 983 (Cal. Ct. App. 1988)).  Recology advising Nortech to withdraw from

9    the partnership and submit a bid would constitute encouragement, and thus Recology "pressuring"

10   Nortech to withdraw would likely suffice regardless of the exact form of that pressure.  *See Schulz*

11   *v. Neovi Data Corp.*, 152 Cal. App. 4th 86, 93 (2007) ("Advice or encouragement to act operates

12   as a moral support to a tortfeasor and if the act encouraged is known to be tortious it has the same

13   effect upon the liability of the adviser as participation or physical assistance . . . .  It likewise

14   applies to a person who knowingly gives substantial aid to another who, as he knows, intends to

15   do a tortious act.") (quotation omitted).  It is also plausible to understand Recology's conduct was

16   a "substantial factor" in Nortech's withdrawing and competing with EcoHub, as Recology was

17   one-third of Nortech's Board of Directors and plausibly exerted influence.  Further, EcoHub

18   sufficiently alleges that Recology had actual knowledge of the wrongful act as, according to the

19   TAC, Recology was aware as a member of the Board of Directors who voted on the matter and

20   participated in the conversations that the parties had agreed to jointly submit a response to

21   WPWMA's RFP and was encouraging Nortech to withdraw from the partnership to usurp the

22   business opportunity for itself.  *See* ECF No. 41 ¶ 40 (detailing Recology's voting in relation to

23   the EcoHub-Nortech project and Recology's presence in meeting and emails discussing the

24   ongoing project).

25            Accordingly, the Court **DENIES** Recology's Motion to Dismiss EcoHub's claim for

26   aiding and abetting breach of fiduciary duty, as the claim has been narrowed above.  As this is

27   now EcoHub's Third Amended Complaint, and it does not include any facts suggesting Recology

28   was involved beyond the conduct adequately pled, the Court **DENIES** leave to amend this claim.

United States District Court
Northern District of California

United States District Court
Northern District of California

**D.      Negligent and Intentional Interference with Prospective Economic Relations**

Both Recology and Nortech argue that the claims for negligent and intentional interference with prospective economic relations against them should be dismissed.  ECF Nos. 42 at 20-23; 43 at 15-22.  Because the parties do not distinguish between negligent and intentional interference, the Court considers their arguments as against both claims.

**1.      Interference Claims against Nortech**

EcoHub brings causes of action against Nortech for intentional as well as negligent interference with prospective economic relations.  ECF No. 41 ¶¶ 45-59, 60-74.  EcoHub specifies in its Opposition that its tortious interference claims against Nortech are limited to Nortech's actions after it announced it would not work with EcoHub and allegedly interfered with EcoHub's ability to win the RFP process by itself or with another partner.  ECF No. 44 at 22 n.6.

"The tort of negligent interference with prospective economic advantage is established where a plaintiff demonstrates that (1) an economic relationship existed between the plaintiff and a third party which contained a reasonably probable future economic benefit or advantage to plaintiff; (2) the defendant knew of the existence of the relationship and was aware or should have been aware that if it did not act with due care its actions would interfere with this relationship and cause plaintiff to lose in whole or in part the probable future economic benefit or advantage of the relationship; (3) the defendant was negligent; and (4) such negligence caused damage to plaintiff in that the relationship was actually interfered with or disrupted and plaintiff lost in whole or in part the economic benefits or advantage reasonably expected from the relationship." *Venhaus v. Shultz*, 155 Cal. App. 4th 1072, 1078 (2007) (quoting *N. Am. Chem. Co. v. Superior Ct.*, 59 Cal. App. 4th 764, 786 (1997).  Intentional interference requires the following elements: "(1) the existence, between the plaintiff and some third party, of an economic relationship that contains the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentionally wrongful acts designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm proximately caused by the defendant's action." *Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*, 2 Cal. 5th 505, 512 (2017).

Nortech argues that the tortious interference claims fail to adequately plead an ongoing

1    relationship with probability of future economic benefit.[4]  ECF No. 42 at 22-23.  This first element

2    for both claims "has two parts: (1) an existing economic relationship that (2) contains the

3    probability of an economic benefit to the plaintiff."  *Roy Allan Slurry Seal*, 2 Cal. 5th at 512.  "[A]

4    cause of action for tortious interference has been found lacking when either the economic

5    relationship with a third party is too attenuated or the probability of economic benefit too

6    speculative."  *Id.* at 515.  "The tort of intentional interference with prospective economic

7    advantage 'traditionally has not protected speculative expectancies' . . . usually because '*there is*

8    *no sufficient degree of certainty that the plaintiff ever would have received the anticipated*

9    *benefits*.'"  *Id.* at 518 (quoting *Youst v. Longo*, 43 Cal. 3d 64, 74–75 (1987)) (emphasis in

10   original).

11          The Court finds that EcoHub does not plausibly allege an ongoing relationship with

12   probability of future economic benefit to maintain a claim against Nortech.  In *Roy Allen*, the

13   California Supreme Court held that an economic relationship containing the probability of future

14   economic benefit did not exist solely because plaintiff submitted a bid in response to a public

15   entity's solicitation.  *Roy Allen*, 2 Cal. 5th at 516.  While *Roy Allen* has some distinguishing

16   factors, such as the lack of possible negotiations with the public entity and the requirement to

17   accept the lowest bid, the Court applies its analytical framework and finds EcoHub has not pled an

18   economic relationship with WPWMA to support a probability of being awarded the contract on its

19   own.  Interference with prospective economic relations "protects the expectation that the

20   relationship eventually will yield the desired benefit, not necessarily the more speculative

21   expectation that a potentially beneficial relationship will eventually arise."  *Id.* (quoting *Westside*

22   *Center Assocs. v. Safeway Stores 23, Inc.* 42 Cal.App.4th 507, 524 (1996)).  There are no

23   allegations suggesting that, without Nortech, EcoHub had any relationship with WPWMA to infer

24   that its bid would eventually yield a contract.  EcoHub argues that it was involved in a months-

25   _____

26   [4]  Nortech also argues that EcoHub's claims fail to allege wrongdoing and fail to the extent they
     allege conduct prior to EcoHub's solo RFP efforts.  ECF No. 42 at 20-22.  As to the former, the

27   Court determines EcoHub has plausibly alleged a breach of fiduciary duty.  As to the latter,
     EcoHub specifies in its Opposition that its claims against Nortech are limited to Nortech's actions

28   after it announced it would not work with EcoHub and allegedly interfered with EcoHub's ability
     to win the RFP process by itself or with another partner.  ECF No. 44 at 22 n.6.

United States District Court
Northern District of California

United States District Court
Northern District of California

long negotiation with WPWMA prior to the RFP, but that negotiation was between WPWMA and Nortech-EcoHub, and is not indicative of EcoHub's solo success, which EcoHub has clarified is the pertinent framework for its interference claims against Nortech.  The TAC alleges that the WPWMA's RFP process "allowed for and did include consideration of past contractual dealings with the bidders."  ECF No. 41 ¶ 35.  This factor would not aid EcoHub, as it was not EcoHub that had the past contractual dealings with WPWMA.  EcoHub cites other distinguishing factors between the *Roy Allen* bidding process and WPWMA's process, but does not explain why those factors favor EcoHub securing the contract on its own.  Finally, EcoHub alleges the winning proposal mimicked EcoHub's work, but as discussed in *Roy Allan*, this argument puts the cart before the horse as EcoHub must plausibly allege a relationship existing at the time of the interference, not a relationship which had yet to arise.  *Roy Allan Slurry Seal*, 2 Cal. 5th at 517-18.  Negotiations between WPWMA and EcoHub-Nortech had been severed, and there is even less indication that EcoHub on its own had expectancy of success based on any existing relationship with WPWMA.

In total, EcoHub's solo status submitting an RFP was far closer to the plaintiff in *Roy Allan* than to someone with an ongoing economic relationship and a probability of future economic benefit.  *Id.* at 515 ("[T]he tort 'traditionally has not protected speculative expectancies such as the particular outcome of a contest.'") (quoting *Youst*, 43 Cal.3d at 74–75); *compare Pac. Steel Grp. v. Com. Metals Co.*, 600 F. Supp. 3d 1056, 1081 (N.D. Cal. 2022) (finding economic relationship was not speculative where party had received a quote and secured a project site).  The Court does not find EcoHub has pled facts suggesting an ongoing economic relationship and probability of future economic benefit.

Accordingly, the Court **GRANTS** Nortech's Motion to Dismiss EcoHub's intentional interference with prospective economic relations and negligent interference with prospective economic relations claims.  This is EcoHub's Third Amended Complaint, and its Opposition does not include facts to suggest it can adequately plead an ongoing economic relationship with WPWMA with a probability of future economic benefit.  Accordingly, the Court **DENIES** leave to amend.

United States District Court
Northern District of California

1

2.      **Interference Claims Against Recology**

EcoHub alleges causes of action against Recology for intentional interference with prospective economic advantage as well as negligent interference with prospective economic advantage for interfering with EcoHub's relationships with Nortech and WPWMA.  ECF No. 41 ¶¶ 45-74.

Recology argues first EcoHub does not plausibly allege an existing economic relationship with the probability of an economic benefit.  ECF No. 43 at 16-17.  The Court disagrees. Regarding the contract negotiations prior to WPWMA's decision to issue an RFP, EcoHub had a formalized relationship with Nortech in pursuing the contract extension with WPWMA and there were negotiations with WPWMA for months about extension.  According to the TAC, nearly all government agencies amended and extended their contracts with waste management companies as opposed to resorting to RFPs.  ECF No. 41 ¶ 6.  Under the circumstances, the Court finds it plausible that EcoHub could reasonably expect its efforts would yield the desired benefit: a contract extension between Nortech and WPWMA with EcoHub working alongside Nortech in its operations.  *See Eco Elec. Sys., LLC v. Reliaguard, Inc.*, No. C 20-00444 WHA, 2022 WL 1157481, at *10 (N.D. Cal. Apr. 19, 2022) ("Our record suggests that PG&E was closely considering both Eco's ECC-2 cover and Reliaguard's cover during the time period that Reliaguard provided the videos and altered test report to PG&E.").

Even regarding the RFP, whereas EcoHub's allegations against Nortech were limited exclusively to EcoHub's solo efforts which were far more speculative of any success, the relationship between EcoHub-Nortech and WPWMA was plausibly an ongoing relationship with a probability of a future economic benefit.  This partnership, rather than solely EcoHub, was the one in discussions with WPWMA.  While WPWMA had severed negotiations, there is indication that Nortech's prior contractual relationship would be a factor weighing in the Nortech-EcoHub partnership's favor.  *See* ECF No. 41 ¶ 35 (RFP process "allowed for and did include consideration of past contractual dealings with the bidders.").  Accordingly, the TAC plausibly alleges a probability of economic benefit in WPWMA awarding EcoHub-Nortech the bid had Recology not interfered in the EcoHub and Nortech partnership.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

Separate from the first prong of interference, Recology also argues that EcoHub has not pled aiding and abetting breach of fiduciary duty to satisfy the requirement of wrongful acts for negligent and intentional interference claims.  *See Venhaus*, 155 Cal. App. 4th at 1079 (a defendant incurs liability under negligent interference "only if the defendant's conduct was independently wrongful, [but] we have been directed to no California authority, and have found none, for the trial court's conclusion that the wrongful conduct must be intentional or willful."). As the Court discussed above, EcoHub has adequately pled an aiding and abetting breach of fiduciary duty claim against Recology.  Thus, Recology's argument here fails.

Finally, Recology argues that the statute of limitations mandates dismissal of the interference claims.  ECF No. 43 at 19-22.  "A claim may be dismissed as untimely pursuant to a 12(b)(6) motion 'only when the running of the statute [of limitations] is apparent on the face of the complaint.'"  *U.S. ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013) (quoting *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010)).  "[A] complaint may not be dismissed unless it appears 'beyond doubt' that plaintiffs can prove no set of facts that would establish the timeliness of the claim."  *Motha v. Time Warner Cable Inc.*, No. 16-CV-03585-HSG, 2017 WL 3617105, at *2 (N.D. Cal. Aug. 23, 2017) (quoting *Hernandez v. City of El Monte*, 138 F.3d 393, 402 (9th Cir. 1998)).  "The statute of limitations for tortious interference with prospective business advantage is two years, . . . running from the 'discovery of the loss or damage suffered by the aggrieved party.'"  *Lynwood Invs. CY Ltd. v. Konovalov*, No. 20-CV-03778-MMC, 2022 WL 3370795, at *7 (N.D. Cal. Aug. 16, 2022) (citing *Wild Rivers Waterpark Mgmt. LLC v. Katy WP Grp., LLC*, 2019 WL 6998669, at *8 (C.D. Cal. Feb. 29, 2019); *see also* Cal. Civ. Proc. Code § 339(1).  "In California, the discovery rule defers accrual of a cause of action until the plaintiff discovers, or has reason to discover the cause of action."  *Wild Rivers Waterpark Mgmt.*, 2019 WL 6998669, at *8.

EcoHub alleges that it did not learn that Nortech had submitted a January 11, 2021 RFP response until January 14, 2021.  ECF No. 41 ¶ 51.  Further, as late as January 6, 2021, Nortech indicated through its Vice President that Nortech and EcoHub would submit the RFP response together.  *Id.* ¶ 31.  The allegations that EcoHub was in ongoing talks with Nortech to submit the

bid suggest EcoHub may not have had reason to suspect that its economic relationship with Nortech, and in turn its relationship with WPWMA, was not going to produce the economic benefit it expected in the form of the WPWMA contract. *See DC Comics v. Pac. Pictures Corp.*, 938 F. Supp. 2d 941, 951 (C.D. Cal. 2013) ("California courts look to whether the plaintiffs have reason to at least suspect that a *type* of wrongdoing has injured them.") (quoting *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005)) (emphasis in original); *cf. Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 398 (1999) (A plaintiff "has reason to suspect when he has notice or information of circumstances to put a reasonable person on inquiry.") (internal quotation omitted). Such allegations are sufficient at this early stage of litigation to negate a finding that it is "beyond doubt" that EcoHub can prove no set of facts to establish that it did not discover Recology's conduct in aiding and abetting Nortech to withdraw from the partnership under false pretenses and usurp the partnership's business opportunity.

Accordingly, Recology's Motion to Dismiss EcoHub's claims of intentional interference with prospective economic relations and negligent interference with prospective economic relations is **DENIED**.

## V.   CONCLUSION

For the reasons stated above, the Court **ORDERS** as follows:

1) Nortech's Motion to Dismiss is **DENIED** as to breach of fiduciary duty and **GRANTED** as to intentional interference with prospective economic relations and negligent interference with prospective economic relations; and

2) Recology's Motion to Dismiss is **DENIED**.

As EcoHub has amended its claims three times, and it appears that further leave would be futile, dismissal is **WITHOUT LEAVE TO AMEND**. *See Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) ("The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.").

The Court shall conduct a Case Management Conference on November 9, 2023 at 10:00 a.m. in Courtroom E on the 15th floor at 450 Golden Gate Avenue in San Francisco. This conference shall be attended by lead trial counsel. Any party may file a request to appear by

telephone.  By November 2, 2023, the parties shall file a Joint Case Management Statement containing the information in the Standing Order for All Judges in the Northern District of California, available at: http://cand.uscourts.gov/tshorders.

**IT IS SO ORDERED.**

Dated:  October 11, 2023

THOMAS S. HIXSON
United States Magistrate Judge