ROBERT W. MAY (CA SBN 295566)
MICHELLE SOSA-ACOSTA (CA SBN 330776)
ANNEL BECERRA RODRIGUEZ (CA SBN 346096)
LEEZA ARBATMAN (CA SBN 347753)
Morrison & Foerster LLP
425 Market Street,
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522
Email: RMay@mofo.com
Email: MSosaAcosta@mofo.com
Email: ABecerraRodriguez@mofo.com
Email: LArbatman@mofo.com

Attorneys for Defendant
RECOLOGY INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ECOHUB, LLC,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>RECOLOGY INC., NORTECH WASTE LLC, AND DOES 1 THROUGH 10,<br><br>　　　　　Defendants. | Case No. 3:22-cv-09181-TSH<br><br>**DEFENDANT RECOLOGY INC.'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**<br><br>Date:　　　　January 30, 2025<br>Time:　　　　10:00 a.m.<br>Courtroom:　E – 15th Floor<br>Judge:　　　Hon. Thomas S. Hixson<br><br>Action Filed: December 30, 2022<br>Trial Date:　 May 26, 2025 |

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ............................................................................................................. 1

II. ARGUMENT ..................................................................................................................... 1

    A. Uncontroverted Facts Conclusively Show Plaintiff's Aiding and Abetting Claim Against Recology Must Fail ............................................................................ 1

        1. EcoHub Cannot Prove It Was Engaged in a Partnership or Joint Venture with Nortech ................................................................................... 2

        2. EcoHub Has Failed to Establish That Recology Substantially Assisted Nortech's Alleged Breach ............................................................ 3

            a. Recology's Consistent Skepticism of EcoHub Does Not Create an Issue of Fact Regarding Any Alleged Wrongdoing ........ 3

            b. The Evidentiary Record Does Not Support EcoHub's Allegation That Recology Threatened Nortech .............................. 4

            c. EcoHub Cannot Demonstrate That Recology Encouraged or Assisted Nortech's Termination Decision ...................................... 6

    B. Recology Is Entitled to Summary Judgment on EcoHub's Tortious Interference Claims .................................................................................................... 9

        1. EcoHub's Tortious Interference Claims Are Time Barred ......................... 9

            a. EcoHub's Alleged Harm Accrued in November 2020 ................. 10

            b. The Statute of Limitations on EcoHub's Tortious Interference Claims Began to Run Once EcoHub Suspected Wrongdoing by Recology ............................................................... 11

        2. The Undisputed Facts Demonstrate Recology Did Not Commit Any Wrongful Acts .......................................................................................... 13

    C. EcoHub Has No Claim for Damages ................................................................... 14

III. CONCLUSION ............................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Banga v. First USA, NA*,
   29 F. Supp. 3d 1270 (N.D. Cal. 2014) .................................................................................. 3

*Cover v. Windsor Surry Co.*,
   No. 14-cv-05262-WHO, 2015 WL 4396215 (N.D. Cal. July 17, 2015) ................................ 11

*DC Comics v. Pac. Pictures Corp.*,
   938 F. Supp. 2d 941 (C.D. Cal. 2013) ............................................................................. 10, 12

*Forcier v. Microsoft Corp.*,
   123 F. Supp. 2d 520 (N.D. Cal. 2000) ................................................................................. 12

*Holt v. Noble House Hotels & Resort, Ltd.*,
   370 F. Supp. 3d 1158 (S.D. Cal. 2019) .................................................................................. 3

*Honey Bum, LLC v. Fashion Nova, Inc.*,
   63 F.4th 813 (9th Cir. 2023) ................................................................................................. 14

*Jolly v. Eli Lilly & Co.*,
   44 Cal. 3d 1103 (1988) ........................................................................................................ 12

*Kajima/Ray Wilson v. Los Angeles Cty. Metro. Trans. Auth.*,
   23 Cal. 4th 305 (2000) ......................................................................................................... 14

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003) ................................................................................................. 11, 14

*Mamola v. JP Morgan Chase Bank, N.A.*,
   No. 2:14-cv-02699-MCE-EFB, 2015 WL 6951185 (E.D. Cal. Nov. 10, 2015) ................... 10

*R Power Biofuels, LLC v. Chemex LLC*,
   No. 16-CV-00716-LHK, 2017 WL 1164296 (N.D. Cal. Mar. 29, 2017) ............................. 12

*Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*,
   2 Cal. 5th 505 (2017) ........................................................................................................... 14

*Sargon Enters. Inc. v. Univ. of S. Cal.*,
   55 Cal. 4th 747 (2012) ................................................................................................... 14, 15

*Summers v. Teichert & Son, Inc.*,
   127 F.3d 1150 (9th Cir. 1997) ............................................................................................... 8

*Trembath v. Digardi*,
   43 Cal. App. 3d 834 (1974) ................................................................................................. 10

**Other Authorities**

Fed. R. Civ. P. 56(e)(2) ................................................................................................................. 3

## I. INTRODUCTION

EcoHub has not shown a dispute of material fact in response to Recology's Motion for Summary Judgment (the "Mot.").[1] EcoHub's Opposition to the Motion (the "Opp'n") did not sufficiently address any of the fatal deficiencies in its case described in the motion. Instead, EcoHub recites irrelevant or undisputed facts, repeats its theory of the case, and layers on rhetoric and characterizations without adequately addressing the undisputed facts raised in the Motion.

*First*, EcoHub's aiding and abetting claim fails. EcoHub cannot demonstrate that it was in a legally cognizable partnership with Nortech. Nor does it prove that Recology assisted Nortech in breaching any of its alleged fiduciary duties to EcoHub. *Second*, EcoHub also fails to create a dispute of material fact regarding its tortious interference claim. This claim is time-barred, as it was brought months after the statute of limitations had run. Moreover, EcoHub has presented no evidence that Recology engaged in any wrongful conduct. *Finally*, EcoHub's alleged damages relating to both claims are speculative because there is no legal guarantee it could have won the public contract at issue had it submitted a joint proposal with Nortech. Recology is therefore entitled to summary judgment on all of EcoHub's claims.

## II. ARGUMENT

### A. Uncontroverted Facts Conclusively Show Plaintiff's Aiding and Abetting Claim Against Recology Must Fail.

The undisputed factual record shows that there was never a legally cognizable partnership between Nortech and EcoHub; Recology fully incorporates Nortech's arguments in its opening and reply memoranda in support of its motion for summary judgment regarding the non-existence of a partnership. There is no evidence that Recology directed or participated in Nortech's November 2020 decision to require proof of a potential financing source from EcoHub. Recology's consistent skepticism of EcoHub was based on legitimate business concerns and does not create any issue of material fact regarding purported wrongdoing by Recology or substantial

---

[1] EcoHub failed to include a separate statement identifying any material facts that it believes are undisputed, as required by the Court's Case Management Order. (ECF No. 55 at 2-3.) For that reason, the factual record for this motion should be limited to Recology's and Nortech's separate statements and EcoHub's responses thereto.

assistance by Recology in any breach of fiduciary duty by Nortech.

1. **EcoHub Cannot Prove It Was Engaged in a Partnership or Joint Venture with Nortech.**

As discussed in Nortech's Memorandum of Points and Authorities in Support of its Reply to EcoHub's Opposition to its Motion for Summary Judgment or, alternatively, Partial Summary Judgment ("Nortech Reply"), the factual record is undisputed that there was never any legally cognizable partnership between Nortech and EcoHub. Recology does not dispute that there was a working collaboration between EcoHub and Nortech until September 2020, and no party disputes that the relationship ended—at least for a time—in September 2020. (*See* Mot. at 5-6.) Rather, the only issue the parties appear to dispute regarding the existence or non-existence of a partnership is the legal import of any Nortech-EcoHub collaboration that occurred in October and November 2020, when the possibility of a joint RFP submission was revived, briefly, until the relationship was terminated for good on November 17, 2020.

The parties do not dispute that in late October there was no written agreement between Nortech and EcoHub to work together, and the only written agreement between the parties expressly states that the parties are independent. (*See* Recology's Separate Statement of Undisputed Material Facts ("SSMF") No. 22; Ex. 2 (ECO000978 at ECO000980).) Gitschel acknowledged this on October 28, 2020, when he emailed Paul Szura asking when he would "receive the official 'partnership' letter for the WPWMA letter from Nortech." (*See* EcoHub's Response to Nortech's Separate Statement of Undisputed Facts ("Nortech's SSMF") No. 28; Ex. 2 of Paul Szura Declaration in Support of Nortech's Motion for Summary Judgment ("Szura Decl.") (NORTECH006432-6434).) Paul Szura never responded to George Gitschel's October 28, 2020, email. (*See* Szura Decl. ¶ 7.) As explained in Nortech's Motion for Summary Judgment ("Nortech Mot."), EcoHub has not identified any evidence showing that Nortech ever agreed to partner with EcoHub on a joint response to the WPWMA RFP. (*See* Nortech Mot. at 11; Nortech's SSMF No. 29.) Recology therefore incorporates by reference all of Nortech's arguments regarding the non-existence of a partnership between Nortech and EcoHub. The non-existence of a partnership is dispositive of both the breach of fiduciary duty claim against Nortech

and the aiding and abetting claim against Recology.

### 2. EcoHub Has Failed to Establish That Recology Substantially Assisted Nortech's Alleged Breach.

Even assuming, *arguendo*, that a legally cognizable partnership did exist between EcoHub and Nortech in October and November 2020, summary judgment is still appropriate on the aiding and abetting claim. EcoHub argues that Recology had actual knowledge of Nortech's alleged breach of fiduciary duties and substantially assisted Nortech's breach. (Opp'n at 17.) As the nonmoving party, EcoHub must "come forward with affirmative evidence from which a jury could reasonably render a verdict in its favor." *Banga v. First USA, NA*, 29 F. Supp. 3d 1270, 1275 (N.D. Cal. 2014). And "evidence that is merely colorable or that is not significantly probative, is not sufficient to withstand a motion for summary judgment." *Id.* at 1275-76. EcoHub maintains: (1) Recology never wanted to work with EcoHub; (2) Recology "threaten[ed]" Nortech by suggesting it could submit a competing RFP bid, in order to prevent Nortech from working with EcoHub; and (3) Recology assisted or encouraged Nortech's November 17, 2020, decision to terminate further discussions of working with EcoHub. (*See* Opp'n at 17.) Each argument is not subject to a genuine issue of material fact and can be resolved in favor of Recology at this summary judgment stage.[2]

#### a. Recology's Consistent Skepticism of EcoHub Does Not Create an Issue of Fact Regarding Any Alleged Wrongdoing.

Recology does not dispute that it was skeptical of EcoHub when Nortech first raised the possibility of working with EcoHub to obtain a WPWMA contract extension. As the Motion demonstrated, Recology's skepticism was grounded in substantive, sensible business considerations. (Mot. at 3-4; *see* SSMF No. 55 ("At the October 27, 2020, Nortech Board Meeting, Sangiacomo said that Recology did not have confidence in the viability of the facility

---

[2] EcoHub failed to respond to Recology's points raised in the Opening that (1) there is no evidence that Recology shared EcoHub confidential information with WPWMA's retained consultant, R3 Consulting; and (2) there is no evidence Recology made any incorrect or disparaging comments about EcoHub to WPWMA. (Mot. at 9-10, 14-15, 20 n. 6.) Accordingly, the Court should consider those facts undisputed. *Holt v. Noble House Hotels & Resort, Ltd.*, 370 F. Supp. 3d 1158, 1165 (S.D. Cal. 2019) (where a party fails to properly address another party's assertion of fact, the court may consider the fact undisputed (Fed. R. Civ. P. 56(e)(2))).

presented by EcoHub"); Ex. 4 to May Decl. (REC001887) ("I've never seen a deal like this that can be financed with 100% debt. If it happens, which I believe is extremely remote, who are the investors going to be?"); Ex. C to May Decl. (Coniglio Dep. Tr. 109:11-112:20) (SSMF No. 64) (explaining that Recology believed that WPWMA would think the Nortech-EcoHub proposal would stray too far from current MRF operations and be too costly); *see also* SSMF Nos. 59-62, 65.) EcoHub tries to paint Recology's skepticism as a motive for aiding and abetting Nortech's breach. But the fact that Recology had consistent and legitimate concerns about EcoHub does not identify a "motive" for wrongdoing. If anything, Recology's well-founded skepticism demonstrates that any opposition to EcoHub voiced at Nortech board meetings throughout 2020 was based on legitimate considerations and was not a "pretext" or otherwise improper, as EcoHub repeatedly asserts, in conclusory fashion.

Recology's experienced leadership determined that EcoHub was not a viable entity to work with, and Recology made its position known from the outset. (*See, e.g.*, SSMF Nos. 27-30.) The Opposition references then-retired Mark Lomele's May 2020 analysis of the EcoHub proposal to argue that Lomele was also opposed to the EcoHub proposal. (*See* Opp'n at 4.) Recology does not dispute that Lomele held such opinions. EcoHub, however, has failed to articulate why a retired executive's opinions in May 2020 presents a material issue of fact regarding what Recology did or did not do in November 2020.

In any event, "motive" is not an element of the aiding and abetting claim, and arguments regarding Recology's subjective desires or business considerations cannot replace a glaring lack of admissible evidence regarding what (if anything) Recology *actually did* to allegedly aid and abet a Nortech breach. In other words, allegations of "motive" standing alone cannot generate a genuine issue of material fact regarding substantial assistance.

### b. The Evidentiary Record Does Not Support EcoHub's Allegation That Recology Threatened Nortech.

EcoHub claims that Recology pressured Nortech to abandon its partnership with EcoHub by threatening to submit its own bid for the RFP and had planned as such from the start. (Opp'n at 17.) EcoHub's characterizations of Recology's actions as a "threat" are directly contradicted

by the evidence itself. Recology first raised the possibility of submitting a separate bid in a November 2, 2020, email to Nortech board members. (*See* SSMF No. 66.) Recology's email described a separate proposal pursuant to which (if successful) Recology would share profits with the other Nortech members at a negotiated profit share split. (*See* SSMF No. 66; Ex. 10 to May Decl. (REC001784); *see also* Ex. I to May Decl. (Recology Dep. Tr. 190:6-192:9).) EcoHub does not dispute this fact. As the November 2 email demonstrates, Recology was concerned that Nortech's bid with EcoHub would fail and wanted to improve the chance that at least one of Nortech's members won the bid in a way that benefitted all members. (*See* Ex. 10 to May Decl. (REC001784).) (November 2, 2020, email from Michael Sangiacomo to Nortech Board members stating: "Recology continues to believe that it is not in the best interests of Nortech or any of its members to submit a single bid that is very unlikely to be successful. As a hedge against Nortech being eliminated from the process . . . **Recology proposes** that it submit a separate proposal . . . that would **provide compensation to all members** should it be the successful proposer.") (emphasis added).

Contrary to the Opposition's characterization of the term sheet Recology sent Nortech as a "threat" (Opp'n at 14), the term sheet was a ***proposal*** from Recology to submit a separate bid. (SSMF No. 67; Ex. G to May Decl. (Trewhitt Dep. Tr. 349:21-350:10); Ex. 10 to May Decl. (REC0001784).) In exchange for Nortech's agreement, Recology would compensate the other Nortech members if the bid succeeded. (Ex. G to May Decl. (Trewhitt Dep. Tr. 349:24-350:6).) Trewhitt explained that there "was a general understanding" and that this proposal process would "work[] both ways." (*Id.* at 350:3-6.) "The thought was that Recology would submit something separate, Nortech would submit something separate, and whoever won would compensate the other." (*Id.* at 350:3-10.) Ultimately, the members of Nortech did not agree to these terms. (*Id.* at 350:11-13.) So Recology did not submit a separate proposal. (*Id.* at 350:14-16.)

The undisputed evidence shows that Recology's proposed separate bid was a business proposal that Nortech was free to consider, negotiate, accept, or reject. Plaintiff's labeling of this email as a "threat" is not evidence and cannot fulfill its burden on summary judgment. The October 2, 2020, email, term sheet, and related testimony speak for themselves.

          **c.**       **EcoHub Cannot Demonstrate That Recology Encouraged or Assisted Nortech's Termination Decision.**

EcoHub claims that a jury could reasonably infer from the evidence that Recology encouraged or assisted Nortech in manufacturing a reason to prematurely terminate Nortech's relationship with EcoHub. (Opp'n at 14-15.) As a threshold matter, there was no "manufacture[d]" reason for Nortech's termination of its relationship with EcoHub. Once again, this is Plaintiff's labeling and characterization only. Nortech's reason was simple, real, justified, and supported by unrefuted evidence: EcoHub failed to provide any proof of financing, even though "[t]his was information that [Nortech] had been requesting from George [Gitschel] for—ever since the beginning of conversations. In various forms. And it was never provided; it was always promised." (Ex. G to May Decl. (Trewhitt Dep. Tr. 300:17 20).)

Even assuming, for the sake of argument, a jury could find Nortech manufactured a reason for the termination, the undisputed facts show Recology did not encourage, assist, or direct Nortech to cause its counsel to request proof of potential financing sources from EcoHub. (Mot. at 9-10; Ex. G to May Decl. (Trewhitt Dep. Tr. 349:1-4) (affirming that Recology did not participate in this decision).) Stephanie Trewhitt—one of the people who indisputably knew how the decision to request proof of financing came about—was crystal clear in her deposition testimony that the decision was made by Wastech and Sexton. Recology was not involved.

In the face of this irrefutable and dispositive testimony, EcoHub cites to the testimony of Salvatore Coniglio (Recology's CEO) (*see* Opp'n at 15) to try to create an issue of fact regarding Trewhitt's unequivocal and unambiguous testimony on this issue. The referenced testimony, read in full, does no such thing. Coniglio testified he was generally aware of Nortech's concerns about EcoHub's financing by virtue of attending Nortech board meetings. (*See* Ex. B to Eichmann Decl. with Exhibits and Attachments to EcoHub's Summary Judgment Oppositions ("Eichmann Decl.") (Coniglio Dep. Tr. 208:2-210:22).) Coniglio confirmed that he knew an email was going to go out asking Gitschel to produce a financing commitment letter by a set deadline. (*See* Ex. B to Eichmann Decl. (Coniglio Dep. Tr. 208:2-210:22).) Recology does not dispute that it discussed EcoHub's lack of financing with Nortech. It raised these concerns from the beginning.

1    When asked specifically about the November 10, 2020 Eric Clarke email, Coniglio stated:

> Q. Okay. So was it the case that before Mr. Clarke's e-mail went out on November 10th, 2020, you were aware that this was going to go out?
> A. Let me – can we just read it one – another time here?
> Q. Okay.
> A. I recall the piece about the financing being discussed, that this was going to go out. ***But I don't – I don't know if I've seen this specific e-mail***, but it does ring a bell. (Ex. B to Eichmann Decl. (Coniglio Dep. Tr. 208:19-209:3) (emphasis added).)
> . . .
> Asked how he knew about the planned request for proof of a potential financing source, Coniglio replied: "Because I think we – I think that was discussed at the board." (Ex. B to Eichmann Decl. (Coniglio Dep. Tr. 209:12-13).)
> . . .
> Q. Okay. And were you part of the decision about how long to give Mr. Gitschel to provide this financing commitment letter?
> [intervening objections]
> A. To answer – I think your question was was [sic] I a part of the decision on the deadline for EcoHub to provide financing? Is that what was – can you repeat the question?
> Q. Yeah. So Mr. Clarke's e-mail here provides a deadline that's November 13th, which is – you can see it's three days from the date that he sent the e-mail, right?
> A. Right
> Q. My question is: Were you part of the decision to provide Mr. Gitschel and EcoHub with a three-day deadline?
> A. ***I don't recall.*** (Ex. B to Eichmann Decl. (Coniglio Dep. Tr. 209:14-210:19).)

To put it bluntly, the foregoing excerpts, spanning approximately two pages of deposition testimony from a single witness, is the best EcoHub has been able to come up with in its efforts to create a genuine issue of material fact regarding Recology's alleged participation in Nortech's termination of its relationship with EcoHub. The quotes above, which do not establish anything about Recology's involvement in the Clarke emails, cannot create a genuine issue of material fact considering: (1) Clarke's correspondence was only forwarded to Recology *after the fact* (*see* Ex. 47 to Eichmann Decl.); and (2) Trewhitt's unequivocal testimony that Wastech and Sexton, *not Recology*, directed Clarke to send the emails at issue. (Ex. G to May Decl. (Trewhitt Dep. Tr. 349:1-4).)

It is even more of a stretch for EcoHub to argue that Recology's consistent concerns about financing and Coniglio's recollection about the same demonstrate that Recology "helped orchestrate" Nortech's termination. This is EcoHub manufacturing a disputed fact where none exists. "[A] mere scintilla of evidence will not be sufficient to defeat a properly supported motion

for summary judgment; rather, the nonmoving party must introduce some significant probative evidence tending to support the complaint." *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997) (cleaned up).  A lack of facts does not create a material dispute.

EcoHub also argues that Recology knew that Nortech would allegedly terminate its partnership with EcoHub by citing to Recology's corporate representative testimony that, at the time, Recology was concerned about potential litigation from EcoHub.  (Opp'n at 15.)  Such concerns were both reasonable and unremarkable, given Gitschel's history of litigiousness, his threatening emails to Nortech in the September–November 2020 period, and his overall contentious relationship with Nortech.  (*See* SSMF No. 43, Ex. 7 to May Decl. (NORTECH0007901 at 06) (September 19, 2020, email from Gitschel to Trewhitt stating "This is the LAST time that I will have given the garbage industry a chance to partner with EcoHub.  Their worst nightmare is about to become their new reality."); SSMF No. 76, Ex. 11 to May Decl. (NORTECH031966) (November 13, 2020, email from Gitschel to Clarke stating that the request for a financing letter was a "smoke screen to achieve some other objective."); *see also* SSMF Nos. 46-50; 77-78.)  In its Opposition, EcoHub fails to produce evidence showing Recology's knowledge of Nortech's termination plans.  EcoHub's assertion that Recology "had concerns that EcoHub was going to bring litigation" (Opp'n at 18) is a red herring.  Concerns about litigation are far from knowledge of an impending termination.  The latter does not follow from the former.

In any event, the undisputed evidence shows that Wastech and Sexton made the determination as to how to proceed with EcoHub.  In October 2020, Wastech and Sexton favored continuing to explore a joint Nortech-EcoHub proposal without Recology's support.  (*See* SSMF No. 58.)  As Nortech's president, Trewhitt directed Clarke to send the proof of financing email to EcoHub, and she testified that the decision to send this email was made by Wastech and Sexton, without involvement from Recology.  (*See* Ex. G to May Decl. (Trewhitt Dep. Tr. 348:10-349:4).)  Nortech had longstanding concerns about financing and finally decided to formally request proof of potential financing sources from EcoHub as the January 2021 deadline to submit the RFP approached.  (*See* SSMF Nos. 70-71.)  It is inconceivable and irrational to think that Nortech would have proceeded to submit a joint proposal with EcoHub in a competitive public

RFP process without *any* proof of financing interest, especially considering that EcoHub had been promising to provide such proof for months and had consistently failed to deliver. (*See* SSMF No. 71.) Accordingly, there is not even "a scintilla evidence" demonstrating that anything occurred between November 3 and November 10, 2020, that pushed Nortech to make a financial demand of EcoHub. Instead, Trewhitt unequivocally testified that Nortech had requested proof of financing from EcoHub "ever since the beginning of conversations. In various forms. And it was never provided; it was always promised." (*See* Ex. G to May Decl. (Trewhitt Dep. Tr. 300:17-20).) There is no deposition or documentary evidence to suggest otherwise.

As the Motion established, there is no evidence that Recology provided "substantial assistance" to Nortech's decision to end its relationship with EcoHub. Recology made its views on EcoHub known from the outset. EcoHub's arguments and characterizations cannot change the unrebutted evidence. Recology did not "threaten" Nortech with a competing bid nor did it play a role in Nortech's decision. This is an independent, sufficient ground to grant Recology's motion for summary judgment as to the aiding and abetting claim.

### B. Recology Is Entitled to Summary Judgment on EcoHub's Tortious Interference Claims.

EcoHub's tortious interference claims remain procedurally and substantively deficient. EcoHub's tortious interference claims are time-barred as the alleged harm materialized in November 2020 when Nortech terminated its relationship with EcoHub and EcoHub suspected wrongdoing by Recology. Moreover, EcoHub's tortious interference claims rise and fall with the aiding and abetting claim as this is the only wrongful conduct alleged in support of the tortious interference claims. (*See* Third Amended Complaint ("TAC") ¶¶ 41(a)-(r), 48; ECF No. 41.)

#### 1. EcoHub's Tortious Interference Claims Are Time Barred.

In its opening, Recology showed that each of EcoHub's claims for intentional and negligent interference with prospective economic advantage were untimely when EcoHub filed its initial complaint. These claims fall outside the two-year statute of limitations as the undisputed evidence shows that EcoHub started alleging (in writing) that Recology had interfered with the Nortech-EcoHub collaboration as early as September 2020 and no later than November 2020.

In response, EcoHub asserts that (i) the correct accrual date is based on the date damages were sustained and (ii) the discovery rule applies to toll the start of the two-year statute of limitations. EcoHub admits that it had concerns and suspicions about Recology in September and November 2020, but it claims that those suspicions were ameliorated by Szura's alleged assurances. (Opp'n at 20.) EcoHub maintains that it was not until January 8, 2021, that Gitschel learned from Nortech subcontractor Johnny Ray that Szura and Nortech were going to submit a bid for the WPWMA RFP without EcoHub, which started the two-year statute of limitations. (*Id.*) EcoHub continues that the harm from Recology's interference did not materialize until January 11, 2021, when EcoHub submitted an independent bid. (Opp'n at 19.)

EcoHub's arguments remain both procedurally and substantively deficient. EcoHub relies on inapposite case law to extend the accrual date to a time within the statute of limitations. Moreover, despite EcoHub's invocation of the "discovery rule," the undisputed factual record demonstrates that Gitschel "discovered" the factual bases for his claims in September through November 2020.

### a. EcoHub's Alleged Harm Accrued in November 2020.

EcoHub argues that its tortious interference claim against Recology did not accrue until January 11, 2021, the date when EcoHub submitted its own proposal to WPWMA. (Opp'n at 19.) As demonstrated in the Motion, EcoHub's alleged claim did not accrue when it submitted its own bid—it accrued months earlier, when Nortech terminated its relationship with EcoHub.

The case law is clear on this point: "[A] tortious-interference claim typically accrues 'at the date of the wrongful act.'" *DC Comics v. Pac. Pictures Corp.*, 938 F. Supp. 2d 941, 948 (C.D. Cal. 2013); *see Trembath v. Digardi*, 43 Cal. App. 3d 834, 836 (1974). The allegedly wrongful act here, based on EcoHub's own assertions, was the termination of EcoHub's and Nortech's relationship. (*See* TAC ¶ 41(q) ("The submission of the November 10, 2020, demand and the subsequent November 17, 2020 termination email . . . constitute further breaches of the fiduciary duties.").)[3] (Ex. 12 to May Decl. (NORTECH031567) (November 10, 2020, email from

---

[3] Moreover, "there is no requirement that damages must fully materialize before a cause of action accrues." *Mamola v. JP Morgan Chase Bank, N.A.*, No. 2:14-cv-02699-MCE-EFB, 2015 WL

1  Clarke); Ex. 16 to May Decl. (NORTECH037356) (November 17, 2020, email from Clarke).)
2  The claim accrued at the time Recology allegedly interfered, causing Nortech to cease work with
3  EcoHub on the WPWMA RFP.  If EcoHub believed that Recology was somehow involved in
4  Nortech's decision to require that EcoHub provide proof of financing interest, then the tortious
5  interference claim accrued when this demand was made, or, *at the latest*, when Nortech formally
6  and finally severed ties with EcoHub after EcoHub was unable to provide such proof.

7  EcoHub relies on inapposite case law to extend the statute of limitations to January 11,
8  2021, the date it alleges damages were sustained by virtue of Nortech submitting its RFP response
9  to WPWMA.  EcoHub provides no authority applying its novel claim-accrues-at-time-of-damages
10 interpretation to intentional or negligent tortious interference claims.  One federal case EcoHub
11 cites extended the statute of limitations for causes of action under inapplicable state statutes.
12 *Cover v. Windsor Surry Co.*, No. 14-cv-05262-WHO, 2015 WL 4396215, at *4 n.5 (N.D. Cal.
13 July 17, 2015).  EcoHub's state case law citations are equally deficient.[4]

          **b.**       **The Statute of Limitations on EcoHub's Tortious Interference Claims Began to Run Once EcoHub Suspected Wrongdoing by Recology.**

16 EcoHub claims that the "discovery rule" applies and tolled the statute of limitations period
17 from November 17, 2020, when Nortech formally terminated the relationship, to January 8, 2021,
18 when a Nortech subcontractor informed EcoHub that Nortech was going to submit a bid without
19 EcoHub.  (*See* Opp'n at 20.)  EcoHub misrepresents how the "discovery rule" works and relies on
20 facts not in evidence to make this argument.

21 Even where, as here, a party tries to use the discovery rule to argue that the statute of
22 limitations did not accrue until a date after the wrongful act, the law is clear that a party

---

6951185, at *4 (E.D. Cal. Nov. 10, 2015).  Even if EcoHub had sustained hypothetical damages after Nortech's termination email, that would still not change the date of accrual.  EcoHub's inability to continue working with Nortech is the basis of its claim for damages.  The allegedly wrongful act causing these damages occurred on November 17, 2020.

[4] In *City of Vista*, the court held "some" of Plaintiff's claims did not accrue until actual monetary loss was sustained, but did not extend that conclusion to any claims of intentional or negligent interference—to the extent they were even alleged at all.  84 Cal. App. 4th 882, 886 (2000). *Korea Supply Co. v. Lockheed Martin Corp.* does not analyze accrual dates whatsoever.  29 Cal. 4th 1134, 1152 (2003).  Finally, *Venhaus v. Shultz* merely restates the elements of tortious interference claims, but adds nothing to the analysis about whether the damages accrual theory applies to tortious interference cases.  155 Cal. App. 4th 1072, 1078 (2007).

"discovers the cause of action when he at least suspects . . . that someone has done something wrong to him," i.e., "when he has notice or information of circumstances to put a reasonable person on inquiry." *Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520, 531 (N.D. Cal. 2000); *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110 (1988) ("Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her."). Indeed, "[a] plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery. ***Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights***. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." *Jolly* at 1111; *DC Comics*, 938 F. Supp. 2d at 951 ("A plaintiff discovers the cause of action the moment he at least suspects a factual basis, as opposed to a legal theory, for the elements of the claim—in other words, when plaintiff suspects that someone has done something wrong to him.") (cleaned up); *R Power Biofuels, LLC v. Chemex LLC*, No. 16-CV-00716-LHK, 2017 WL 1164296, at *13 (N.D. Cal. Mar. 29, 2017) (finding the plaintiff's claims for tortious interference with contract and prospective economic advantage untimely because he failed to pursue litigation in a timely manner after he "had at least a suspicion of the cause of actions").

Here, EcoHub had more than a mere suspicion. On November 17, 2020, it was informed in writing by Nortech's attorney in plain terms that Nortech would no longer be working with EcoHub. (Ex. 16 to May Decl. (NORTECH037356 at NORTECH037356-57).) There was nothing equivocal about this email. Gitschel himself understood its gravity. In his follow-up email to Clarke on November 23, 2020, he stated that he had a "bad feeling" about Recology and alluded to having experienced "this same exact tactic many, many times before when [he had] tried to work with players in the garbage and recycling industries." (SSMF No. 78.) And in a November 16, 2020, email to Szura, Gitschel stated that he believed Recology had tried to terminate the relationship with Recology under false pretenses. (SSMF No. 79.) It is undisputable that EcoHub fully anticipated litigation at this point and had far more than the "suspicion of wrongdoing" that is sufficient for a claim to accrue.

Further, EcoHub asserted ***attorney work-product*** protection over 49 documents dated between November 17, 2020, and December 30, 2020, the subjects of which (according to EcoHub's own privilege log) included a "dispute with Nortech and Recology." (*See* Items Nos. 129-177, ECF Nos. 100, 100-1.) Of course, by asserting work-product protection, EcoHub is affirmatively representing that as of those dates, Gitschel was working with attorneys in anticipation of litigation. That Szura may have led Gitschel to hold out hope for some rekindling of the Nortech relationship is irrelevant, especially in terms of Gitschel's claims *against Recology*. Any encouragement that Szura provided to Gitschel that he may be able to work with Nortech has no bearing on the wrongful conduct that Gitschel felt Recology had engaged in that led up to Clarke's November 10 and 17, 2020 emails. Accordingly, the statute of limitations for Gitschel's claims against Recology started to run, at the latest, on November 17, 2020.

Moreover, whatever Szura (who could not speak for the Nortech board) said to Gitschel in phone calls does not negate the fact that Nortech's lawyer—acting on behalf of the entity—informed EcoHub in writing that Nortech would not be working with EcoHub on a joint bid. The Nortech-EcoHub relationship was unequivocally terminated on November 17, 2020. (Ex. 16 to May Decl. (NORTECH037356 at NORTECH037356-57).) Whatever representations may have been made to Gitschel after the fact, or whatever unreasonable degree of hope he could have been holding on to, is irrelevant to the claim accrual analysis and doesn't change anything about when EcoHub had a "suspicion of wrongdoing" as to Recology.

### 2. The Undisputed Facts Demonstrate Recology Did Not Commit Any Wrongful Acts.

Recology did not commit any wrongful acts against EcoHub, and EcoHub fails to point to any evidence to show otherwise. As explained *supra*, the only independently wrongful conduct (a required element of tortious interference) alleged by EcoHub is the same alleged conduct that forms the basis of the aiding and abetting claim. (*See* TAC ¶¶ 41(a)-(r), 55, 65.) For the same reasons discussed above, EcoHub has failed to identify a genuine issue of material fact about Recology's conduct (or lack of conduct) related to the October–November 2020 time period.

In any event, Recology was well within its rights to express its legitimate, strongly held

1  views about the merits of EcoHub's proposal as a member of a board acting in the best interests
2  of the company (Nortech).  Recology sharing its views on the likelihood of success for a joint
3  Nortech-EcoHub RFP response, and Recology's proposal and term sheet for a separate bid do not
4  constitute any "constitutional, statutory, regulatory, [or] common law" prohibition.  *Korea Supply*
5  *Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1159 (2003).  EcoHub has not shown, in filings
6  or through the evidentiary record, that Recology's conduct was "independently wrongful"—i.e.,
7  that it was "wrongful by some legal measure other than the fact of interference itself."  *Honey*
8  *Bum, LLC v. Fashion Nova, Inc.*, 63 F.4th 813, 824 (9th Cir. 2023) (citing *Ixchel Pharma, LLC v.*
9  *Biogen, Inc.*, 9 Cal. 5th 1130, 1142 (2020)); *see also Korea Supply*, 29 Cal. 4th 1134 at 1159.

### C.    EcoHub Has No Claim for Damages.

EcoHub argues that the joint EcoHub-Nortech proposal would have necessarily won the RFP and that EcoHub may recover lost profits for the hypothetical business agreement between WPWMA and Nortech-EcoHub because there is evidence demonstrating a reasonable reliability of these profits occurring.  (*See* Opp'n at 21, citing *Sargon Enters. Inc. v. Univ. of S. Cal.*, 55 Cal. 4th 747, 774 (2012) (stating that a new business can recover lost profits that are "dependent upon future events . . . where their nature and occurrence can be shown by evidence of reasonable reliability").)

But "speculative expectancies" with "no sufficient degree of certainty" are not protected claims.  *See Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*, 2 Cal. 5th 505, 518 (2017) (cleaned up).  In particular, California courts have repeatedly emphasized how speculative the public bidding process is.  *See, e.g.*, *Kajima/Ray Wilson v. Los Angeles Cty. Metro. Trans. Auth.*, 23 Cal. 4th 305, 315-16 (2000) ("Because the [public entity] was authorized to reject all bids, [the plaintiff] did not know [even when it submitted the bid] whether the contract would even be awarded.").  Moreover, this Court denied EcoHub's claims about the certainty of its future business relationship with WPWMA in its motion to dismiss order.  (*See* Court Order Granting in Part Nortech's Motion to Dismiss, Denying Recology's Motion to Dismiss (ECF No. 49 at 25) (EcoHub "does not plausibly allege an ongoing relationship with probability of future economic benefit") (citing *Roy Allan*, 2 Cal. 5th at 516).)

While expert testimony can be used to establish damages for lost profits for new business ventures, this is only helpful where there is a colorable argument that the new venture would have operated with certainty. Plaintiff's own case law makes that clear. *Sargon*, 55 Cal. 4th at 774 ("[W]here the operation of an unestablished business is prevented or interrupted, damages for prospective profits that might otherwise have been made from its operation are not recoverable for the reason that their occurrence is uncertain, contingent and speculative.) (citing *Grupe v. Glick*, 26 Cal. 2d 680, 693 (1945) (collecting cases)). But the cited case law and this Court's prior order demonstrate that there is no certainty when it comes to public contracts. (ECF No. 49 at 25.) Here, WPWMA declined to proceed with granting a contract extension to EcoHub and Nortech. Instead, it put the contract out for a bid, actively soliciting other proposals. No matter the alleged strength of the EcoHub-Nortech proposal, there is simply no guarantee (or any reasonable level of confidence or reliability) that it would have won.

Finally, in a last-ditch attempt to salvage its damage theories, EcoHub claims that Recology's lack of engagement with its RFP expert, Richard Gertman, "is dispositive." Plaintiff's expert's opinions are irrelevant and run counter to clearly established California law cited in this section. Debating the merits of the expert's opinions is unnecessary because the law is dispositive.[5] EcoHub's damages claim fails.

**III.    CONCLUSION**

For the reasons set forth above, Recology's Motion for Summary Judgment should be granted, and all of EcoHub's claims asserted against Recology should be dismissed with prejudice.

---

[5] Because of EcoHub's delays, Defendants were only able to depose EcoHub's expert the day after they filed their summary judgment briefings. Moreover, EcoHub does not engage with Defendants' expert countering Gertman's opinions at all in its Opposition, even though it deposed him before it filed its Opposition. So by EcoHub's reasoning, its own lack of engagement with Defendants' expert is dispositive of the weakness of its own position.

| | | |
|---|---|---|
| 1 | Dated: December 20, 2024 | MORRISON & FOERSTER LLP |
| 2 | | |
| 3 | | By: */s/ Robert W. May* |
| 4 | | Robert W. May |
| 5 | | *Attorney for Defendant* RECOLOGY INC. |