UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
San Francisco Division

| | |
|---|---|
| EcoHub, LLC, | Case No. 3:22-cv-09181-TSH |
| Plaintiff, | |
| v. | **Declaration of Jeff Eichmann regarding EcoHub's collection and production of documents** |
| Recology Inc., Nortech Waste LLC, and Does 1 through 10, | |
| Defendants. | |

Declaration of Jeff Eichmann

**Declaration of Jeff Eichmann**

I, Jeff Eichmann, declare:

1. I am an attorney with EICHMANN, a professional corporation. I am lead counsel for Plaintiff EcoHub, LLC. This declaration is submitted in response to the Court's order, made orally during the discovery conference held on December 12, 2024, regarding EcoHub's document collection and production in this case. I will also address the issue of preservation. As the Court stated during the December 12 conference, EcoHub is not required to disclose information that is protected by the attorney-client communication privilege or work product doctrine in providing this declaration. Neither EcoHub nor its counsel intend to disclose such information in providing this declaration, and I do not believe any such disclosure or waiver of privilege results from the information provided below.

**Collection and preservation**

2. In this section, I summarize the process by which my firm has collected and overseen the collection of documents from EcoHub in this matter.

3. In November 2022, I was added to EcoHub's legal team for this matter. I subsequently took on the role of lead counsel. Prior to my involvement in the case, Mr. Gitschel and other attorneys working with EcoHub (including co-counsel Kevin Mayer) had collected, organized, and analyzed a large amount of documentation, including emails, relating to the events at issue in this lawsuit. I was given access to those materials in November 2022. At the time, the materials appeared to constitute the large majority (if not the entirety) of relevant evidence that EcoHub already possessed; even today, I consider that assessment to be accurate.

4. In December 2022, I asked my IT consultant, Hugh Williams,[1] to create drives on my firm's NAS (Network Attached Storage) system for the EcoHub matter and case materials, which he promptly did. Also in this month, I ensured that Mr. Gitschel understood EcoHub's obligations to preserve potential sources of evidence (of all types electronic and otherwise) that may have relevant information to this case. Mr. Gitschel confirmed expressly that he understood these obligations,

---

[1] I have worked with Mr. Williams for over 20 years, starting in 2003 at my prior firm (Dovel & Luner LLP) and continuing through today. He has assisted me on various technical issues during the course of this case relating to document productions.

1  already had in place systems for saving and backing up all EcoHub materials, and he further
2  confirmed that he would continue to do so.

3       5.     In June 2023, we collected Mr. Gitschel's emails (sent and received) and added them
4  to an eDiscovery platform called GoldFynch that was being used by my co-counsel Logan Mayer
5  LLP.  An experienced Logan Mayer paralegal, Christian Sevilla, assisted Mr. Gitschel in obtaining
6  all available emails from his @ecohub.net account, which were then uploaded to the GoldFynch
7  platform.  Mr. Gitschel's emails were not presorted or filtered by him or anyone else in the collection
8  or uploading process.  The messages in the account went back to February 13, 2017—with the first
9  message being a welcome email from the service provider sent when the account was opened.

10       6.     In December 2023, I retained HON Discovery Group—an eDiscovery vendor that I
11  have worked with on several cases—to assist with document collection and production issues. The
12  HON Group set up projects in two different platforms for our work on this case:  one is called Nebula
13  (provided by vendor KLDiscovery) and the other is called Nextpoint (provided by a vendor of the
14  same name).  At the recommendation of the HON Group, we have been primarily using the Nebula
15  platform for collection, storing, and searching of documents from EcoHub and using the Nextpoint
16  platform for storing and reviewing finalized productions from EcoHub, Defendants, and third parties.

17       7.     In early January 2024, we (my firm and Logan Mayer) provided Mr. Gitschel's email
18  files to the HON Group, which then uploaded them to the Nebula platform.  These were the same
19  files that we had previously collected and uploaded to the GoldFynch platform, and they remain on
20  the Nebula platform today.  Also at this time, my firm and Logan Mayer worked with Mr. Gitschel to
21  identify non-email files that might be relevant or otherwise responsive to Defendants' document
22  requests (which were served on December 21, 2023).  We worked with Mr. Gitschel by phone and by
23  Zoom to identify the different folders of documents and information he had stored on his devices and
24  in the cloud that might contain relevant or responsive information.  We also used the organized files
25  and analysis that I received access to in November 2022 as a guide in some instances.[2]  The non-

---

[2] With limited exception, we did not take those same files and simply produce them because most of those files had already been converted to PDF form (from email and other formats).  As a result, those PDF files did not have the original metadata.  So when a relevant or otherwise responsive document was identified in that set of organized PDF files, we would locate the original file and upload that to the Nebula platform.

Declaration of Jeff Eichmann                                                            2

email files[3] were provided to the HON Group, which then added them to the Nebula platform, where they remain. Since the January 2024 collection, my co-counsel and I have from time to time gone back to Mr. Gitschel with requests to search for documents or emails—either in response to Defendants' requests, our own requests, or requests from our experts. In most if not all instances, those requests have either yielded no additional documents or they resulted in Mr. Gitschel identifying for us documents that we had already collected and uploaded to the Nebula platform but had, for one reason or another, been unable to locate without his assistance.

**Review and productions**

8. In this section I summarize the process by which my firm has handled and overseen the review of materials collected from EcoHub and the productions made to Defendants.

9. I am personally responsible for our team's review and production of materials, and I have personally spent a significant amount of time (I estimate in excess of 200 hours) reviewing materials, in the Nebula platform or otherwise. I have been assisted by co-counsel Logan Mayer and their staff, by Cristina Campos (an experienced paralegal who was trained and employed by White and Case before joining my firm in October 2023), and by several of the staff at the HON Group—including its founder and principal, Mark Seo. The process of reviewing materials has included a combination of "manual" review (e.g., reviewing entire folders of documents, one by one), reviewing the results of search parameters (e.g., reviewing emails to or from a particular individual or organization and/or from a particular time period), and reviewing the results from searches for specific words or phrases. This process has been both cumulative and iterative, and has included several dozen review sessions over the course of this case. These are human eyes reviewing the materials, not AI programs or algorithms.

10. During the course of the case, EcoHub has made 13 document productions, consisting of 1,670 files (the majority of them emails) that amount to 14,458 pages.[4] The first five productions consisted of 1,328 files (about 80% of the total) containing 11,518 pages (also about 80% of the total) and were made prior to August 15, 2024. The 30(b)(6) deposition of EcoHub occurred on August 20,

---

[3] A relatively small number of these "non-email files" were originally email files but had been previously saved by Mr. Gitschel in folders (outside of his email program).

[4] For frame of reference: Nortech has made four productions, totaling 4,324 files (of 62,712 pages), and Recology has made four productions, totaling 642 files (of 4,106 pages).

2024. The next two productions were made on September 1 and 4, 2024, consisting of 46 additional files containing 712 pages, bringing the cumulative production as of then up to about 82% of the total (in terms of documents) and 85% (in terms of pages). Mr. Gitschel was produced for a second day of deposition, under Rule 30(b)(1), on September 23, 2024. The remaining productions are explained below in the next section. Although EcoHub has produced additional documents after the second deposition of Mr. Gitschel, Defendants have not sought additional deposition time from him (or any other witness) as a result of the additional productions (or otherwise).

**Specific issues**

11.     In this section I address specific issues that Defendants have raised with the Court about EcoHub's document production and preservation efforts.

Argie Rumann:

12.     On November 23, 2023, I served EcoHub's initial disclosures. The disclosures listed Argie Rumann as a potential witness. Mr. Rumann assisted Mr. Gitschel in his interactions with Nortech. He had been given the title of "Chief Engineer" by Mr. Gitschel. When I served the disclosures I did not realize that Mr. Rumann was no longer in contact with Mr. Gitschel or that he had stopped working with EcoHub in early 2021. On July 2, 2024, defense counsel emailed me that they intended to take Mr. Rumann's deposition and asked if I would accept service of a subpoena. In response, I attempted to contact Mr. Rumann by his last-known phone numbers and emails on multiple occasions. I told defense counsel that I had been unable to receive a response but would keep trying to reach him. On July 18, 2024, I emailed defense counsel to inform them that I had still been unable to reach Mr. Rumann. In that email I also provided all contact information that I had for Mr. Rumann (phone numbers, email addresses, physical addresses), including contact information I had located through searches using Lexis databases. On July 22, 2024, I served EcoHub's supplemental disclosures under Rule 26; the supplements included Mr. Rumann's contact information. To my knowledge, Defendants did not attempt to locate, contact, or subpoena Mr. Rumann after that date.

13.     During Mr. Gitschel's first deposition in this case, taken on August 20, 2024, Defendants asked Mr. Gitschel questions about the ecohub.net email accounts of others besides

Declaration of Jeff Eichmann                                                                                                          4

| | |
|---|---|
| 1 | himself, including Mr. Rumann. Mr. Gitschel essentially testified that all emails of all such accounts |
| 2 | had been saved and backed up, which was his understanding at the time—and the understanding of |
| 3 | myself and co-counsel as well. Following this deposition, co-counsel and I (and our respective staff) |
| 4 | went back to confirm that we had collected Mr. Rumann's ecohub.net email account earlier in the |
| 5 | case. We learned that we had not done so and also discovered at that time that Mr. Rumann's |
| 6 | ecohub.net account had been deactivated by Mr. Gitschel, along with other accounts that were no |
| 7 | longer being used, in May 2021 to avoid the payment of the annual fees charged by the service |
| 8 | provider. We also learned that as a result of the deactivation, the service provider stopped storing |
| 9 | emails from those accounts in the cloud shortly after deactivation pursuant to their default policies— |
| 10 | which was contrary to Mr. Gitschel's understanding at the time of his deposition. Our staff contacted |
| 11 | the email service provider and Microsoft to see if archives could be retrieved, but they were told this |
| 12 | option had long since expired (in 2021). Several emails sent from or to Mr. Rumann's account have |
| 13 | been produced by EcoHub in this case, and we believe that what has been produced constitutes the |
| 14 | majority if not entirety of emails that are material to the issues in the case. But, to the extent that Mr. |
| 15 | Rumman sent or received emails from his ecohub.net account that might be relevant to the issues in |
| 16 | this case and that did not also include Mr. Gitschel or Defendants' witnesses, those emails were not |
| 17 | available from the email service provider's cloud and can only be obtained from Mr. Rumman |
| 18 | himself or his devices. |
| 19 | <u>Sarah Jeon</u> |
| 20 | 14.  Nortech's request for production no. 9 asked EcoHub for "[a]ll communications |
| 21 | between George Gitschel and Jacob Jeon or Sarah Jeon that concern or relate to Nortech, Recology, |
| 22 | WPWMA or this lawsuit." In working with Mr. Gitschel to prepare EcoHub's written response |
| 23 | (which was served on January 22, 2024), I learned that Jacob Jeon was a recent investor in EcoHub |
| 24 | and Sarah Jeon was his daughter, a recent Yale law school graduate who was given a position as an |
| 25 | officer of EcoHub in early 2023. I did not understand until several months later that Mr. Gitschel had |
| 26 | previously been talking with Ms. Jeon about issues of antitrust violations in the waste industry in |
| 27 | connection with a paper that Ms. Jeon was writing for a law school antitrust class while she was a |
| 28 | student. Some of their communications for that paper mentioned Defendants, and so did the paper |

Declaration of Jeff Eichmann                                                                                              5

itself. We located those communications, the paper itself, and the paper's appendices and produced them on September 4, 2024 – which was prior to Mr. Gitschel's deposition on September 23, 2024. In preparation for the discovery hearing on December 12, 2024, I did another search for materials relating to the issues raised by Defendants' discovery letter and located an additional email chain between Mr. Gitschel and Ms. Jeon that referenced this lawsuit and that predated Ms. Jeon's employment offer and acceptance, and we produced this document as part of the last production EcoHub has made in this case (EcoHub production no. 13), which was made on December 12, 2024. That production included a total of seven other documents (containing 270 pages).[5]

Van Dyck documents

15. Defendants' discovery letter identified two documents produced by third party Wayne van Dyck[6] that they contend EcoHub itself should have produced. ECF No. 77 at 2 (identifying documents produced with Bates labels: WVD0001 and WVD0396). The first document was in fact produced by EcoHub, on July 15, 2024 (with a Bates range starting ECO004818). The second document is an email from June 2020 concerning potential investment terms for EcoHub (the company itself). I am not certain why or how, in reviewing Mr. van Dyck's materials, I identified and produced this document on his behalf but missed it in the review of EcoHub's emails, but it was not intentionally withheld from the EcoHub production.

Morgan Stanley documents

16. Defendants' discovery letter identified four documents produced by third party Morgan Stanley that they contend should have been produced by EcoHub itself. ECF No. 77 at 2 (identifying documents produced with Bates labels: MS-EcoHub0000607, MS-EcoHub0000926, MS-EcoHub0000931, MS-EcoHub0000938). The first document (--607) is an email from December 2018 that does not concern this litigation or the Defendants. It relates to a potential project in Long

---

[5] The other documents we produced on that date were (1) three emails previously listed on EcoHub's privilege log that did not belong there (and three email attachments, which had already been produced separately earlier in the case), and (2) a complete version of the RFP response that EcoHub submitted by itself to the WPWMA in 2021. EcoHub produced a version of that response on August 14, 2024; that version contained the same proposal and appendix (which constituted the first 115 pages) but inadvertently omitted an additional 15 pages that followed the appendix.

[6] I personally handled Mr. van Dyck's response to Defendants' document subpoena in this case and reviewed each of the documents he produced to Defendants.

Declaration of Jeff Eichmann                                                                                   6

Island that was being considered at the time. EcoHub has produced several emails relating to the same subject matter and participants in the email that both pre- and post- date the email. I am not certain how this particular email was overlooked, but it was not intentionally withheld from EcoHub's production. The second document (--926), third document (--931), and fourth document (--938) contain an email chain between George Gitschel, Eric Farina of Morgan Stanley, and Wayne Van Dyck from July 2020. This entire email chain was in fact produced by EcoHub, on May 9, 2024 (with a Bates range of ECO000541-544).

<u>Emails between the parties that Defendants produced</u>

17. During a meet and confer on September 27, 2024, defense counsel told me that they had located hundreds of individual emails that included EcoHub that Defendants had produced but that had not been produced by EcoHub. I was skeptical and asked defense counsel to provide a list of these emails. Defense counsel said they would do so but did not. On October 25, 2024, I reiterated my request and defense counsel provided a list of 251 documents on October 28, 2024, which I then forwarded to the HON Group for review. The HON Group was able to readily determine that about 100 of these documents had in fact been produced by EcoHub. Among the remaining documents, dozens more were contained within email chains that were produced by EcoHub (i.e., they simply were not produced as stand-alone emails), and several of the supposedly missing emails were email notifications that Nortech received when Mr. Gitschel would share a DropBox link or file (i.e., an email generated by DropBox that does not originate in Mr. Gitschel's email account and is thus not missing). Of the remaining items on the list, we were able to identify several dozen that we in the Nebula platform from our collection of EcoHub materials and we produced those as part of EcoHub production no. 10 on November 15, 2024 (which was at the end of my first full week back at the office following a trial in Texas). I can speculate why these documents were not previously identified and flagged for production, but I do not know for certain. I do know, however, that they were not deliberately withheld (and none are even arguably, in my view, damaging or undermining to EcoHub's case). There do remain some documents on Defendants' list that we have not been able to locate in our collected files from EcoHub. We are not sure why that is, but we have no reason to think there was something systematically flawed about our collection process, or that these materials

were deliberately discarded.[7]

Specific time periods

18. Defendants have asserted that EcoHub produced limited materials for the following time periods: April 2019 – January 2020; March 2020; and December 2020 – April 2021. ECF No. 77 at 2. Based on my review of all parties' documents, the deposition testimony in this case, and my understanding of the case from my discussions with Mr. Gitschel, during these periods of time there was limited interaction between EcoHub and Defendants and the activity that EcoHub was engaged in during these months was either unrelated to the WPWMA contract or was privileged. I did, however, do further searches for materials from this time frame in response to Defendants' complaints and identified a handful of additional documents, which were produced as part of a production made on October 18, 2024 (EcoHub production no. 8).

Additional productions not already addressed above

19. During deposition, Mr. Gitschel testified that he exchanged certain emails with Nortech's Paul Szura using Mr. Szura's personal email account with Comcast. I was previously unaware of this from my prior review of EcoHub's documents and from my review of Nortech's document production. I asked the HON Group to search for emails to or from Mr. Szura at a Comcast account, and they identified a limited number of emails that EcoHub produced as part of a second production made on October 18, 2024 (EcoHub production no. 9).

20. EcoHub's production no. 11 was made on November 19, 2024. This production consisted of four emails (and two attachments) that were erroneously included on EcoHub's privilege log. EcoHub's production no. 12 was made on December 5, 2024. This production consisted of one file, a Zoom video recording the WPWMA made of the meeting they held on August 12, 2020. This recording was referenced in emails produced months prior and was again referenced in one of the expert reports EcoHub served on October 4, 2024. Defense counsel later advised me that we had not

---

[7] As a check on whether our collection and review process was significantly flawed or instead was within the norms of ordinary human or technological error, I asked the HON Group to do a further comparison of the parties' document productions. Their analysis identified (1) 17 emails between EcoHub and Nortech that were produced by EcoHub but not by Nortech and (2) 23 emails that included Nortech and Recology but that were produced only by Recology, and (3) 173 emails that included Nortech and Recology but that were produced only by Nortech.

Declaration of Jeff Eichmann                                                                 8

produced a copy so we promptly addressed that and made the production.

21. I have attempted to fully address each of the issues that was raised at the discovery conference. If the Court would like additional information regarding any of the issues, I will of course provide the information.

I declare, under penalty of perjury, that the foregoing is true and correct.

Executed: January 13, 2025

/s/ Jeff Eichmann

Declaration of Jeff Eichmann                                                                                           9