UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ECOHUB, LLC,<br><br>     Plaintiff,<br><br>  v.<br><br>RECOLOGY INC., et al.,<br><br>     Defendants. | Case No. <u>22-cv-09181-TSH</u><br><br>**ORDER GRANTING DEFENDANT NORTECH WASTE, LLC'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT RECOLOGY INC.'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 85, 88 |

## I. INTRODUCTION

Pending before the Court is a motion for summary judgment brought by Defendant Nortech Waste, LLC ("Nortech") (ECF No. 85) and a motion for summary judgment brought by Defendant Recology Inc. (ECF No. 88).[1] Plaintiff EcoHub LLC filed an Opposition to Nortech's motion (ECF No. 96) (Opp'n to Nortech Mot.) and an opposition to Recology's motion (ECF No. 98) (Opp'n to Recology Mot.). Nortech and Recology each filed a Reply (ECF Nos. 107 and 108, respectively). The Court held an in-person hearing on January 30, 2025 and now issues this order. For the reasons stated below, the Court **GRANTS** Nortech's motion and **GRANTS** Recology's motion.[2]

---

[1] For precision's sake, citations herein are to the unredacted versions of Nortech's motion and separate statement of facts (ECF Nos. 84-1; 84-2), Recology's motion and separate statement of facts (ECF Nos. 87-1; 87-2), Plaintiff's opposition to Nortech's motion (ECF No. 94-2), Plaintiff's opposition to Recology's motion (ECF No. 97-1), and the parties' declarations and exhibits in support of their respective motions, which were filed under seal. Most sections of these documents cited within this order can be found in redacted versions the parties filed on the public docket. *See* ECF Nos. 85 (Nortech's redacted Mot. for Summ. J.); 88 (Recology's redacted Mot. for Summ. J.); 96 (Plaintiff's redacted opposition to Nortech's motion); 98 (Plaintiff's redacted opposition to Recology's motion).

[2] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos.

## II.    BACKGROUND

Plaintiff EcoHub is a Texas limited liability company founded and operated by George Gitschel.  Third Am. Compl. ("TAC") ¶ 10, ECF No. 41, Pl.'s Resp. to Recology's Separate Statement of Material Facts ("SSMF"), Fact No. 1.[3]  Defendant Recology is a California corporation based in San Francisco, CA (Pl.'s Resp. to Recology SSMF, Fact No. 12), and Defendant Nortech is a California limited liability company based in Nevada City, CA.  TAC ¶ 12.  Recology is one of three members of Nortech, each of which is a 33.3% minority owner with the right to appoint one of three directors on Nortech's Board of Directors ("Board").  Pl.'s Resp. to Recology SSMF, Fact No. 7; Recology Answer to TAC ¶ 47, ECF No. 57.

Recology "owns operating companies in the waste industry and oversees their operations at landfills and material recovery facilities."  Pl.'s Resp. to Recology SSMF, Fact No. 13.  The Western Placer Waste Management Authority ("WPWMA") is a public agency that owns a material recovery facility ("MRF") in Placer County, California.  *Id.*, Fact Nos. 9, 14.  Nortech was created for the sole purpose of operating WPWMA's MRF.  *Id.*, Fact No. 9.  In 2019, Nortech had a contract with WPWMA to manage and operate WPWMA's waste management facility in Placer County, California.  *Id.*, Fact Nos.  9, 14, 17.  The contract between WPWMA and Nortech was scheduled to expire on June 30, 2022.  *Id.*, Fact No. 17.

Nortech became involved with EcoHub in spring 2019, after Nortech had begun preparing to seek a contract extension for the WPWMA MRF.  *Id.*, Fact No. 18.  In May 2019, Nortech's Vice President and General Manager Paul Szura advised Nortech President Stephanie Trewhitt about EcoHub's interest in working with Nortech to submit a proposal for an extension of Nortech's contract to operate the MRF.  *Id.*, Fact Nos. 11, 19.[4]  In April 2020, Trewhitt informed the Nortech Board that she had been working with EcoHub.  *Id.*, Fact No. 21.  EcoHub's majority

---

12, 14, 15.
[3]  At the January 30, 2025 summary judgment hearing, Plaintiff confirmed that it has limited the scope of its claims and period at issue from the allegations Plaintiff made in the operative Third Amended Complaint ("TAC").  The Court primarily cites undisputed facts based on Plaintiff's responses to Nortech's and Recology's separate statements of material facts.  ECF Nos. 96-5; 98-1.  Plaintiff did not submit a separate statement of material facts.
[4]  The contract extension would have been for 20 years.  *See* Pl.'s Ex. 14, ECF No. 95-2 at NORTECH004756

owner, founder and CEO, George Gitschel, has and has always had sole authority to make binding decisions on behalf of EcoHub.  *Id.*, Fact Nos. 2, 4.

On April 28, 2020, Gitschel emailed Trewhitt a letter summarizing EcoHub's proposal to be presented to the Nortech Board at the May 4, 2020 Board meeting.  *Id.*, Fact No. 24.  After EcoHub presented its proposal, the Nortech Board directed "Nortech staff to ask WPWMA staff to present to the WPWMA Board said proposal."  Pl.'s Resp. to Nortech SSMF, Fact No. 8.

The Waste Supply Agreement or Waste Supply Service Agreement ("WSA") was a proposed contract setting forth terms to which Nortech and EcoHub were contemplating agreeing. Pl.'s Resp. to Nortech SSMF, Fact No. 9.  Plaintiff alleges that in the event WPWMA extended Nortech's contract, Nortech would have received $10 per ton of municipal solid waste or recycled paper and cardboard processed at the MRF, plus cost-of-living increases.  TAC ¶ 19.  EcoHub would have received all remaining profits from the operation of the facility.  *Id.*  None of the WSAs were ever finalized.  Pl.'s Resp. to Nortech SSMF, Fact No. 10.

On June 5, 2020, Nortech and EcoHub submitted their proposal for an amended and extended contract to the WPWMA.  Pl.'s Resp. to Recology SSMF, Fact No. 31.  Nortech and EcoHub delivered an in-person presentation to WPWMA's Technical Advisory committee on August 12, 2020 in support of their effort to obtain an amended and extended Nortech contract. *Id.*, Fact No. 33; Pl.'s Resp. to Nortech SSMF, Fact No. 15.  The presentation included PowerPoint slides that were "edited and approved by Nortech in advance."  Pl.'s Resp. to Nortech SSMF, Fact No. 15.  On September 4, 2020, Nortech sent a revised contract extension proposal involving EcoHub to the WPWMA.  *Id.*, Fact No. 19.

On September 17, 2020, Trewhitt presented the revised Nortech contract extension proposal to WPWMA.  *Id.*, Fact No. 21. On September 17, 2020, WPWMA's Board voted 5-0 to issue a Request for Proposal ("RFP"), rather than continuing discussions with Nortech about a contract extension.  *Id.*, Fact Nos. 22–23.  That same day, after learning about WPWMA's decision to issue an RFP, Gitschel emailed Trewhitt to ask if Nortech would be interested in submitting a joint proposal in response to the RFP.  Pl.'s Resp. to Recology SSMF, Fact No. 36. Over the next two days, Gitschel and Trewhitt exchanged a series of emails.  Pl.'s Resp. to

United States District Court
Northern District of California

Nortech SSMF, Fact No. 23.  On September 18, Trewhitt responded that "Nortech['s] members are going to review the RFP . . . and then we will have a board meeting on Sept. 29th to discuss how to move forward[.]"  *Id.*  Trewhitt continues that Nortech "is owned by 3 equal partners and I have to respect how they want to move forward."  *Id.*  On September 19, Gitschel responded:

> Does this answer clear things up for you? The answer is a resounding "NO" on partnering in the future with you or Nortech! What you need to do is to take a good long look in the mirror and know with CONVICTION that YOU are 100% RESPONSIBLE for LOSING this deal for Nortech. This is the result of your 100% CONTROL and ACTIONS. Own that accountability for the rest of your waking days. Now, go back up to the beginning of this email and read the dark character traits. Get out that same mirror and know that is you.

*Id.* (emphases in original).  In his response to Trewhitt, Gitschel further stated that "Recology and Sexton . . . hindered us from getting this extension by controlling everything you said and how Nortech handled the entire deal" and stated:

> Recology capitalized on your fear and inexperience to kill this deal. They made you silence me, when it really counted.  That was calculated on Recology's behalf.  If Recology would have provided us with even a miniscule bit of support, Nortech would have the contract extension and we'd be off to the races.

Pl.'s Resp. to Recology SSMF, Fact No. 43.  In that same email, Gitschel wrote: "This is the LAST time that I will have given the garbage industry a chance to partner with EcoHub.  Their worst nightmare is about to become their new reality."  *Id.* (emphasis in original).  Gitschel's emails on that day included an email filled with insults (*id.*, Fact No. 46).  That same day, Gitschel told Trewhitt he was "not the least bit upset by your actions because we are now free of you and your BOD, rather than dealing [with] y'all for the next 20-years."  *Id.*, Fact No. 47.

On October 11, 2020, Gitschel sent an email to Trewhitt and Szura attaching a presentation, which Gitschel described as "our EcoHub proposal to the Nortech BOD regarding the WPWMA RFQ/RFP submittal[.]"  Pl.'s Resp. to Nortech SSMF, Fact No. 25.  The proposal described Nortech as "the lead contractor" and EcoHub as "an independent contractor under Nortech with an addendum 'Waste Supply and Service Agreement' to the WPWMA Nortech Operating Agreement[.]"  *Id.*

At the October 13, 2020 Nortech Board meeting, Salvatore Coniglio, on behalf of

Recology, stated that he wanted to better understand how EcoHub could obtain the necessary technology permits in time to start the contract with WPWMA.  Pl.'s Resp. to Recology SSMF, Fact No. 52.  On October 20, 2020, the Nortech Board held a meeting during which the Board further discussed Nortech's options for responding to the RFP and Recology presented its progress in developing an RFP strategy.  *Id.*, Fact No. 54; Pl.'s Resp. to Nortech SSMF, Fact No. 26.  At the October 27 Nortech Board meeting, Recology's then-CEO, Michael Sangiacomo, said that Recology did not have confidence in the viability of the facility presented by EcoHub.  Pl.'s Resp. to Recology SSMF, Fact No. 55; Recology Mot. at 3.

On October 28, Gitschel sent an email to Szura asking when Recology "w[ould] receive the official 'partnership' letter for the WPWMA Letter from Nortech[.]"  Pl.'s Resp. to Nortech SSMF, Fact No. 28.  Szura did not reply by email.  *Id.*, Fact No. 29.

On November 2, 2020, Recology wrote to the two other Nortech Board members, Sexton and Wastech, proposing the possibility of submitting its own separate RFP response.  Pl.'s Resp. to Recology SSMF, Fact No. 66.

On November 10, 2020, an attorney for Nortech asked EcoHub to provide a financing commitment letter by November 13 showing it was able to secure at least $350 million to fund the proposed EcoHub facility.  Pl.'s Resp. to Nortech SSMF, Fact No. 30; Pl.'s Resp. to Recology SSMF, Fact No. 73.  Nortech's attorney emailed EcoHub on November 17, 2020, purporting to terminate discussions between Nortech and EcoHub concerning efforts to jointly respond to the RFP, citing the failure to provide the financing commitment letter.  Pl.'s Resp. to Nortech SSMF, Fact No. 31.

Plaintiff alleges that EcoHub and Nortech continued to have discussions about resuming their joint work into January 2021.  TAC ¶ 31.  On January 11, 2021, Nortech and EcoHub each submitted their own competing RFP responses to WPWMA.  Pl.'s Resp. to Nortech SSMF, Fact Nos. 35, 37.  WPWMA eventually awarded the relevant contract to another party, not EcoHub or Nortech.  Pl.'s Resp. to Recology SSMF, Fact No. 87.

EcoHub filed this case in this Court on December 30, 2022, and filed the operative TAC on July 6, 2023.  ECF Nos. 1, 41.  In its TAC, Plaintiff alleged claims against Nortech for breach

of fiduciary duties (Claim 1, TAC ¶¶ 17–36); against Recology and Does 1–100 for aiding and abetting Nortech's alleged breach of fiduciary duties (claim 2, ¶¶ 37–44); against all Defendants for intentional interference with prospective economic advantage (Claim 3, ¶¶ 45–59); and against all Defendants for negligent interference with prospective economic advantage (Claim 4, ¶¶ 60–74).  Defendants filed answers to the TAC on November 7, 2023.  ECF Nos. 56, 57.  None of the Defendants have asserted any counterclaims or crossclaims.  *See generally* ECF Nos. 56, 57.

On August 10, 2023, Nortech and Recology each filed motions to dismiss the TAC.  ECF Nos. 46–47.  On October 11, 2023, the Court granted Nortech's motion to dismiss as to intentional and negligent interference with prospective economic relations, leaving only Plaintiff's breach of fiduciary duty claim against Nortech.  ECF No. 49 at 28.  The Court denied Recology's motion to dismiss, leaving Plaintiff's claims against Recology for aiding and abetting Nortech's breach of fiduciary duties and for intentional and negligent interference with prospective economic advantage.  *Id.* at 22, 28.

On November 12, 2024, Nortech brought its instant motion, seeking summary judgment on Plaintiff's remaining breach of fiduciary duty claim against Nortech.  Nortech Mot. at 2.  That same day, Recology brought its motion for summary judgment, seeking summary judgment on all of Plaintiff's claims against it.  *See* Recology Mot. at 2.  On December 4, 2024, Plaintiff filed an opposition to Nortech's motion and a separate opposition to Recology's motion.  ECF Nos. 96; 98.  On December 20, 2024, Nortech and Recology filed replies to EcoHub's oppositions.  ECF Nos. 107; 108.

## III.   LEGAL STANDARD

Summary judgment is proper where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Material facts are those that may affect the outcome of the case, and a dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986).

If the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c)(1); *Anderson*, 477 U.S. at 250. All reasonable inferences must be drawn in the light most favorable to the nonmoving party. *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004). However, it is not the task of the Court "'to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden "to identify with reasonable particularity the evidence that precludes summary judgment." *Id.*; *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011) (The nonmoving party "must set forth non-speculative evidence of specific facts, not sweeping conclusory allegations.") (citations omitted). Thus, "[t]he district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *Christian Legal Soc. Chapter of Univ. of Cal. v. Wu*, 626 F.3d 483, 488 (9th Cir. 2010) ("Judges are not like pigs, hunting for truffles buried in briefs.") (citations omitted).

"While the evidence presented at the summary judgment stage does not yet need to be in a form that would be admissible at trial, the proponent must set out facts that it will be able to prove through admissible evidence." *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (citing Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.")). If the nonmoving party fails to identify such evidence, or if it offers evidence that is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50 (citations omitted).

## IV.    DISCUSSION

**A.    Nortech's Motion for Summary Judgment**

### 1.    Breach of Fiduciary Duty (Claim 1)

"The elements of a cause of action for breach of fiduciary duty are: (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach." *Stanley v. Richmond*, 35 Cal. App. 4th 1070, 1086 (1995).

#### a.    Duty

EcoHub's breach of fiduciary duty claim hinges on its allegations that it formed a partnership or joint venture with Nortech, and thus the parties owed each other fiduciary duties stemming from that partnership.  TAC ¶ 18; *see Cleveland v. Johnson*, 209 Cal. App. 4th 1315, 1339 (2012) ("[E]xamples of relationships that impose a fiduciary obligation to act on behalf of and for the benefit of another are a joint venture, a partnership, or an agency.") (quotation omitted).  Nortech argues the undisputed facts confirm Nortech owed no fiduciary duties to EcoHub because there was no partnership at the time of the alleged breach.

Plaintiff alleges in its TAC that Nortech breached its fiduciary duties to EcoHub between May 5 and September 17, 2020.  TAC ¶¶ 26(a)–(l).  Because Plaintiff fails to respond to Nortech's argument that summary judgment is warranted on alleged breaches that took place during this period (*see* Nortech Mot. at 21:3–22:4), Plaintiff has abandoned its breach of fiduciary duty claim as to those allegations.  *See Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (plaintiff abandoned claims by failing to raise them in opposition to motion for summary judgment).  Plaintiff now identifies November 17, 2020 as date of the alleged breach.  *See* Opp'n to Nortech Mot. at 17.

Under California law, "the association of two or more persons to carry on as coowners [of] a business for profit forms a partnership, whether or not the persons intend to form a partnership." Cal. Corp. Code § 16202(a).  An agreement to form a partnership can be "written, oral, or implied."  Cal. Corp. Code § 16101(10).  "A joint venture differs little from a partnership." *Interserve, Inc. v. Fusion Garage PTE. LTD.*, No. 09-cv-812-RS-PVT, 2010 WL 3339520, at *4 (N.D. Cal. Aug. 24, 2010).  "[T]he courts freely apply partnership law to joint ventures when

appropriate," and "[f]rom a legal standpoint, both relationships are virtually the same." *Weiner v. Fleischman*, 54 Cal. 3d 476, 482 (1991). "It is immaterial if the parties do not designate their relationship as a partnership or if they do not know that they are partners, for intent may be implied from their acts." *Fredianelli v. Jenkins*, 931 F. Supp. 2d 1001, 1020 (N.D. Cal. 2013) (quotation omitted).

"To establish a joint venture under California law, Plaintiffs must show 'an agreement between the parties under which they have a community of interest, that is, a joint interest, in a common business undertaking, an understanding as to the sharing of profits and losses, and a right of joint control.'" *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1173 (9th Cir. 2022) (quoting *Connor v. Great W. Sav. & Loan Ass'n*, 69 Cal. 2d 850 (1968)), *cert. denied sub nom. Ratha v. Phatthana Seafood Co.*, 143 S. Ct. 491 (2022)). "The presence or absence of any of the various elements set forth [in the prior statute governing partnerships], . . . is not necessarily dispositive . . . . [T]he crucial factor [is] the intent of the parties revealed in the terms of their agreement, *conduct, and the surrounding circumstances* when determining whether a partnership exists." *Interserve, Inc.*, 2010 WL 3339520, at *5 n.3 (quoting *Holmes v. Lerner*, 74 Cal. App. 4th 442, 454 (1999) (emphasis in original).

"An essential element of a partnership or joint venture is the right of joint participation in the management and control of the business." *Kaljian v. Menezes*, 36 Cal. App. 4th 573, 586 (1995). "Absent such right, the mere fact that one party is to receive benefits in consideration of services rendered or for capital contribution does not, as a matter of law, make him a partner or joint venturer." *Id.*; *see also Fredianelli*, 931 F. Supp. 2d at 1020 (quoting *Dickenson v. Samples*, 104 Cal. App. 2d 311, 315 (1951)) ("To participate to some extent in the management of a business is a primary element in partnership organization, and it is virtually essential to a determination that such a relationship existed.").

### i.    Existence of a Partnership Between May 4, 2020 and September 17, 2020

In the Court's order granting Defendants' motions to dismiss Plaintiff's second amended complaint, the Court found that "EcoHub's allegations that some of Nortech's presentation

materials refer to EcoHub as a 'partner' do not provide much basis to infer a legal partnership." ECF No. 40 at 11.  In contrast, the Court found that EcoHub plausibly alleged a partnership or joint venture in its TAC given Plaintiff's additional allegations that the parties intended to create a legal entity that would be co-owned and jointly controlled by the parties and of "subsequent conduct suggesting joint control in the proposal process."  ECF No. 49 at 10.  Now, at summary judgment, Plaintiff provides no evidence to support the allegations that rendered plausible the existence of a partnership or joint venture at the motion to dismiss stage.

Plaintiff asserts in its Third Amended Complaint that a partnership existed between Nortech and EcoHub "at least" from April 2019 through January 2021.  TAC ¶ 18.  Plaintiff has since narrowed the period in which it asserts a partnership existed between Nortech and EcoHub; Plaintiff now maintains "[t]he Nortech Board voted to partner with EcoHub on May 4, 2020, and then reaffirmed that vote by submitting the parties' joint proposal on June 5, 2020.  The Nortech Board also agreed on August 31, 2020, to the revised proposal made by EcoHub and then submitted the revision on September 4, 2020."  Pl.'s Resp. to Nortech SSMF, Fact No. 18. However, the citations Plaintiff provides do not show that there was such a vote.

The May 4, 2020 Nortech Board minutes Plaintiff offers do not mention EcoHub at all, nor do they indicate that the Board conducted *any* vote on that day.  Pl.'s Ex. 10 at NORTECH000007-09, ECF No. 94-3.  The only possible reference to Nortech's joint proposal with EcoHub is a statement that the Board "directed Ms. Trewhitt and Mr. Szura to ask WPWMA staff to present to their Board of Supervisors a proposal for a long term agreement with Nortech[.]"  *Id.* at NORTECH000008.  The minutes do not memorialize a vote to create a partnership with EcoHub.  In a separate section of Plaintiff's brief, Plaintiff directs the Court to a set of handwritten notes stating the proposal noted in the May 4 Board minutes was for a "long term contract [with] Nortech/EcoHub."  Opp'n to Nortech Mot. at 6 & Pl.'s Ex. 11, ECF No. 94-3. But these handwritten notes also do not indicate that the Nortech Board voted to enter into a partnership with EcoHub.

Because Plaintiff offers no evidence that there was a May 4, 2020 vote to partner with EcoHub, the companies' June 5, 2020 joint proposal to WPWMA could not reaffirm any such

vote.  Moreover, although the June 5, 2020 proposal submitted by Nortech refers to "partnering with EcoHub" and refers to EcoHub as Nortech's "partner" (Pl.'s Ex. 14 at NORTECH004764, ECF No. 95-2), it also indicates that Nortech used the term "partner" colloquially to describe its relationship with multiple entities.  For example, the June 5 proposal refers to EcoHub's "partner CellMark[,]" to "exploring strategic partnerships with key players and innovators in the waste industry[,]" and to "public-private partnership[.]"  *Id.* at NORTECH004793, NORTECH004794, ECF No. 95-2.  The proposal also includes a cover letter introducing EcoHub as "a distinct and separate company with whom [Nortech] is working and contracting independently[.]"  *Id.* at NORTECH004758; *see also* Pl.'s Response to Nortech SSMF, Fact No. 13.  References to a partnership between Nortech and EcoHub contained in the June 5, 2020 proposal to WPWMA thus fail to create a genuine dispute as to the existence of a legal partnership.  *See Azco Biotech, Inc. v. Qiagen, N.V.*, No. 12-cv-2599-BEN (DHB), 2015 WL 12516024, at *7 (S.D. Cal. July 2, 2015) (finding fact that defendant referred to relationship with plaintiff as "partnership" did not support conclusion that a legal partnership existed where there was "no indication that the term 'partnership' was used in its legal sense."); *GENFIT S. A. v. CymaBay Therapeutics Inc.*, No. 21-cv-00395-MMC, 2022 WL 195650, at *7 (N.D. Cal. Jan. 21, 2022) (considering relevant that agreement referred to party as "independent contractor" in finding agreement did not create fiduciary duty).

EcoHub is right that Nortech agreed on August 31, 2020 to EcoHub's proposed revision to the joint proposal to the WPWMA, Pl.'s Ex. 25, ECF No. 94-4, and that Nortech then submitted the revision to the WPWMA on September 4, 2020.  Trewhitt Decl., Ex. 3, ECF No. 85-3.  But like the June 5 proposal, the September 4 proposal continues to call EcoHub "a distinct and separate company with whom" Nortech "is working and contracting independently" (*id*. at NORTECH007339) and "an independent company with whom" Nortech "is working" (*id*. at NORTECH007340).  The September 4 proposal does not appear to refer to EcoHub as a "partner" at all, not even colloquially.

Accordingly, the Court finds Plaintiff has failed to establish a genuine dispute of material fact as to the existence of a partnership in the time leading up to the September 17, 2020 proposal

to WPWMA.[5]

### ii. Formation of a Partnership at October 27 and November 3, 2020 Nortech Board Meetings

EcoHub asserts that the relationship between EcoHub and Nortech was "reaffirmed on October 27 and November 3, 2020." Opp'n to Nortech Mot. at 17.

The October 27, 2020 Nortech Board minutes Plaintiff offers contain the following discussion of EcoHub, under the heading "Continuing RFP Discussion":

> MR. SANGIACOMO informed the members that the Recology team was continuing to work on the Nortech proposal and would update the members with any new details as he receives them. . . . More discussion ensued regarding *the future potential partnership* with EcoHub. MS. TREWHITT, speaking for Wastech, feels that at this time the proposal with EcoHub would have the best chance for success to win future contracts with the WPWMA board. MR. TODD DANIELS while acknowledging potential financial obstacles, he also believes that moving forward with EcoHub is the best route given the current information known to the LLC as well as feedback received from Authority staff. MR. SANGIACOMO raised concerns Recology has with the EcoHub proposal. Recology does not have confidence in the viability of the facility as presented by EcoHub. MR. SANGIACOMO also understood and acknowledged the other partners, Wastech and Sexton, hesitation in moving forward with the proposal in its, currently, underdeveloped state as presented by Recology. MR. SANGIACOMO stated that it was his opinion that the WPWMA is looking for an answer to the RFP that more closely resembles the facility and systems that currently exist. Further discussion ensued. At this moment the decision to move forward with a partnership with EcoHub is supported by Wastech and Sexton and is not supported by Recology.

---

[5] To the extent a legal partnership existed between EcoHub and Nortech between May 2020 and September 17, 2020, any such partnership would have been extinguished in September 2020, prior to Nortech's alleged breach of fiduciary duty. On September 19, 2020, after the WPWMA Board voted to issue an RFP, Gitschel emailed Nortech President Stephanie Trewhitt an email stating: "The answer is a resounding 'NO' on partnering in the future with you or Nortech!" Pl.'s Response to Nortech SSMF, Fact No. 23. Gitschel has and has always had sole authority to make binding decisions on behalf of EcoHub. Pl.'s Response to Recology SSMF, Fact No. 4. Gitschel further testified in his 30(b)(6) deposition that "essentially . . . there was not a partnership that existed with [Nortech and EcoHub]" after the WPWMA board voted not to enter contract negotiations with EcoHub and Nortech on September 17, 2020. Gitschel 30(b)(6) Dep. at 191:7–191:22, Ex. B to Cirelli Decl., ECF No. 84-3. *See also* Pl.'s Resp. to Nortech SSMF, Fact No. 24. Although Plaintiff disputes that Gitschel's testimony suggests there was no partnership prior to or after that date, Plaintiff provides no authority to indicate that a partnership would have survived what Plaintiff describes as an "emphatic[]" statement that Gitschel "no longer wanted to partner with Nortech." Opp'n at 11; Pl.'s Resp. to Recology SSMF, Fact No. 47.

United States District Court
Northern District of California

Pl.'s Ex. 37 at NORTECH000030, ECF No. 94-5 (emphasis added). The Court finds these references to a "future potential partnership" with EcoHub do not indicate the creation of a legal partnership or the reaffirmation of one.[6] Indeed, the words "future" and "potential" indicate the nonexistence of a partnership.[7] Nor do the minutes indicate that the term "partnership" was used in a legal sense. *See Azco Biotech*, 2015 WL 12516024, at *7.

Gitschel also avers that he held a conference call with Nortech regarding the preparation of the RFP response on October 27, 2020. Gitschel Decl. ¶ 4. Gitschel avers:

> It was my understanding, from all the facts and circumstances of the parties' discussions on, before, and after October 27, 2020, and from the parties' joint efforts to create written materials, that the partnership was not being "investigated" or "explored." Rather, it was an actual, existing partnership that was intended to last through the RFP process, which meant through the submission of a joint response to the RFP and, if we won, through the performance of the new MRF contract.

*Id.* A self-serving declaration can establish a genuine dispute of material fact where the declarant's testimony is "based on personal knowledge, legally relevant, and internally consistent." *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 498 (9th Cir. 2015). However, "[a] conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *F.T.C. v. Publ'g Clearing House, Inc.,* 104 F.3d 1168, 1171 (9th Cir. 1997). Gitschel's conclusion that Nortech's relationship with EcoHub constituted an "actual" partnership is a legal conclusion and does not establish a genuine dispute of material fact. *Nigro*, 784 F.3d at 497 ("The district court can disregard a self-serving declaration that states only conclusions and not facts that would be admissible evidence."). The

---

[6] Plaintiff also offers as an exhibit a set of handwritten notes from the October 27, 2020 meeting. Ex. 38 to Eichmann Decl., ECF No. 94-5 at NORTECH000063–64. These notes do not add anything to the meeting minutes.

[7] Gitschel states in his declaration that "Nortech's Board voted to partner with EcoHub in preparing and submitting a joint response to the RFP" on October 27, 2020. Gitschel Decl. ¶ 4, ECF No. 96-2. The Court disregards this statement as it does not appear to be based on personal knowledge. Gitschel does not testify that he was present at the October 27 Nortech Board meeting, nor does he state the basis for his belief that the Nortech Board voted to partner with EcoHub at that meeting. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1059 n.5, 1061 (9th Cir. 2002) (disregarding uncorroborated affidavit and deposition testimony that included facts beyond the declarant's personal knowledge).

United States District Court
Northern District of California

only factual basis Gitschel provides to support this conclusion – that Nortech and EcoHub engaged in "joint efforts to create written materials" – is insufficient to create a genuine issue of material fact as to the existence of a partnership.  *See Bank of California v. Connolly*, 36 Cal. App. 3d 350, 365, (1973) (holding "essential element of [r]ight to joint control was absent" where plaintiffs participated in marketing strategy discussions but did not demonstrate that "they had a voice in management decisions[.]").  Plaintiff therefore fails to raise a genuine issue of fact that a legal partnership was formed or "reaffirmed" on October 27, 2020.

Plaintiff further contends that Nortech's Board "voted 2-1 in favor of proceeding with EcoHub" on November 3, 2020.  The November 3 Nortech Board minutes Plaintiff offers state the following, under the heading "WPWMA RFP Discussion":

> The Chairperson informed the members that the purpose of the telephonic special meeting was to further discuss the plan for submitting a bid for the WPWMA RFP's. MS. TREWHITT informed the members that in WASTECH'S opinion the best way to move forward with the RFP was to continue working with Ecohub, as we have been doing for the last year.
>
> MR. DANIELS stated that SEXTON'S position had not changed and that he agreed with WASTECH that an answer to the RFP with Ecohub as a partner is what the Authority is looking for. MS. TREWHITT hoped that RECOLOGY would continue to work with WASTECH and SEXTON in submitting a bid for the RFP with Ecohub as a partner. MR. SANGIACOMO informed the members that RECOLOGY does not believe that a bid partnering with Ecohub will be successful. Further, MR. SANGIACOMO stated that RECOLOGY would continue preparing their bid for the RFP and that RECOLOGY would be submitting a statement to NORTECH for work done on the bid for the RFP up until October 27, 2020. MS. TREWHITT asked for RECOLOGY to submit their work product with the invoice and MR. SANGIACOMO said he would have to see what they have thus far. MR. DANIELS asked that we continue to meet on Tuesdays and he encouraged RECOLOGY to attend the meetings.

Pl.'s Ex. 41 at NORTECH000032–33, ECF No. 94-6.  The Court finds these references to EcoHub "as a partner" of Nortech's in the November 3 Nortech Board minutes are not indicative of an intention to carry on as co-owners of any business and do not establish a genuine issue for trial that a legal partnership was created or reaffirmed via that Board meeting.  *See Azco Biotech*, 2015 WL 12516024, at *7; Cal. Corp. Code § 16202(a).  *See also Prostar Wireless Grp., LLC v.*

14

1   *Domino's Pizza, Inc.*, 360 F. Supp. 3d 994, 1010 (N.D. Cal. 2018) ("Joint venturers 'must each

2   have an ownership interest in the enterprise'") (quoting *Orosco v. Sun-Diamond Corp.*, 51 Cal.

3   App. 4th 1659, 1666 (1997), *aff'd*, 815 F. App'x 117 (9th Cir. 2020)).

4          Accordingly, Plaintiff has failed to establish a genuine issue for trial regarding the

5   formation or reaffirmation of a partnership at the October 27 of November 3, 2020 meetings of the

6   Nortech Board.

### iii.    Other Arguments Regarding the Existence of Partnership

8          Finally, the Court looks beyond the May 4, June 5, October 27 and November 3, 2020

9   Nortech Board meetings to determine whether there is a nevertheless a genuine dispute as to the

10  existence of a partnership.  *See* Cal. Corp. Code § 16101(10) (an agreement to form a partnership

11  can be "written, oral, or implied.").

12         Nortech argues no partnership existed because the parties did not agree to a right to joint

13  control.  In its opposition, Plaintiff responds that joint control does not require equal control.

14  However, the authority Plaintiff cites does not support the proposition that mere contributions to

15  an enterprise by a party satisfy the element of joint control.  *See Black Swan Advisors LLC v. Bush

16  Mgmt. Co.*, 30-2020-01168000-CU-BT-CJC, 2022 Cal. Super. LEXIS 71730 (Oct. 25, 2022)

17  (denying summary judgment where "evidence suggest[ed] that perhaps the BMS Parties had more

18  control over the acquisition of the mines and certain areas of management"); *Epstein v. Stahl*, 176

19  Cal. App. 2d 53, 57, 58 (1959) (holding "[t]he contributions of the respective parties to a joint

20  venture need not be equal or of the same character" and noting separately that "an agreement

21  between the owner of lots and a building contractor" can give rise to a joint venture relationship

22  "where it discloses an intent that both parties shall contribute to the enterprise, exercise joint

23  control over it, and be accountable to each other for their acts in carrying it out").  Plaintiff

24  provides no evidence to indicate that EcoHub had a right to joint control or management of the

25  venture.  *See* Opp'n at 21–22.  In the absence of any such evidence, the Court finds that Plaintiff

26  fails to raise a genuine issue of material fact as to the existence of joint control.

27         In its opposition, Plaintiff maintains that "the evidence shows more than just a 'colloquial'

28  use of the term 'partner' and 'partnership' by the parties."  Opp'n to Nortech Mot. at 17.  Plaintiff

United States District Court
Northern District of California

United States District Court
Northern District of California

1    contends that the parties consistently used the term "partner," including in board minutes, and that

2    "the parties' joint efforts to obtain a contract for Nortech, to win the RFP, and to jointly operate

3    and manage the WPWMA facility" support a partnership relationship.  *Id.*  But Plaintiff does not

4    provide any authority to support the notion that "joint efforts" are themselves evidence of a legal

5    partnership.  Nor does EcoHub address Nortech's argument that Gitschel referred to numerous

6    other business relationships as "partnerships" in a purely colloquial sense.  Mot. at 16 n.6.  *See*

7    Gitschel 30(b)(6) Dep. at 127:16–129:17; 207:4–208:1, Ex. B to Cirelli Decl., ECF No. 84-3.

8         EcoHub further asserts that it was a partner, rather than a subcontractor of Nortech's,

9    because "a mere subcontractor does not take the lead on drafting and presenting the proposals for

10   the primary contract" and because the proposed allocation of profits between Nortech and EcoHub

11   from the WPWMA contract was inconsistent with a contractor-subcontractor relationship.  Opp'n

12   to Nortech Mot. at 17.  At the same time, EcoHub concedes that "it is not necessarily inaccurate to

13   identify EcoHub as a 'subcontractor,' since EcoHub and Nortech had agreed that the best way to

14   document their arrangement vis-à-vis the WPWMA was by keeping Nortech as the counterparty to

15   the WPWMA and having a 'pass through' subcontract between Nortech and EcoHub."  Opp'n to

16   Nortech Mot. at 7.  EcoHub provides no authority to support its argument that a contractor-

17   subcontractor relationship may also be consistent with a legal partnership.

18        Viewing the facts in the light most favorable to Plaintiff, a reasonable jury could not find

19   that a partnership or joint venture existed between Nortech and EcoHub.  Plaintiff offers no other

20   theory to support the imposition of a fiduciary duty on Nortech.

21        Accordingly, the Court **GRANTS** Defendant Nortech summary judgment on Plaintiff's

22   breach of fiduciary duty claim.

23   **B.    Recology's Motion for Summary Judgment**

24        **1.    Aiding and Abetting Claim (Claim 2)**

25        Recology seeks summary judgment on Plaintiff's claim for aiding and abetting Nortech's

26   breach of fiduciary duty.  Recology asserts that summary judgment is required because Nortech

27   did not owe EcoHub a fiduciary duty; because there is no evidence demonstrating that an outside

28   consultant hired by WPWMA gave Recology enhanced access to WPWMA's RFP Process or that

United States District Court
Northern District of California

1  Recology pitted that consultant against EcoHub; and because Recology did not direct Nortech to

2  obtain financing assurances from EcoHub or terminate Nortech's relationship with EcoHub in

3  November 2020.

4        Under California law, "a third party's breach of fiduciary duties owed to plaintiff" is an

5  essential element of a claim for aiding and abetting a breach of fiduciary duty. *Chang v. Wells*

6  *Fargo Bank, N.A.*, No. 19-CV-01973-HSG, 2020 WL 1694360, at *7 (N.D. Cal. Apr. 7, 2020)

7  (quoting *Nasrawi v. Buck Consultants LLC*, 231 Cal. App. 4th 328, 343 (2014)). As discussed

8  above, the Court grants Nortech summary judgment as to EcoHub's breach of fiduciary duty

9  claim. In the absence of an underlying breach of fiduciary duty, Plaintiff's aiding and abetting

10  claim against Recology must fail.

11        Accordingly, the Court **GRANTS** Defendant Recology summary judgment on Plaintiff's

12  aiding and abetting claim.

13        **2.**         **Tortious Interference Claims (Claims 3 and 4)**

14        Recology seeks summary judgment on Plaintiff's remaining claims for intentional and

15  negligent interference with prospective economic advantage. Recology asserts summary judgment

16  is required because the statute of limitations mandates dismissal of Plaintiff's interference claims,

17  because Plaintiff cannot show any wrongful interference by Recology, and because Plaintiff's

18  damages theories do not provide a legal basis for recovery.

19        **a.**         **Statute of Limitations**

20        The statute of limitations for tortious interference with prospective economic advantage in

21  California is two years. *See Wild Rivers Waterpark Mgmt. LLC v. Katy WP Grp., LLC*, No. 18-cv-

22  6522, 2019 WL 6998669, at *8 (C.D. Cal. Feb. 26, 2019); Cal. Civ. Proc. Code § 339(1).

23  California applies the discovery rule, which "defers accrual of a cause of action until the plaintiff

24  discovers, or has reason to discover the cause of action." *Wild Rivers*, 2019 WL 6998669, at *8;

25  *see also Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1192 (2013). "A plaintiff has reason to

26  discover a cause of action when he or she has reason at least to suspect a factual basis for its

27  elements." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005) (quotation omitted).

28  "When damages are an element of a cause of action, the cause of action does not accrue until the

damages have been sustained.  Mere threat of future harm, not yet realized, is not enough." *City of Vista v. Robert Thomas Sec., Inc.*, 84 Cal. App. 4th 882, 886 (2000) (citations omitted).  "While resolution of the statute of limitations issue is normally a question of fact, where the uncontradicted facts established through discovery are susceptible of only one legitimate inference, summary judgment is proper." *Romano v. Rockwell Internat., Inc.*, 14 Cal. 4th 479, 487 (1996).

"The work-product doctrine is a 'qualified' privilege that protects 'from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation.'" *United States v. Sanmina Corp.*, 968 F.3d 1107, 1119 (9th Cir. 2020) (quoting *Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1494 (9th Cir. 1989)).  *See* Fed. R. Civ. P. 26(b)(3)).  "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case," and protects both "material prepared by agents for the attorney as well as those prepared by the attorney himself." *Sanmina Corp.,* 968 F.3d at 1119 (quoting *United States v. Nobles*, 422 U.S. 225, 238–39 (1975)).

Plaintiff filed its initial complaint on December 30, 2022.  ECF No. 1.  Recology asserts that Plaintiff's interference claims are time-barred barred because EcoHub was on notice and believed the alleged factual basis for its interference claims by November 17, 2020, the day Nortech terminated its communications with EcoHub regarding the submission of a joint response to WPWMA's RFP.  Pl.'s Response to Recology SSMF, Fact No. 80. Decl. of Robert May, ECF No. 88 & Ex. 16 to May Decl., ECF No. 88-26 (NORTECH037356 at NORTECH037356-57).

Plaintiff argues its claims were timely brought because Plaintiff was not injured until January 11, 2021, when "EcoHub was forced to go it alone in its submission to the WPWMA[.]" Economic harm is an element of the tort of intentional interference with prospective economic advantage.  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003).  The statute of limitations for plaintiff's tortious interference claims therefore would not accrue until damages were sustained.  Opp'n at 19.  In support of Plaintiff's delayed damages argument, Plaintiff cites *Cover v. Windsor Surry Co.*, a lawsuit against the manufacturer of wooden boards

18

the plaintiff had installed on his home, which the plaintiff alleged had prematurely rotted. No. 14-cv-05262-WHO, 2015 WL 4396215, at *2 (N.D. Cal. July 17, 2015). The court in *Cover* found that the discovery rule tolled several of plaintiff's claims, bringing them within the statute of limitations. *Id.* at *4. The court there further noted "it [was] not clear that Cover's UCL claim accrued [when the boards were purchased] given that he arguably was not damaged until the wood started rotting years later." *Id.* at *3 n.4.

Here, Plaintiff seeks to recover lost profits, a damages theory premised on the notion that "it was likely that a joint EcoHub-Nortech submission would have won the RFP." Opp'n at 20. At the January 30, 2025 summary judgment hearing, Plaintiff argued that EcoHub did not incur damages until January 2021 because EcoHub continued to work on preparing a joint RFP response throughout December 2020. But it is undisputed that Nortech's counsel informed Gitschel on November 17, 2020, that Nortech "terminates all further communications with EcoHub, LLC to submit a joint response to WPWMA's MRF RFP." Pl.'s Resp. to Nortech SSMF, Fact No. 31; *see* Decl. of Lawrence M. Cirelli in Support of Nortech's Mot. ¶ 58, ECF No. 85-2 and Ex. 46 to Cirelli Decl. And Gitschel admitted in his 30(b)(6) deposition that after November 17, 2020, no one at Nortech ever told him that Nortech was prepared to move forward with EcoHub in responding to the RFP. Gitschel 30(b)(6) Dep. at 251:19–252:2. In support of its opposition, Plaintiff produced a declaration from George Gitschel averring that he "initially did not think that Nortech was going to submit a response to the RFP without EcoHub," and that Nortech's Paul Szura, "assured [Gitschel]" on January 6, 2021, "that Nortech would not bid on the RFP without EcoHub." Decl. of George Gitschel ¶¶ 7, 8, ECF No. 96-2. But Gitschel's 30(b)(6) testimony indicates Gitschel did not believe Szura had the authority to decide whether Nortech would submit an RFP with EcoHub. Gitschel 30(b)(6) Dep. at 252:3–252:21 (Gitschel's deposition testimony that while he believed Szura "would have great influence" over Nortech decisions, it was his understanding that Szura "could not do anything as Nortech until he got direction from Recology on whether or not they were going to force them into submitting a bid."). Unlike in *Cover*, where the plaintiff arguably would not have sustained damage until the wood he had purchased began to deteriorate, EcoHub would have lost the profits from a prospective contract with WPWMA on

1    November 17, 2020, when Nortech broke off communications with EcoHub regarding the

2    submission of a joint response to the RFP.  *See City of Vista*, 84 Cal. App. 4th at 886.

3           Plaintiff further argues that the discovery rule brings Plaintiff's tortious interference claims

4    within the statute of limitations.  Plaintiff contends that the statute of limitations did not begin to

5    run until January 8, 2021, when EcoHub found out that Nortech planned to submit an RFP

6    response on its own and Gitschel "discovered Recology's interference had succeed[ed][.]"  Opp'n

7    at 20.  Plaintiff contends that Szura provided assurances through January 6, 2021 that assuaged

8    Gitschel's suspicions about Recology and led Gitschel to "hold[] reasonable hope" that EcoHub

9    and Nortech would submit a joint proposal to WPWMA.  Opp'n at 20.  In support of this

10   contention, Plaintiff submits a declaration from Gitschel averring that from November 17 to

11   December 31, 2020,  Gitschel "continu[ed] to inquire about the potential for EcoHub and Nortech

12   to resume their work together" and gave Szura information about EcoHub he would not have

13   provided had he known Nortech was working on a proposal without EcoHub.  Decl. of George

14   Gitschel ¶ 7, ECF No. 96-2.

15          In response, Recology offers a privilege log produced by Plaintiff showing that EcoHub

16   asserted attorney work product protection over 49 documents dated between November 17 and

17   December 30, 2020.  Decl. of Robert May, ECF No. 100 & Ex. A to May Decl. (EcoHub Privilege

18   Log), Item Nos. 129–77,  ECF No. 100-1.  EcoHub describes these documents as containing

19   "information and/or legal advice about dispute with Nortech and Recology."  *Id.*  Four of these

20   entries are dated November 17, 2020, the day Nortech terminated its relationship with EcoHub.

21   *Id.*, Item Nos. 129–32.  Plaintiff's assertions of attorney work product protection thus indicate that

22   Plaintiff anticipated litigation against Recology on November 17, 2020.  *See In re California Pub.*

23   *Utilities Comm'n*, 892 F.2d 778, 780 (9th Cir. 1989) (confirming that "to qualify for protection

24   against discovery under [Federal Rule of Civil Procedure 26(b)(3)], documents . . . must be

25   "prepared in anticipation of litigation or for trial") (citing Fed. R. Civ. P. 26(b)(3)).  On November

26   16, Gitschel also sent an email to Szura stating that the other members of the Nortech board were

27   "capitulating to Recology in their efforts to terminate the relationship with EcoHub under false

28   pretense."  Pl.'s Resp. to Recology SSMF, Fact No. 77.  It is undisputed that at the time Gitschel

United States District Court
Northern District of California

sent that email, he believed Recology had in fact tried to terminate the relationship under false pretenses.  *Id.*, Fact No. 79.  This theory is the crux of Plaintiff's interference claims against Recology.  *See* Opp'n to Recology Mot. at 1 (stating that "EcoHub is accusing Recology of orchestrating Nortech's pretextual termination of the partnership"), 19 (stating that Recology's "participation in [] Nortech's pretextual termination was intentional").

Given Plaintiff's assertion of work product protection over these documents and undisputed facts indicating that Plaintiff suspected the factual basis of its interference claims, there is no genuine dispute of material fact that EcoHub had reason to suspect a factual basis of its claims against Recology on November 17, 2020.  *Fox*, 35 Cal. 4th at 807.  Plaintiff therefore had until November 17, 2022, to file its interference claims against Recology.  Because Plaintiff filed its initial complaint more than two years later, Plaintiff's interference claims are time barred.  As the statute of limitations bars Plaintiff's interference claims against Recology, the Court need not consider Recology's other arguments regarding Plaintiff's tortious interference claims.

Accordingly, the Court **GRANTS** Defendant Recology summary judgment on Plaintiff's claims for intentional and negligent interference with prospective economic advantage.

## V.    CONCLUSION

Based on the analysis above, the Court hereby **GRANTS** Defendant Nortech's Motion for Summary Judgment and **GRANTS** Defendant Recology's Motion for Summary Judgment.

**IT IS SO ORDERED.**

Dated: April 23, 2025

THOMAS S. HIXSON
United States Magistrate Judge